

**FILED**
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

OCT 1 0 2016

MICHAEL S. RICHIE
CLERK

No. C-2016-419

# IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA

KENNETH HAROLD TIBBETTS,            )
                                    )
                Petitioner,         )
                                    )
v.                                  )     Appeal from the District
                                    )     Court of Beckham County
                                    )     Case No. CF-2015-188
THE STATE OF OKLAHOMA,              )
                                    )
                Respondent.         )

## BRIEF OF PETITIONER

Chad Johnson
Appellate Defense Counsel
Oklahoma Bar No. 32432

P.O. Box 926
Norman, OK 73070
(405) 801-2727

ATTORNEY FOR PETITIONER

122414/LCC

EXHIBIT 9

## TABLE OF CONTENTS

PAGE

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

**STATEMENT OF THE CASE AND FACTS** . . . . . . . . . . . . . . . . . . . . . . . . .   1

**PROPOSITION I** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

> MR. TIBBETTS' GUILTY PLEA WAS INVALID, BECAUSE THE COURT
> - JUST WEEKS AFTER A NOTICE TO DECLARE AN INSANITY
> DEFENSE WAS FILED - FAILED TO CONDUCT ANY MEANINGFUL
> INQUIRY INTO PETITIONER'S COMPETENCE

**PROPOSITION II** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

> THE RECORD DID NOT ESTABLISH AN ADEQUATE FACTUAL
> BASIS, AS EVEN THE STATE ACKNOWLEDGED. THE PLEA CANNOT
> BE CONSIDERED KNOWING, INTELLIGENT AND VOLUNTARY. THE
> TRIAL COURT ERRED BY DENYING PETITIONER'S APPLICATION TO
> WITHDRAW THE GUILTY PLEA.

**PROPOSITION III** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

> PETITIONER WAS NOT PROPERLY ADVISED OF THE PUNISHMENT
> RANGES FOR THE UNDERLYING OFFENSES, AND THE PLEA
> CANNOT BE CONSIDERED KNOWING, INTELLIGENT AND
> VOLUNTARY. THE TRIAL COURT ERRED BY DENYING
> PETITIONER'S APPLICATION TO WITHDRAW THE GUILTY PLEA

**PROPOSITION IV** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

> ACCEPTANCE OF PETITIONER'S PLEAS AND IMPOSITION OF
> SENTENCES VIOLATED PETITIONER'S CONSTITUTIONAL AND
> STATUTORY PROTECTIONS AGAINST DOUBLE JEOPARDY AND
> DOUBLE PUNISHMENT.

**PROPOSITION V** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

> ADMITTING DOCUMENTS PROTECTED BY DOCTOR-PATIENT
> PRIVILEGE INTO EVIDENCE CONSTITUTED PLAIN ERROR.

PETITIONER WAS DEPRIVED A FAIR SENTENCING HEARING, AND THE ERROR CONTRIBUTED TO AN EXCESSIVE SENTENCE.

**PROPOSITION VI** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

PROSECUTORIAL MISCONDUCT AT BOTH THE SENTENCING HEARING AND THE WITHDRAWAL HEARING DEPRIVED MR. TIBBETTS OF HIS RIGHT TO FAIR PROCEEDINGS.

**PROPOSITION VII** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL THROUGHOUT THE CASE IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. II, §§ 7 AND 20, OF THE OKLAHOMA CONSTITUTION.

**PROPOSITION VIII** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

CUMULATIVE ERRORS DEPRIVED MR. TIBBETTS OF A FAIR PROCEEDING AND A RELIABLE OUTCOME.

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**TABLE OF AUTHORITIES**
**CASE AUTHORITIES**

**FEDERAL CASES**

*Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180,
       76 L.Ed. 306 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709,
       23 L.Ed.2d 274 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 19

*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824,
       17 L.Ed.2d 705 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . 47

*Mansfield v. Champion*, 992 F.2d 1098 (10th Cir. 1993) . . . . . . . . . . . . . . 30

*McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166,
22 L.Ed.2d 418 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160,
27 L.Ed.2d 162 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Roe v. Flores-Ortega,* 528 U.S. 470, 120 S.Ct. 1029,
145 L.Ed.2d 985 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Broce,* 781 F.2d 792 (10th Cir. 1986) . . . . . . . . . . . . . . . . 23

*United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039,
80 L.Ed.2d 657 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**STATE CASES**

*Ashinky v. State,* 1989 OK CR 59, 780 P.2d 201 . . . . . . . . . . . . . . . . . . . . . 22

*Aycox v. State,* 1985 OK CR 83, 702 P.2d 1057 . . . . . . . . . . . . . . . . . . . . . . 45

*Barnard v. State,* 2012 OK CR 15, 290 P.3d 759 . . . . . . . . . . . . . . . . . . . . . 32

*Berget v. State,* 1991 OK CR 121, 824 P.2d 364 . . . . . . . . . . . . . . . . . . . 10, 17

*Bosse v. State,* 2015 OK CR 14, 360 P.3d 1203 . . . . . . . . . . . . . . . . . . . . . 46

*Browning v. State,* 2006 OK CR 8, 134 P.3d 816 . . . . . . . . . . . . . . . . . . . . . 35

*Burch v. State,* 1987 OK CR 93, 738 P.2d 157 . . . . . . . . . . . . . . . . . . . . . 6, 9

*Chandler v. State,* 1977 OK CR 324, 572 P.2d 285 . . . . . . . . . . . . . . . . . . 48

*Chapple v. State,* 1993 OK CR 38, 866 P.2d 1213 . . . . . . . . . . . . . . . . . . . 20

*Clay v. State,* 1979 OK CR 26, 593 P.2d 509 . . . . . . . . . . . . . . . . . . . . . . . 23

*Collis v. State,* 1984 OK CR 80, 685 P.2d 975 . . . . . . . . . . . . . . . . . . . . . . 45

*Cox v. State,* 2006 OK CR 51, 152 P.3d 244 . . . . . . . . . . . . . . . 14, 19, 23

*Coyle v. State*, 1985 OK CR 121, 706 P.2d 547 . . . . . . . . . . . . . . . . . . 6, 8, 14

*Davis v. State*, 1999 OK CR 48, 933 P.2d 124 . . . . . . . . . . . . . . . . . . . . . . 23

*Edwards v. State*, 1991 OK CR 71, 815 P.2d 670 . . . . . . . . . . . . . . . . . . . . 27

*Frederick v. State*, 1991 OK CR 56, 811 P.2d 601 . . . . . . . . . . . . . . . . . . . 6

*Freeman v. State*, 1973 OK CR 303, 512 P.2 . . . . . . . . . . . . . . . . . . . . . . 18

*Freeman v. State*, 1973 OK CR 303, 512 P.2d 236 . . . . . . . . . . . . . . . . . . . 22

*Gentry v. State*, 1977 OK CR 152, 562 P.2d 1170 . . . . . . . . . . . . . . . . . . . 22

*Grant v. State*, 2009 OK CR 11, 205 P.3d 1 . . . . . . . . . . . . . . . . . . . . . . . . 31

*Grubb v. State*, 1972 OK CR 141, 497 P.2d 1305 . . . . . . . . . . . . . . . . . . . . 27

*Hancock v. State*, 2007 OK CR 9, ¶155 P.3d 796 . . . . . . . . . . . . . . . . . . . . 25

*Hanson v. State*, 2009 OK CR 13, 206 P.3d 1020 . . . . . . . . . . . . . . . . . . . . 40

*Head v. State*, 2006 OK CR 44, 146 P.3d 1141 . . . . . . . . . . . . . . . . . . . . . 23

*Hill v. State*, 1973 OK CR 288, 511 P.2d 604 . . . . . . . . . . . . . . . . . . . . . . 27

*Hunnicutt v. State*, 1988 OK CR 91, 755 P.2d 105 . . . . . . . . . . . . . . . . . . . 22

*Hunter v. State*, 1992 OK CR 1, 825 P.2d 1353 . . . . . . . . . . . . . . . . 13, 19, 44

*James v. State*, 1985 OK CR 157, 711 P.2d 111 . . . . . . . . . . . . . . . . . . . . . 15

*Jones v. State*, 2006 OK CR 5, 128 P.3d 521 . . . . . . . . . . . . . . . . . . . . . . . 36

*Keeling v. State*, 1991 OK CR 53, 810 P.2d 1298 . . . . . . . . . . . . . . . . . . . . 31

*King v. State*, 1976 OK CR 103, 553 P.2d 529 . . . . . . . . . . . . . . . . . . . . 6, 20

*Love v. State*, 1987 OK CR 129, 738 P.2d 564 . . . . . . . . . . . . . . . . . . . . . . 9

*Malone v. State*, 2013 OK CR 1, 293 P.3d 198 . . . . . . . . . . . . . . . . . . . . . . 40

*Medlock v. State*, 1994 OK CR 65, 887 P.2d 1333 . . . . . . . . . . . 11, 16, 32, 36

*Ocampo v. State*, 1989 OK CR 38, 778 P.2d 920   . . . . . . . . . . . . . . . 9, 40, 42

*Orcutt v. State*, 1931 OK CR 412, 52 Okl.Cr. 217, 3 P.2d 912   . . . . . . . . . . . 31

*Peninger v. State*, 1991 OK CR 60, 811 P.2d 609   . . . . . . . . . . . . . . . . . . . . 48

*Randall v. State*, 1993 OK CR 47, 861 P.2d 314   . . . . . . . . . . . . . . . . . . 20, 40

*Salyer v. State*, 1988 OK CR 184, 761 P.2d 890   . . . . . . . . . . . . . . . . . . . . . 22

*Sanders v. State*, 2015 OK CR 11, 358 P.3d 280 . . . . . . . . . . . . . . . . . . . . . . 24

*Shepherd v. State*, 1996 OK CR 27, 920 P.2d 1066   . . . . . . . . . . . . . . . . . . . 14

*Simpson v. State*, 1994 OK CR 40, 876 P.2d 690   . . . . . . . . . . . . . . . . . . . . . 33

*Smith v. State*, 1988 OK CR 123, 757 P.2d 844 . . . . . . . . . . . . . . . . . . . . . . .  9

*Spees v. State*, 1987 OK CR 62, 735 P.2d 571   . . . . . . . . . . . . . . . . . . . . . . . 38

*State v. Durant, 1980 OK CR 21,* 609 P.2d 792   . . . . . . . . . . . . . . . . . . . . . .  9

*Stewart v. State*, 1973 OK CR 230, 509 P.2d 1402  . . . . . . . . . . . . . . . . . . . . 27

*Sykes v. State*, 1951 OK CR 154, 95 Okl.Cr. 14, 238 P.2d 384   . . . . . . . . . . 40

*Wester v. State*, 1988 OK CR 126, 764 P.2d 884   . . . . . . . . . . . . . . . . . . . 9, 14

*Zakszewski v. State*, 1987 OK CR 152, 739 P.2d 544 . . . . . . . . . . . . . . . . . 9, 14

## CONSTITUTIONAL AUTHORITIES

United States Constitution

U.S. Const. amend. V   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 32, 48

U.S. Const. amend. VI   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 40

U.S. Const. amend. XIV   . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 36, 40, 48

Oklahoma Constitution

Okla. Const. art. II, § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 40

Okla. Const. art. II, § 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 48

Okla. Const. art II, § 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 32

## STATUTORY AUTHORITIES

Oklahoma Statutes

12 O.S.2011, § 2103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

12 O.S.2011, § 2104(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

12 O.S.2011, § 2503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 45

12 O.S.2011, § 2615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

21 O.S.2001, § 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 29, 32

21 O.S.2011, § 11(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

21 O.S.Supp.2015, § 13.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21 O.S.2011, § 51(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21 O.S.2011, § 51(A)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21 O.S. § 741 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 O.S.Supp.2012, § 741 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21 O.S. § 791 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 O.S.2011 § 796 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

21 O.S. § 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 O.S.2001, § 1283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

21 O.S.Supp.2014, § 1283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

21 O.S. § 1283(A)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

22 O.S.2011 § 982(D)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22 O.S.2011, § 1175.2(C)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

22 O.S.2011, § 1175.3  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22 O.S.2011, § 2002(C)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

43 O.S.Supp.2012 § 121(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## OTHER AUTHORITIES

Oklahoma Uniform Jury Instructions

Instruction No. 6-39, OUJI-CR (2d) . . . . . . . . . . . . . . . . . . . . . . . . 15

Instruction No. 8-36, OUJI-CR (2d) . . . . . . . . . . . . . . . . . . . . . . . . 17

## DOCKETED CASES

*Bruner v. State*, No. F-2002-108 (Okl.Cr. April 30, 2003)  . . . . . . . . . . . . . . 28

*Byrd v. State*, No. F-2013-327 (Okl.Cr. April 10, 2014)   . . . . . . . . . . . . . . . 28

*Henderson v. State*, No. C-2008-938 (Okl.Cr. September 30, 2009)  . . . . . . . 28

## MISCELLANEOUS

Rule 1.1, *Oklahoma Rules of Professional Conduct,*
      tit. 5, ch. 1, app. 3-A (2011)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Rule 3.1 *Oklahoma Rules of Professional Conduct,*
      tit. 5, ch. 1, app. 3-A (2011)  . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 42

Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals,*
      Title 22, Ch. 18, App. (Supp. 2014) . . . . . . . . . . . . . . . . . . . . . . . 28

Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals,*
      tit. 22, ch. 18, app. (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 19

Standards 3-1.2, *American Bar Association Standards for Criminal Justice, Prosecution Function* (4th Ed. 2015) (Functions and Duties of the Prosecutor) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Standards 3-1.4, *American Bar Association Standards for Criminal Justice, Prosecution Function* (4th Ed. 2015)(The Prosecutor's Heightened Duty of Candor) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Standard 4-6.1(B), *ABA Standards for Criminal Justice: Prosecution and Defense Function* (3rd Ed. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA**

| | | |
|---|---|---|
| KENNETH HAROLD TIBBETTS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. C-2016-419 |
| | ) | |
| THE STATE OF OKLAHOMA, | ) | |
| | ) | |
| Respondent. | ) | |

### BRIEF OF PETITIONER

Kenneth Harold Tibbetts, defendant in the District Court, is referred to herein by name or as Petitioner. Respondent is referred to as the State or the prosecution. Numbers in parentheses refer to page citations in the original record (O.R.); the transcript of the February 10, 2016, guilty plea hearing (GP Tr.); the transcript of the March 30, 2016, sentencing (S Tr.); as well as attached State's Exhibits (State's Exh.) and Petitioner Exhibits (P. Exh.); and the transcript of the May 11, 2016, hearing on motion to withdraw guilty plea (W Tr.).

### STATEMENT OF THE CASE AND FACTS

On May 9, 2015, there was a robbery at Janie's Garden Center in Elk City. Two employees were present - Laura Cornell and Wes Burks - and the perpetrator obtained between $2,500-$3,000 in cash. (S Tr. 14-15) On May 15, 2015, an elderly couple, Troy and Joy Sites, were approached in an Elk City parking lot by a white male, who they said attempted to steal the woman's purse, but was unsuccessful. (S Tr. 25-28)

On May 26, 2015, Mr. Tibbetts was charged by Information in Beckham County District Court case CF-2015-188 in connection with the first incident. (O.R. 1-3) An Amended Information was filed on May 27, 2015. (O.R. 9-11) On May 27, 2015, Petitioner was also charged by Information in Beckham County case CF-2015-192 for the second incident.[1] Petitioner waived preliminary hearing and was bound over on October 13, 2015. (O.R. 42-43) Mr. Tibbetts was arraigned on December 2, 2015 and entered pleas of not guilty. (O.R. 44-46)

On January 15, 2016, the court granted the State's request to consolidate the two matters into case CF-2015-188. (O.R. 53, 58) An Amended Information was filed on January 19, 2016, which included charges from the Janie's Garden Center occurrence on May 9, 2015:

> Count I - Robbery with a Weapon, in violation of 21 O.S. § 801.
> Count II - Possession of Firearm After Former Felony Conviction, in violation of 21 O.S. § 1283(A).
> Count III - Kidnapping, in violation of 21 O.S. § 741.
> Count IV - Kidnapping, in violation of 21 O.S. § 741.

and charges stemming from the May 15, 2015, incident:

> Count V - Attempted Robbery with a Dangerous Weapon, in violation of 21 O.S. §§ 791, 801.
> Count VI - Attempted Robbery with a Dangerous Weapon, in violation of 21 O.S. §§ 791, 801.
> Count VII - Possession of Firearm After Former Felony Conviction, in violation of 21 O.S. § 1283(A).

---

[1]The original Information on CF-2015-192 is not included in the record.

(O.R. 54-56) The Amended Information included a second page, which alleged a prior conviction.[2] (O.R. 57)

On January 20, 2016, through his retained counsel, Alicia Sorelle, Mr. Tibbetts filed a Notice of Intent to Declare Insanity as Defense. The Notice indicated that counsel was seeking medical records and an expert opinion to determine if Petitioner was capable of possessing the requisite mental state at the time of the alleged crimes, in light of his medical conditions and prescribed drugs. (O.R. 59-60)

On February 10, 2016, defense reversed course, and entered a blind plea of guilty before the Honorable Floyd Douglas Haught, District Judge. (O.R. 70-78) After Petitioner acknowledged a truncated recitation of the facts on each count, and gave a yes/no response to a handful of rudimentary inquiries about his competence and waiver of rights, the court accepted his plea. (GP Tr. 3-14) Mr. Tibbetts was remanded into custody, and a pre-sentence investigation was ordered. (O.R. 79)

At the March 30, 2016, sentencing hearing before Judge Haught, Petitioner was represented by Ms. Sorelle, and the State was represented by Angela Marsee and Dana Hada. All four victims, as well as two Elk City detectives, testified for the State. Two of Petitioner's friends testified on behalf of the defense, and

---

[2]Petitioner was convicted in Comanche County District Court case CF-1981-660 of Kidnapping, Rape, and Sodomy. Petitioner served twenty-six years, and was released in 2008. (S Tr. 99-101)

3

Mr. Tibbetts also testified. At the hearing's conclusion, the court sentenced Mr. Tibbetts as follows:

> Count I - Life imprisonment. $2,800 restitution.
> Count II - Ten (10) years imprisonment.
> Count III - Life imprisonment.
> Count IV - Life imprisonment.
> Count V - Life imprisonment. $500 restitution.
> Count VI - Life imprisonment.
> Count VII - Ten (10) years imprisonment.

The sentences in Counts I, II, III, IV, and VII were to run concurrent with each other. The sentences in Counts V and VI were to run concurrent with each other. The two sets of sentences were to run consecutively. Mr. Tibbetts was also assessed a total of $950 for victim compensation, along with costs and fees (including $250 for the pre-sentencing investigation). (S Tr. 176-180; O.R. 100-102, 179-183)

On April 6, 2016, Mr. Tibbetts, by and through defense counsel, Ms. Sorelle, timely filed an Application to Withdraw Plea of Guilty, requesting withdrawal because:

> Defendant's plea was not entered knowingly and voluntarily, nor did he fully understand what the effect of entering a blind plea could mean for sentencing. Further, Mr. Tibbetts believes that the effects of his medical condition and the drugs used to treat his condition had impaired him mental capacity to comprehend what was happening at the time of the entry of his plea. Mr. Tibbetts believes that he should be evaluated by a mental health expert for the purpose of determining the effect this had on his decision to enter a plea in lieu of going forward with a trial.

(O.R. 103-104)

The court advised that conflict-free counsel should handle Mr. Tibbetts' plea withdrawal, and appointed Richard Yohn of the Oklahoma Indigent Defense System. (O.R. 106, 113) On April 18, 2016, Mr. Yohn filed a Brief in Support of Application to Withdraw Plea of Guilty, alleging that:

> 1. The Defendant states to counsel that he has been diagnosed and suffered from Hemochromatosis (accumulation of iron), Cirrhosis of the Liver (caused by the high iron levels), and Hepatitis C. The combination has various side effects as explained in the literature attached hereto.
> 2. One of the side effects of the combination is Hepatic Encephalopathy. This has a symptom of mental confusion, altered level of consciousness and can result in a coma.
> 3. The Defendant states that he was not in his correct mind when the incidents causing the current charges occurred and thus, was mental deficient when acting.
> 4. An expert is needed to correctly evaluate the possibility and likelihood of whether the Hepatic Encephalopathy could have and/or did cause the Defendant to be in an altered state of mind when the crimes occurred.
> 5. The state of mind at the time of the incident is crucial to a fair and impartial determination of guilt and what type of punishment, if any, should be issued.
> 6. Counsel has attached three articles found from Wikipedia, on-line, for the Court's information and review on the conditions that may have affected the Defendant when committing the crimes charged.
> 7. Defense counsel, not having a medical degree, is not able to evaluate, or in the least way, determine whether the Defendant suffered from the infirmative and whether the infirmative affected his actions. Such determination would have to be made by a highly specialized expert dealing with the affects of medical conditions and their side affects on the working of the brain and process of information received.

Attached to the brief were Wikipedia articles related to iron overload, Hepatic Encephalopathy, and Hepatitis C. (O.R. 114-151)

The hearing on Mr. Tibbetts' Application to Withdraw Guilty Plea was held on May 11, 2016. No testimony or evidence was offered, the court did not address

Mr. Tibbetts, and the cursory hearing focused primarily on Petitioner's state of mind at the time of the crimes. Mr. Yohn did not request a contemporaneous competency evaluation. The court denied Mr. Tibbetts' Application. (W Tr. 3-13) Petitioner appeals the denial of his Application to Withdraw Guilty Plea. Additional facts will be discussed as they relate to the propositions of error.

### PROPOSITION I

**MR. TIBBETTS' GUILTY PLEA WAS INVALID, BECAUSE THE COURT - JUST WEEKS AFTER A NOTICE TO DECLARE AN INSANITY DEFENSE WAS FILED - FAILED TO CONDUCT ANY MEANINGFUL INQUIRY INTO PETITIONER'S COMPETENCE.**

Fundamental due process requires that a plea of guilty be shown, on the record, to have been entered knowingly, intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242-243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). "Certainly any determination that the plea was entered knowingly and voluntarily requires a preliminary finding that the accused is competent and thus able to properly exercise his rights." *Frederick v. State*, 1991 OK CR 56, ¶ 6, 811 P.2d 601, 603. In *King v. State*, this Court provided guidelines for accepting guilty pleas, including determination of a defendant's competence. *King v. State*, 1976 OK CR 103, ¶ 11, 553 P.2d 529, 534.

This Court reviews a challenged guilty-plea competency evaluation for compliance with *King*, and failure to adhere to the minimum requirements renders the plea acceptance "fundamentally defective," such that a subsequent denial of a motion to withdraw the plea is deemed an abuse of discretion. *Coyle v. State*, 1985 OK CR 121, ¶ 2, 706 P.2d 547, 547; *Burch v. State*, 1987 OK CR 93, ¶ 3, 738

6

P.2d 157, 158-159. Petitioner's Application to Withdraw Guilty Plea stated in part: "Defendant's plea was not entered knowingly and voluntarily. Mr. Tibbetts believes that the effects of his medical condition and the drugs used to treat his condition had impaired his mental capacity to comprehend what was happening at the time of the entry of his plea." (O.R. 103) The issue is properly before this Court pursuant to Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, tit. 22, ch. 18, app. (2011).[3]

Through counsel, Mr. Tibbetts filed a Notice of Intent to Declare Insanity as Defense on January 20, 2016, alerting the court to his medical conditions and medications, and indicating that Petitioner's "mental capability" was in question. (O.R. 59) There is nothing in the record to suggest that the Notice was frivolous or lacking a factual basis.[4] While the Notice referenced Petitioner's condition at the time of the incidents, the issues underlying the mental health concern - medical ailments and effects of prescriptions - were ongoing, and also called into question Mr. Tibbetts' present competency to proceed through criminal proceedings.

Any criminal proceedings against a person whose competency is in question shall be suspended pending the determination of the competency of the person. 22 O.S.2011, § 1175.2(C). When accepting a guilty plea "[t]he trial court must first determine if the defendant is competent by *appropriate* interrogation of the defendant, and his defense counsel...regarding defendant's past and present

---

[3]The Rule states in part: "No matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea.."

[4]See Rule 3.1 *Oklahoma Rules of Professional Conduct*, tit. 5, ch. 1, app. 3-A (2011), related to Meritorious Claims and Contentions.

mental state, as well as by the defendant's demeanor before the court..." *King*, 1976 OK CR 103, ¶ 11, 553 P.d at 534 (emphasis added).

With the Insanity Notice filed just weeks earlier, the court's entire interrogation related to Mr. Tibbetts' competence was as follows:

Q: Are you under the influence of drugs, medication, or alcohol right now?
A: No, sir.
Q: Have you ever been treated for emotional or mental-health problems?
A: No.
Q: Do you believe that you are mentally competent today?
A: Yes, sir.
Q: Ms. Sorelle, do you agree that he is competent at this time?
A: (Ms. Sorelle) Yes, I do.
Q: Mr. Tibbetts, I've been handed a Plea of Guilty/Summary of Facts Form.[5] Did you complete this form?
A: Yes, sir, I did.
Q: And are the answers to the questions on the form, are they your answers?
A: Yes, sir...
Q: Have you understood all of my questions?
A: Yes, I have.
Q: Have you answered all of my questions truthfully?
A: Yes, sir.
Q: Do you understand what is going on in the courtroom right now?
A: Yes, I do.

Under the circumstances, such a scant probe into Mr. Tibbetts' competence cannot be considered "appropriate."

This Court has found such perfunctory inquiries to be inadequate, rendering denial of a subsequent motion to withdraw the plea an abuse of discretion: *Coyle v. State*, 1985 OK CR 121, ¶ 3, 706 P.2d 547, 548 (asking

---

[5]On the Form, Petitioner claimed no mental health history and to understand all waivers of rights. The box as to who completed the form was unchecked. (O.R. 70-74)

defense counsel if he thought petitioner was competent and asking petitioner his name, age and if he thought himself competent); *Zakszewski v. State*, 1987 OK CR 152, ¶ 4, 739 P.2d 544, 545 (same inquiry as *Coyle*, plus asking about petitioner's education and work history) ("These questions are not enough to establish mental competence."); *Burch v. State*, 1987 OK CR 93, ¶ 3, 738 P.2d 157, 159 (no specific inquiry regarding defendant's competency); *Love v. State*, 1987 OK CR 129, ¶ 2, 738 P.2d 564, 565 (only question into petitioner's competency was whether he was under the influence of any drugs or medication at the time); *Smith v. State*, 1988 OK CR 123, ¶ 4, 757 P.2d 844, 845 (asking defense counsel if petitioner was competent and questioning petitioner only non-competency areas); *Wester v. State*, 1988 OK CR 126, ¶ 2, 764 P.2d 884, 885 (only asking petitioner if he was under the influence of medication and whether he had ever been declared incompetent).

Mr. Tibbetts acknowledges that "the record from which the validity of a guilty plea must be assessed is not limited to that developed at the plea proceeding." *State v. Durant*, 1980 OK CR 21, ¶ 3, 609 P.2d 792, 793. This Court has held that whether or not the *King* procedures are applied in a "ritualistic formula," the surrounding circumstances and record can lead to a finding that the petitioner was competent to enter the plea. *Ocampo v. State*, 1989 OK CR 38, ¶¶ 5-7, 778 P.2d 920, 922-923. In *Berget v. State*, when the petitioner claimed that "not enough questions were asked" to find competency at his guilty plea hearing, this Court again held that the due process protections of *King* do not require mechanical compliance, and looked to the entire record to determine that the

9

petitioner was competent to enter a plea. *Berget v. State*, 1991 OK CR 121, ¶¶ 15, 23, 824 P.2d 364, 370-371.

In the instant petition there are other sources in the record, aside from the guilty plea transcript, that could bear generally on Mr. Tibbetts' competency (e.g. Petitioner's testimony during sentencing),[6] but none of the materials provided insight as to Mr. Tibbetts' mental state on February 10, 2016, when the blind plea was entered. Unlike *Ocampo* and *Berget*, where no cognitive issues were raised until after sentencing, Mr. Tibbetts filed an Insanity Defense Notice on January 20, 2016. The Notice alerted the court (and the State) that Petitioner's mental health was at issue, and necessitated a more thorough competency interrogation, if not an outright forensic exam under 22 O.S.2011, § 1175.3.

This Court also found in *Ocampo* and *Berget* that nothing in the appellate record suggested a competency issue. *Berget*, 1991 OK CR 121, ¶ 23, 824 P.2d at 371. Mr. Tibbetts' record is distinguishable.

Petitioner suffered from a number of medical ailments, including chronic liver disease, Hepatitis C infection, Hemochromatosis, iron overload, and Thrombocytopenia. For these conditions, Petitioner has been treated periodically with a number of medications, including Ribavirin, Sobosfuvir, Peginterferon, Hydrocholrothiazide, Lisinopril, Potassium, Tiotropium, Tramadol, Acetaminophen, Cyanocobalamin, and Ergocalciferol. (State's Exh. 23) According to the Mayo Clinic report admitted at the Sentencing Hearing, Ribavirin can cause

---

[6]Mr. Tibbetts notes that the pre-sentencing investigation cannot be referenced or considered in appellate proceedings. 22 O.S.2011 § 982(D).

depression, suicidal tendencies, and abnormal behaviors. (P. Exh. 1, p. 8) Mr. Tibbetts was also treated with Sovaldi, a drug only recently approved by the Federal Drug Administration. (S Tr. 141) While the State established that Petitioner had been off of the heavier prescriptions for four moths prior to the crimes in May, 2015 (S Tr. 156), the record does not indicate exactly what medications, if any, Mr. Tibbetts was taking in February, 2016, at the time the plea was entered.[7]

The record also suggests that certain of the conditions themselves can have an adverse effect on mental capacity. Articles attached to the Brief in Support of Application to Withdraw Guilty Plea indicate that liver failure can result in Hepatic Encephalopathy, which in turn can lead to confusion, disorientation, altered levels of consciousness, personality changes, and uninhibited behavior. (O.R. 125-126)

Finally, Mr. Tibbetts' petition differs substantially from a previous case in which this Court upheld denial of a guilty plea withdrawal, where the accused initially entered an insanity defense. In *Medlock v. State*, the petitioner in a first degree homicide case pled not guilty by reason of insanity, but immediately prior to trial advised that he wished to enter a blind plea of guilty. *Medlock v. State*, 1994 OK CR 65, ¶ 11, 887 P.2d 1333, 1338. At the plea hearing, the court's determination of competence was buttressed by defense counsel's assurances that both a psychologist and a social worker had interviewed the petitioner and deemed him competent. *Id.*, 1994 OK CR 65, ¶ 12, 887 P.2d at 1339. This Court reviewed

---

[7]On the Plea of Guilty Summary of Facts, Petitioner denied being on drugs which would impair his ability to understand, but there is no listing of current medications.

for plain error the petitioner's contention that the multiple personality disorder evidence presented at sentencing invalidated the plea's factual sufficiency, by casting doubt on petitioner's *mens rea* at the time of the crime. *Id.*, 1994 OK CR 65, ¶ 23-24, 887 P.2d at 1342. At the sentencing hearing, multiple experts testified for each side, and responding to the court's inquiry, at least one defense expert stated that he could not conclude that the defendant was incompetent or insane. *Id.*, 1994 OK CR 65, ¶¶ 14-15, 29, 887 P.2d at 1339-1340, 1343. This Court ultimately concluded on the issue: "While the evidence presented at the sentencing hearing may have given rise to some type of diminished capacity or other defense, the possibility that Medlock may have had a defense at trial does not undermine the validity or voluntariness of the plea." *Id.*, 1994 OK CR 65, ¶ 33, 887 P.2d at 1344.

While the challenge in *Medlock* focused on factual sufficiency rather than on inadequacies of the competency evaluation, the case is instructive, in that where an insanity defense was previously filed 1) the court determined competence at the plea hearing only after the defendant had consulted with mental health professionals, and 2) there was substantial expert testimony on the record for this Court to make its own inference about petitioner's competency. In contrast, despite the Insanity Notice on file, the court conducted only a fleeting interrogation as to Mr. Tibbetts' competency, Petitioner was not evaluated by a professional prior to the plea, no experts testified in this case, and the appellate record is insufficient to make an informed competency determination.

12

If *King's* guilty-plea due-process prophylactic measures are to be taken seriously, when a defendant's mental health is placed at issue by something as pronounced as an insanity filing, the court must make an earnest inquiry into competence. A handful of generic, close-ended questions and one-word answers is inadequate. Without an appropriate interrogation before accepting Petitioner's plea and waiver of constitutional rights, acceptance of the guilty plea was fundamentally defective. The court abused its discretion in denying the application to withdraw the plea. Mr. Tibbetts respectfully requests that he be allowed to withdraw is plea, or alternatively, that his sentence be favorably modified.

## PROPOSITION II

**THE RECORD DID NOT ESTABLISH AN ADEQUATE FACTUAL BASIS, AS EVEN THE STATE ACKNOWLEDGED. THE PLEA CANNOT BE CONSIDERED KNOWING, INTELLIGENT AND VOLUNTARY. THE TRIAL COURT ERRED BY DENYING PETITIONER'S APPLICATION TO WITHDRAW THE GUILTY PLEA.**

Fundamental due process requires that a plea of guilty be shown, on the record, to have been entered knowingly, intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242-243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). A guilty plea which was not entered knowingly and voluntarily constitutes non-waivable, fundamental error, and is always subject to this Court's review. *Hunter v. State*, 1992 OK CR 1, ¶ 2-3, 825 P.2d 1353, 1355. A petitioner who has not entered his plea knowingly and voluntarily must be allowed to withdraw it. *Id.* In his Application to Withdraw Guilty Plea, Mr. Tibbetts stated that his plea was not entered knowingly and voluntarily (O.R. 103), thus preserving the issue pursuant

to Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, tit. 22, ch. 18, app. (2011). This Court reviews denial of a motion to withdraw a plea for abuse of discretion. *Cox v. State*, 2006 OK CR 51, ¶ 18 152 P.3d 244, 251, *overruled on other grounds in State v. Vincent*, 2016 OK CR 7, 371 P.3d 1127.

The factual basis of the plea must be sufficient to provide a means by which the judge can test whether the plea is being entered intelligently. *North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S.Ct. 160, 167-168, 27 L.Ed.2d 162 (1970). Because a guilty plea is an admission of *all the elements* of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170-1171, 22 L.Ed.2d 418 (1969)(emphasis added).  This Court has consistently found an abuse of discretion in denying withdrawal of a guilty plea when there is an insufficient factual predicate for all elements of the offense. See, e.g., *Coyle v. State*, 1985 OK CR 121, ¶ 3, 706 P.2d 547, 548; *Zakszewski v. State*, 1987 OK CR 152, ¶ 6, 739 P.2d 544, 545-546; *Wester v. State*, 1988 OK CR 126, ¶ 5, 764 P.2d 884, 886; *Shepherd v. State*, 1996 OK CR 27, ¶ 8, 920 P.2d 1066, 1067; *Cox v. State*, 2006 OK CR 51, ¶ 30, 152 P.3d 244, 255.

For the incident at Janie's Garden Center on May 9, 2015, Petitioner was charged with Robbery with a Dangerous Weapon (Count I), Possession of a Firearm after Former Felony Conviction (Count II), and two counts of Kidnapping for confinements of Wes Burks and Laura Cornell, respectively (Counts III and IV).

14

In the May 15, 2015, incident involving Troy and Joy Sites, Mr. Tibbetts was charged with two counts of attempted robbery, one for attempting to take the Sites' vehicle and one for attempting to take Ms. Sites' purse (Counts V and VI), and a second count of Possession of a Firearm after Former Felony Conviction (Count VII). (O.R. 54-55)

Mr. Tibbetts notes that other than Count I, all alleged offenses were specific intent crimes. "Knowing and willfully" are elements of Possession of Firearm after Former Felony Conviction. Instruction No. 6-39, OUJI-CR (2d). Kidnapping involves "an intent" to confine. 21 O.S.Supp.2012, § 741. For Attempted Robbery, attempted crimes require "an intent" to commit the underlying crime. *James v. State*, 1985 OK CR 157, ¶ 9, 711 P.2d 111, 113.

With no preliminary hearing in the case, the court relied largely on the Guilty Plea Summary of Facts form and Mr. Tibbetts' answers at the guilty plea hearing to "find a factual basis for accepting your plea of guilty." (GP Tr. 11) With the Notice of Insanity Defense on file, and questions surrounding Petitioner's mental health already raised, the court's interview was devoid of any inquiry into any whether Mr. Tibbetts "meant to" or "intended to" commit the acts. (GP Tr. 8-11)

While answering the court's question about the confinement of Wes Burks, Mr. Tibbetts attempted to clarify what happened, but the court interrupted him and proceeded to ask about the next count. (GP Tr. 9) In *Zaksewski*, this Court cited a similar interruption by the court, over a petitioner trying to explain his

15

version of the incident, as grounds for an inadequate factual basis. *Zakszewski,* 1987 OK CR 152, ¶ 7, 739 P.2d at 546. "The petitioner was thus pleading guilty and simultaneously denying culpability..." *Id.*

Regarding Count VI, attempted robbery of Joy Sites' purse, while Petitioner answered the court's sole question about attempting to take the purse affirmatively with a "yes, sir," his hand-written synopsis in the Summary of Facts form does not mention anything about trying to take a purse. (GP Tr. 10, O.R. 73) Mr. Tibbetts made no detailed statement about this purported attempted robbery, for which he received a separate life sentence. Absence of a detailed statement by the petitioner was another ground this Court cited in *Zaksewski* to find an insufficient factual foundation. *Zakszewski,* 1987 OK CR 152, ¶ 6, 739 P.2d at 546. "The petitioner did not make a detailed statement, nor was he even advised of the elements of the crimes charged." *Id.* There is similarly nothing in the record to indicate that Petitioner was explained the elements of each offense.

To whatever extent a sufficient factual foundation existed at the time of the plea, it was eroded by subsequent revelations. In determining the factual sufficiency of a plea, the entire record, including the sentencing proceedings, should be considered. *Medlock v. State,* 1994 OK CR 65, ¶ 25, 887 P.2d 1333, 1342. "It is important to recognize that the court's ability to consider [the] entire record when determining whether to accept a guilty plea is a double edged sword. Just as the record may be used to establish the factual basis, it may also indicate to the trial court that some element of the crime is lacking. In such a situation,

16

the trial court has an obligation not to accept the plea, notwithstanding the claims of the defendant during the actual plea proceedings..." *Berget v. State*, 1991 OK CR 121, ¶ 17, 824 P.2d 364, 370.

At the opening of the sentencing hearing, the prosecution noted substantial inconsistencies between Mr. Tibbetts' guilty plea and his account in the presentence investigation, particularly as it related to culpability. The State asked the court that Petitioner reaffirm his intention to enter a guilty plea to all counts. The court refused the State's request, indicating that there already *was* a factual basis. (S Tr. 6) The court's reference to the factual basis in the past tense is telling, and contrary to the ongoing evaluation demanded by *Berget*.

Testimony at the sentencing hearing undercut whatever predicate existed for the attempted robbery of the Sites' truck (Count V, for which Petitioner received a life sentence). While it appears that the Petitioner bizarrely took the truck's keys and ran off, neither Troy nor Joy Sites made any mention of Petitioner asking for, or seriously attempting to take their vehicle. (S Tr. 23-37) During his testimony regarding the May 15, 2015 incident, Mr. Tibbetts stated that "I can't even really recall what happened..." (S Tr. 113)

It also became apparent at the sentencing hearing that Petitioner was under the influence of methamphetamine during both incidents. Mr. Tibbetts relapsed on drugs the prior December, and "once it started, I never stopped." (S Tr. 115-116) Sufficient impairment can negate the *mens rea* of specific intent crimes. Instruction No. 8-36, OUJI-CR (2d).

Also at the sentencing hearing, Mr. Tibbetts presented medical literature about the prescription drug, Ribavirin, which can cause depression, suicidal tendencies, and abnormal behaviors. (P. Exh. 1, p. 8) The prosecution established that Petitioner was not on Ribavirin at the time of the crimes, but there was some contention that effects of the medicine can linger for an extended period. (S Tr. 156)

After sentencing, further blows were delivered to the factual basis, as Petitioner provided articles about the effects of liver failure, which can include confusion, disorientation, altered levels of consciousness, personality changes, and uninhibited behavior. (O.R. 125-126) By the time the court was confronted with Mr. Tibbetts' application to withdraw his plea, it had before it considerable information to impugn 1) whether certain of the offenses even occurred, and 2) if Petitioner possessed the requisite mental state for the crimes of which he was convicted.

An accused should be allowed to withdraw the plea where any reasonable ground is offered in support of the request. *See Freeman v. State,* 1973 OK CR 303, ¶ 8, 512 P.2 236, 237. The inconsistencies and doubts surrounding the elements of the underlying offenses compromised the plea's factual basis, so that the court could not sufficiently determine that the plea was entered knowingly, intelligently and voluntarily. This was true at the time the guilty plea was entered, and even more so at the time Petitioner moved to withdraw the plea. Denial of the withdrawal constituted an abuse of discretion. Mr. Tibbetts respectfully requests

that he be allowed to withdraw is plea, or alternatively, that his sentence be favorably modified.

## PROPOSITION III

**PETITIONER WAS NOT PROPERLY ADVISED OF THE PUNISHMENT RANGES FOR THE UNDERLYING OFFENSES, AND THE PLEA CANNOT BE CONSIDERED KNOWING, INTELLIGENT AND VOLUNTARY. THE TRIAL COURT ERRED BY DENYING PETITIONER'S APPLICATION TO WITHDRAW THE GUILTY PLEA.**

Fundamental due process requires that a plea of guilty be shown, on the record, to have been entered knowingly, intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242-243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). A guilty plea which was not entered knowingly and voluntarily constitutes non-waivable, fundamental error, and is always subject to this Court's review. *Hunter v. State*, 1992 OK CR 1, ¶ 2-3, 825 P.2d 1353, 1355. A petitioner who has not entered his plea knowingly and voluntarily must be allowed to withdraw it. *Id.* In his Application to Withdraw Guilty Plea, Mr. Tibbetts stated that his plea was not entered knowingly and voluntarily (O.R. 103), thus preserving the issue pursuant to Rule 4.2(B), *Rules of the Court of Criminal Appeals*, tit. 22, ch. 18, app. (2011). This Court reviews denial of a motion to withdraw a plea for abuse of discretion. *Cox v. State*, 2006 OK CR 51, ¶ 18, 152 P.3d 244, 251.

Mr. Tibbetts' guilty plea hearing began with a muddled, confused discussion between the court, the State and the defense, about the punishment ranges. (GP Tr. 3-8) For certain counts, the sentence ranges determined at the hearing were incorrect and/or inconsistent with Petitioner's plea form. (O.R. 72)

19

|  | Plea Form | Hearing[8] | Correct Range[9] | Authority 21 O.S. § | Actual Sentence |
|---|---|---|---|---|---|
| Count I[10] | 10 - Life | 5 - Life | 10 - Life | 51.1(A)(1) | Life |
| Count II[11] | 10 - Life | ≥ 10 | 1 - 10 | 1283(A) | 10 |
| Count III | 10 - Life | 2 - Life | 10 - Life | 51.1(A)(1) | Life |
| Count IV | 10 - Life | 2 - Life | 10 - Life | 51.1(A)(1) | Life |
| Count V | 10 - Life | 10 - Life | 10 - Life | 51.1(A)(2) | Life |
| Count VI | 10 - Life | 10 - Life | 10 - Life | 51.1(A)(2) | Life |
| Count VII | 10 - Life | 1 - 10 | 1 - 10 | 1283(A) | 10 |

After being misinformed of the sentence ranges on five of the seven offenses, either during the plea hearing, on the plea form, or both, Mr. Tibbetts' guilty plea was not "knowing."

The due process safeguards for guilty pleas established in *King* include notifying a defendant of the punishment range provided by law. *King v. State*, 1976 OK CR 103, ¶ 11, 553 P.2d 529, 534. A record that does not accurately reflect the punishment range is grounds for remand. *Randall v. State*, 1993 OK CR 47, ¶ 10, 861 P.2d 314, 316.

---

[8]As can best be deciphered from the disjointed dialogue.

[9]After one prior conviction. Petitioner was convicted of three counts arising from a single transaction in Comanche County Case CF-1981-660. (O.R. 57)

[10]Petitioner was properly advised that Robbery with a Dangerous Weapon is considered an 85% crime under 21 O.S.Supp.2015, § 13.1. (O.R. 71) (GP Tr. 3-4)

[11]Counts II and VII, Possession of a Firearm after Former Conviction of a Felony, were ineligible for enhancement, as Petitioner's sole prior conviction was listed on the Amended Information as an element of the offenses. (O.R. 54-55) A prior felony cannot be used as both an element of an offense and as punishment enhancement. *Chapple v. State*, 1993 OK CR 38, ¶ 23, 866 P.2d 1213, 1217.

Although Mr. Tibbetts' actual sentences were with the prescribed ranges, and although several of the sentences were to run concurrently, this Court has found fundamental, non-harmless error under similar circumstances. In *Hunter*, the petitioner pled guilty to 1) Obtaining Cash by Bogus Check, and 2) Delivery of a Controlled Dangerous Substance, and was sentenced to two (2) years and twelve (12) years, respectively, with the sentences to run concurrently. *Hunter*, 1992 OK CR 1, ¶ 1, 825 P.2d at 1354-1355. While the actual sentence range for the Bogus Check charge was *not more than ten (10) years*, the trial inadvertently misadvised the petitioner that the range was *two (2) to ten (10) years*. *Id.* This Court reversed and allowed the petitioner to withdraw her plea, emphasizing the roles of both the court and the prosecution when a guilty plea is tendered:

> Because the plea cannot be entered into knowingly where the defendant is not aware of the possible sentence, this Court has imposed the duty on the trial court to advise a criminal defendant of the possible sentence prior to accepting a guilty plea. See *King*, 553 P.2d at 535. In the present case this was not done, for the Court misadvised the defendant. While this duty is placed squarely with the trial court, we are disturbed that when the trial court had some doubt as to the correct sentence, the prosecutor remained silent instead of providing the needed guidance. As officers of the Court, we would anticipate prosecutors would know the sentence for the crime they are prosecuting.

*Hunter*, 1992 OK CR 1, ¶ 4, 825 P.2d at 1355.

Constitutional errors are subject to harmless error analysis. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). In *Hunter*, this Court could not "be sure beyond a reasonable doubt that the appellant was not harmed by the error," because the trial court sentenced the petitioner to what

21

it mistakenly believed was the minimum, when in fact the law allowed a lesser term. *Hunter*, 1992 OK CR 1, ¶ 5, 825 P.2d at 1355. In the instant case, the same can be said for Count II, which properly carried a sentence of one (1) to ten (10) years. The court believed "Count 2 would carry not less than 10 years in prison..." (GP Tr. 5) By ultimately sentencing Petitioner to what it believed to be the minimum, Mr. Tibbetts' case mirrors *Hunter*, and it cannot be said with certainty that Petitioner was not prejudiced. This Court's precedent necessitates that Mr. Tibbetts be allowed to withdraw his plea.

An accused should be allowed to withdraw the plea where any reasonable ground is offered in support of the request. *See Freeman v. State*, 1973 OK CR 303, ¶ 8, 512 P.2d 236, 237. Defense counsel, the State, and the court all failed to ensure Petitioner was properly advised of the sentence ranges, such that his guilty plea would be "knowing." Denial of the withdrawal constituted an abuse of discretion. Mr. Tibbetts respectfully requests that he be allowed to withdraw his plea, or alternatively, that his sentence be favorably modified.

## PROPOSITION IV

### ACCEPTANCE OF PETITIONER'S PLEAS AND IMPOSITION OF SENTENCES VIOLATED PETITIONER'S CONSTITUTIONAL AND STATUTORY PROTECTIONS AGAINST DOUBLE JEOPARDY AND DOUBLE PUNISHMENT.

Multiple punishment claims are fundamental. *Gentry v. State*, 1977 OK CR 152, ¶ 19, 562 P.2d 1170, 1175; *Hunnicutt v. State*, 1988 OK CR 91, ¶ 8, 755 P.2d 105, 109; *Salyer v. State*, 1988 OK CR 184, ¶ 9, 761 P.2d 890, 892; *Ashinky v. State*, 1989 OK CR 59, ¶ 26, 780 P.2d 201, 208. This Court will review for plain

error, even where the matter was not properly preserved below. *Head v. State*, 2006 OK CR 44, ¶ 9, 146 P.3d 1141, 1144. The same is true in the guilty plea context. *Clay v. State*, 1979 OK CR 26, ¶ 3, 593 P.2d 509, 510 (overruled on other grounds by *Davis v. State*, 1999 OK CR 48, 993 P.2d 124) (a guilty plea does not waive a double jeopardy claim); *United States v. Broce*, 781 F.2d 792, 794-797(10th Cir. 1986) (a multiple punishment claim is jurisdictional, and is not waived upon a guilty plea); *Cox v. State*, 2006 OK CR 51, ¶ 4, 152 P.3d 244, 247 (*certiorari* review of a guilty plea includes jurisdictional matters).

Convictions of two crimes based on one criminal transaction are prohibited 1) by statute, 21 O.S.2011 § 11 (a "Section 11 claim"), and 2) Constitutional double jeopardy provisions, U.S. Const. amends. V, XIV; Okla. Const. art. II, § 21. Oklahoma law provides:

> ...an act or omission which is made punishable in different ways by different provisions of this title may be punished under any of such provisions...but in no case can a criminal act or omission be punished under more than one section of law; and an acquittal or conviction and sentence under one section of law, bars the prosecution for the same act or omission under any other section of law.

21 O.S.2011, § 11(A).

In applying Section 11 in *Davis v. State*, this Court rejected the use of other tests (e.g. "ultimate objective" or "primary offense"), in favor of sole reliance on the "single act" test. *Davis v. State*, 1999 OK CR 48, ¶ 11, 933 P.2d 124, 126. The Court explained:

> The proper analysis of a claim raised under Section 11 is then to focus on the relationship between the crimes. If the crimes truly arise

23

out of one act...then Section 11 prohibits prosecution for more than one crime. One act that violates two criminal provisions cannot be punished twice, absent specific legislative intent. This analysis does not bar the charging and conviction of separate crimes which may only tangentially relate to one or more crimes committed during a continuing course of conduct.

*Id.*, at ¶ 13, 126-127. Factors to be considered in a Section 11 analysis are 1) the particular facts of each case, 2) whether those facts set out separate and distinct crimes, and 3) the intent of the Legislature. *Sanders v. State*, 2015 OK CR 11, ¶ 8, 358 P.3d 280, 284.

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). "In cases of double jeopardy claims alleging improper multiple punishment in a single trial, this Court utilizes the same evidence test to determine whether each offense contains an element not contained in the other," *Head*, 2006 OK CR 44, ¶ 15, 146 P.3d at 1146.

A number of Mr. Tibbetts' convictions violate Section 11 and/or double jeopardy.

**A. Count II and Count VII.** Petitioner was twice punished, by imprisonment for ten (10) years each, for Possession of a Firearm After a Former Felony Conviction on May 9, 2015, and for Possession of a Firearm After Former Felony Conviction on May 15, 2015. Officers found a .22 pistol in Mr. Tibbetts' work vehicle on May 22, 2015, matching the description of the weapon given by

24

the victims. (S Tr. 55-60) (State's Exh. 7) The Amended Information describes a ".22 pistol" for both Counts. (O.R. 54-55) At no point in the proceedings was it suggested that a second weapon was involved.

In *Hancock v. State*, this Court considered, as a matter of first impression, multiple felonious possessions of a single firearm under 21 O.S.2001, § 1283.[12] *Hancock v. State*, 2007 OK CR 9, ¶ 114-117, 155 P.3d 796, 823-824. In *Hancock*, double jeopardy resulted from a subsequent felonious possession charge, when the appellant had already been convicted under § 1283 for possessing the same weapon, and the "two possessions" were six months apart. *Id.* This Court held that, absent evidence to the contrary, continued dominion and control over the firearm is presumed, and the possession constitutes a single, ongoing violation. *Id.*

Unlike the six months separating the "possessions" in *Hancock*, Mr. Tibbetts' two § 1283 convictions were for possessing the same pistol twice in *six days*. With no evidence of an interruption, Petitioner's possession was a continuous course of conduct, and multiple convictions thereof constitute double jeopardy. *Hancock* is dispositive of the issue.

**B. Count I and Count III.** In connection with the May 9, 2015, incident at Janie's Garden Center, Mr. Tibbetts was convicted of Robbery with a Dangerous Weapon, and two counts of Kidnapping. He received a life sentence for each of the three offenses.

The Amended Information reads in pertinent part:

---

[12]The current version of the statute is 21 O.S.Supp.2014, § 1283.

COUNT 1: ROBBERY WITH A WEAPON, ...using a .22 pistol and threatening serious bodily injury to Janie's Garden Center employees, Laura Cornell and Wes Burks, if they resisted, and putting them in fear of immediate and unlawful injury to their person.

COUNT 3: KIDNAPPING, ...by forcibly seizing Wes Burks and forcing him to lie on the ground under threat of harm...and confining [him] without lawful authority.

COUNT 4: KIDNAPPING, ...by forcibly seizing Laura Cornell, demanding money and forcing her at gunpoint to exit the business and walk towards her vehicle...thereby confining [her] without lawful authority and with the intent to cause [her] to be confined/imprisoned against her will.

At the sentencing hearing, Mr. Burks testified that Petitioner instructed him to get on the ground and stay on the ground, or either he or Ms. Cornell would be shot. Mr. Burks estimated that he was on the ground anywhere from two to ten minutes. Mr. Burks did not claim that Petitioner physically touched him. (S Tr. 19-21)

Ms. Cornell also testified that Petitioner told Mr. Burks to lie on the ground. She went on to describe that Petitioner grabbed her, held the gun to her head, took the cash from her apron, took her to the parking lot, demanded her keys, and told her to get in the truck. When Ms. Cornell said she did not have her keys with her, he told her to walk to the end of the block, and not to turn around. After she walked to the end of the block as instructed, Ms. Cornell immediately returned to the garden center, and the perpetrator was gone. (S Tr. 10-14)

Unlike the compelled movement of Ms. Cornell, any confinement of Mr. Burks was merely incidental to the robbery itself. Similarly, any "forcible

26

seizure" of Mr. Burks, as alleged in the information, was accomplished by holding

the gun to Ms. Cornell while threatening both employees. There was no separate

act of forcible seizure of Wes Burks. Petitioner has been twice punished for a single

act in violation of Section 11.

Recognizing that some confinement necessarily results in the course of a

robbery, when considering multiple punishment claims from Armed Robbery and

Kidnapping, this Court has been consistent in holding that there must be either

1) a temporal break between the two occurrences, or 2) a prolonged confinement,

to constitute distinct offenses. *Grubb v. State*, 1972 OK CR 141, ¶ 8, 497 P.2d

1305, 1308 ("[T]he Robbery and the Kidnapping were separate and distinct crimes.

Kidnapping did not commence until the completion of the Armed Robbery."); *Hill

v. State*, 1973 OK CR 288, 511 P.2d 604 (convictions for both Armed Robbery and

Kidnapping did not violate double jeopardy when appellant forced the victim to

drive him to a different part of Tulsa and took $27 before exiting the vehicle);

*Stewart v. State*, 1973 OK CR 230, 509 P.2d 1402 (no double jeopardy violations

for Armed Robbery and Kidnapping where several men jumped a deputy sheriff,

beat him, drove him to several different locations, and took the money from his

billfold); *Edwards v. State*, 1991 OK CR 71, 815 P.2d 670 (no merger of Robbery

with Firearms and Kidnapping when appellant bound an elderly couple in their

garage, and then forced them into the home to open their safe).

In the absence of a temporal break or a prolonged confinement, this Court

has held that convictions of both Armed Robbery and Kidnapping violate the

prohibition against multiple punishments. *Bruner v. State*, No. F-2002-108 (Okl.Cr. April 30, 2003) (Kidnapping convictions were double jeopardy, because the kidnappings were not separate and distinct from the robberies and rapes);[13] *Henderson v. State*, No. C-2008-938 (Okl.Cr. September 30, 2009) (Section 11 violation where "The confinement in the condominium was necessary to and a part of the robbery rather than a separate crime.");[14] *Byrd v. State*, No. F-2013-327 (Okl.Cr. April 10, 2014) (A Kidnapping count and Armed Robbery count violated Section 11, because the crimes were not separate and distinct. "Appellant did not complete the taking and carrying away of the victim's personal property before he seized the victim and confined him in the apartment.")[15]

The confinement of Wes Burks was incident to and necessary to effectuate the robbery itself. Petitioner did not confine Mr. Burks and then afterwards rob the garden center. Nor did he rob the center first and then confine Mr. Burks. The entire confinement occurred while the robbery was ongoing, and lasted a matter of minutes. This was one act, not "only tangentially related" separate crimes. Additionally, the "forcible seizure" referenced in the information was pointing the

---

[13]*Bruner* is cited pursuant to Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (Supp. 2014). As required, a copy of the opinion is provided with this brief.

[14]*Henderson* is cited pursuant to Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (Supp. 2014). As required, a copy of the opinion is provided with this brief.

[15]*Byrd* is cited pursuant to Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (Supp. 2014). As required, a copy of the opinion is provided with this brief.

gun at Ms. Cornell and threatening the two victims, which was the exact same act

of force identified in Count I of the Information to satisfy the force/fear element of

Robbery with a Weapon.

Mr. Tibbetts cannot be punished for a single act under more than one

section of the law. Nothing indicates legislative intent to automatically impose two

punishments for an armed robbery. Convictions and sentences for both Count I,

Robbery with a Dangerous Weapon, and Count III, Kidnapping of Wes Burks, run

afoul of 21 O.S.2011, § 11.

**C. Count V and Count VI.** For the May 15, 2015, incident, Mr. Tibbetts was

twice punished, with two life sentences, for attempting to take personal property

form Troy and Joy Sites. The Amended Information reads:

> COUNT 5: ATTEMPTED ROBBERY WITH A DANGEROUS WEAPON
> FIREARM, ...by attempting to rob Troy and Joy Sites by wrongfully
> attempting to take the vehicle that belonged to and was in [their]
> possession from their immediate presence, by fear, without consent
> and against [their] will, specifically, by using a .22 pistol to threaten
> [them] with harm, and putting [them] in fear of immediate and
> unlawful injury to their persons and by taking and carrying away the
> key to the vehicle, but was prevented from completing the Robbery by
> the physical resistance of Troy and Joy Sites.
>
> COUNT 6: ATTEMPTED ROBBERY WITH A DANGEROUS WEAPON
> FIREARM, ...by attempting to rob Joy Sites by wrongfully attempting
> to take and carry away the purse that belonged to and was in [her]
> possession from her person, without her consent and against her will,
> specifically by using a .22 pistol to threaten [her] with harm, and
> putting [her] in fear of immediate and unlawful injury to her person,
> but was prevented from completing the Robbery by [her] physical
> resistance.

(O.R. 55)

As discussed in Proposition II, the court was without a basis to hold Petitioner to his guilty plea for Attempted Robbery of the vehicle, because at the sentencing hearing, 1) Mr. Tibbetts claimed not to remember the incident, and 2) neither of the victims indicated that Petitioner actually tried to take the truck itself - they described a demand for the purse, hitting Mr. Tibbetts and pulling him out of the truck, a passerby intervening, and Petitioner grabbing the keys and fleeing "down the street." (S Tr. 113, 23-37) Alternatively, convictions and sentences for two attempted robberies of the Sites' property in the course of a single, brief incident is a forbidden multiple punishment.

It is not clear whether the State thought two Attempted Robbery counts were appropriate, because there were 1) two owners, 2) two items, or 3) two victims involved. All three positions are without merit.

Any contention that the Sites' ownership of the vehicle and the purse were disparate, and could support the two charges is unfounded. The couple had been married for 67 years. (S Tr. 33) All property acquired during marriage is presumed to be marital property. 43 O.S.Supp.2012 § 121(B). The truck and the purse had common ownership. Even if ownership was different, it is not clear that there would be grounds for separate charges. Applying Oklahoma law, the Tenth Circuit held that two counts of Robbery with Firearms from robbing a liquor store clerk - one for obtaining the store's money and one for obtaining the clerk's personal money- violated double jeopardy. *Mansfield v. Champion*, 992 F.2d 1098, 1099-

1102 (10th Cir. 1993), *distinguished in Rogers v. State*, 1995 OK CR 8, 890 P.2d 959.

Robbery is not a crime against property, but rather a crime against the person. *Orcutt v. State*, 1931 OK CR 412, 52 Okl.Cr. 217, 225, 3 P.2d 912, 915. A critical element of robbery is the awareness by the victim(s) that they are being robbed. *See* 21 O.S.2011 § 796 (an unknown taking is not robbery). The mere fact that more than one item, or more than one type of item, is targeted in a single incident, is insufficient grounds to support multiple convictions. To hold otherwise would lead to absurd results (the robber of a cash drawer would not be charged with separate counts for each acquired bill and coin). In *Keeling v. State*, the appellants were convicted of two counts of Robbery with Firearms for stealing the contents of two cash registers in Claude's Food Store, where two employees were present. *Keeling v. State*, 1991 OK CR 53, ¶ 4, 810 P.2d 1298, 1300. This Court held that while money was taken from two different registers, there was but one criminal transaction, and the two convictions violated the prohibition against both double jeopardy and dual punishment. *Keeling*, 1991 OK CR 53, ¶¶ 11-13, 810 P.2d at 1301. In *Grant v. State*, this Court found that two convictions of First Degree Robbery did not constitute double jeopardy, where forcing a hotel employee to relinquish cash and checks from the register and then moving her into a room and taking the contents of her purse, amounted to two distinct transactions. *Grant v. State*, 2009 OK CR 11, ¶¶ 36-37, 205 P.3d 1, 17. "We find sufficient separation in time and space between the two takings to warrant separate convictions." *Id.* In

the instant case, there was no discernable separation - either temporally or spatially - between the attempted robberies of the Sites' truck and purse.

Separate charges for each victim present during a robbery would also lead to absurd results. Obviously a bank stickup, where ten employs were present, would not yield ten different robbery charges. In *Keeling*, it was of no consequence that two employees were present when the store was robbed. In this case, the State did not charge two counts of robbery when both Ms. Cornell and Mr. Burks were present at the Garden Center.

Two life sentences cannot be sustained from a brief, single transaction, in which Petitioner attempted to take the Sites' purse and truck.

**Conclusion.** Mr. Tibbetts' convictions violated both the Oklahoma and Federal prohibitions against double punishment and double jeopardy. *See* U.S. Const. amend. V; Okla. Const. art II, § 21; 21 O.S.2001, § 11. The error was plain. Petitioner's substantial rights were affected, as the mistake resulted in unnecessary felony convictions and imposition of sentences. See *Barnard v. State*, 2012 OK CR 15, ¶ 32, 290 P.3d 759, 769. Mr. Tibbetts should be afforded relief by reversal of the duplicative counts with instructions to dismiss.

**PROPOSITION V**

**ADMITTING DOCUMENTS PROTECTED BY DOCTOR-PATIENT PRIVILEGE INTO EVIDENCE CONSTITUTED PLAIN ERROR. PETITIONER WAS DEPRIVED A FAIR SENTENCING HEARING, AND THE ERROR CONTRIBUTED TO AN EXCESSIVE SENTENCE.**

As the matter was not included in Mr. Tibbetts' Application to Withdraw Plea of Guilty, this Court will review for plain error. *Medlock v. State*, 1994 OK CR 65,

¶ 24, 887 P.2d 1333, 1342. ("Failure to raise the issue in the application to withdraw constitutes a waiver of the issue. Thus, this Court will review for plain error only.") Courts are permitted to take notice of plain errors that affect substantial rights. 12 O.S.2011, § 2104(D). Plain errors must be reversed if the reviewing court cannot determine with certainty that the error did not influence the outcome. *Simpson v. State*, 1994 OK CR 40, ¶ 36, 876 P.2d 690, 702.

In 2012, Mr. Tibbetts was diagnosed with various ailments, including Hemochromatosis, iron overload, and Hepatitis C. (S Tr. 103-104) For treatment, petitioner went to both the Nazih Zuhdi Liver Transplant Clinic and the Clinton Indian Health Center. (S Tr. 104, State's Exh. 23) In September, 2015, after being charged in this case, Petitioner began seeing counseling psychologist, Jerome Maxey. (S Tr. 127, 150-154)

The State obtained progress notes from the Zuhdi Clinic and the Indian Health Center (State's Exh. 23), and from Mr. Maxey (State's Exh. 24). The notes were admitted into evidence at the sentencing hearing without pause from the court or objection by the defense. (S Tr. 157-158) Both exhibits contained information about privileged communications between Mr. Tibbetts and the professionals.

The impact of divulging these privileged communications cannot be understated, and it eradicated any possibility of leniency from the sentencing court. During the hearing, defense emphasized Mr. Tibbetts' illnesses, medications, and medication side effects, both in an effort to arouse sympathy for Petitioner and

to negate culpability. (S Tr. 103-108, 171) These efforts were thwarted when the State was able to establish from the medical progress notes, that Mr. Tibbetts had been off of the medications for four months prior to the incidents, and that at all times, he reported to his doctors that he was having no adverse side effects from the prescriptions. (S Tr. 129-146, 156, 163)

Defense attempted to humanize Mr. Tibbetts, by focusing on his marriage to the woman he had known since childhood. (S Tr. 98, 170-171) During Petitioner's cross-examination, the Prosecution stated "And then in January 6th of 2016, you tell Mr. Maxey that you think you will end the relationship if it turns out that you don't go to prison because you've decided you can't live with someone whose values are so different and you don't want to worry about everything you say or do and whether it will upset your wife." (S Tr. 155)

Likely most damning were the psychologist's notes, suggesting that Petitioner was dishonest and unremorseful, deflecting accountability for the instant crimes and for his past conviction. (S Tr. 126-127, 151-156, 162-166, 174) For example: "You admitted to Mr. Maxey that the crime you committed was wrong and that you were guilty, but nevertheless, you believed that there were circumstances that influenced your decisions and that your intentions behind the actions were good." (S Tr. 154)

The Oklahoma Evidence Code does not apply to sentencing proceedings, except for rules related to a valid claim of privilege. 12 O.S.2011, § 2103. Section

2503 of the Code sets forth the rule on Physician- and Psychotherapist-Patient

Privilege, and states in pertinent part:

> B. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional condition...
> D. The following shall be exceptions to a claim of privilege:
> 2.Communications made in the course of a court-ordered examination of the physical, medical or emotional condition of a patient, whether a party or a witness, are not privileged under this section when they relate to the particular purpose for which the examination is ordered unless the court orders otherwise;
> 3. The privilege under this Code as to a communication relevant to the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon that condition as an element of the patient's claim or defense ...is qualified to the extent that an adverse party in the proceeding may obtain relevant information regarding the condition by statutory discovery;

12 O.S.2011, § 2503

The statutory exceptions do not apply to Mr. Tibbetts. The sessions with the

counseling psychologist were initiated by Petitioner, of his own accord, and were

not court-ordered. (S Tr. 127, 150-154) Mr. Tibbetts pled guilty to the charges. He

was not relying on any "condition" as a "claim or defense." Relatedly, in addition

to the privileged communications being inadmissible, the State was also without

grounds to seek the information *when* they did, as the sentencing hearing was

some fifty days after the guilty plea. "And then State's 24 is just the behavioral

health records from the Indian Health Center that were – I received pursuant to the

subpoena that we issued earlier this week." (S Tr. 158)

A third exception to the prohibition against doctor-patient privilege is waiver.

"The physician-patient privilege as recognized in Oklahoma may be waived only by

35

the patient. Voluntary disclosure of privileged material constitutes waiver." *Browning v. State*, 2006 OK CR 8, ¶ 30, 134 P.3d 816, 836. At no point did the patient, Mr. Tibbetts, waive the privilege, nor did he ever possess, much less voluntarily disclose, the medical and psychological progress notes.

The court's error was plain. In light of 1) the unfavorable information gleaned and presented from the privileged communications, and 2) the severity of the sentences imposed upon Mr. Tibbetts, it cannot be said with certainty that the error did not affect the outcome. Petitioner was deprived of a fair hearing and due process of law. U.S. Const. amends. VI and XIV; Okla. Const. art. II, § 7. Based on the argument and authorities presented above, Mr. Tibbetts respectfully requests that this Court favorably modify his sentences or remand the case for a new sentencing hearing.

### PROPOSITION VI

### PROSECUTORIAL MISCONDUCT AT BOTH THE SENTENCING HEARING AND THE WITHDRAWAL HEARING DEPRIVED MR. TIBBETTS OF HIS RIGHT TO FAIR PROCEEDINGS.

As the matter was not included in Mr. Tibbetts' Application to Withdraw Plea of Guilty, this Court will review for plain error. *Medlock v. State*, 1994 OK CR 65, ¶ 24, 887 P.2d 1333, 1342. ("Failure to raise the issue in the application to withdraw constitutes a waiver of the issue. Thus, this Court will review for plain error only.") "This Court looks at the entire record to determine whether the cumulative effect of improper conduct by the prosecutor prejudiced an appellant

causing plain error." *Jones v. State*, 2006 OK CR 5, ¶ 76, 128 P.3d 521, 545, *citing*

*Romano v. State*, 1995 OK CR 74, ¶ 54, 909 P.2d 92, 115.

**A. Misconduct at the Sentencing Hearing.** As discussed in Proposition V,

the prosecution improperly obtained and introduced documents that contained

privileged communications between Mr. Tibbetts and his physicians and

psychologist. The privileged communications were referred to frequently during

Petitioner's cross-examination and closing argument, and painted an extremely

negative picture of Mr. Tibbetts in front of the sentencing court.

The State went on to opine that Petitioner's health problems were entirely

self-inflicted, and only a result his immoral lifestyle.

> And I want to talk about your - your medical issues. Now, the medical issues that you have is because of all the drugs and the alcohol that you used over the years; right?

> But the primary reason you have Hepatitis C and you get this iron problem is because you drink and do - do too much drugs; isn't that right? It's the primary reason?

(S Tr. 128)

There was no basis for this proposition, as obviously there are other ways to

contract Hepatitis C, and such served no legitimate purpose in determining

Mr. Tibbetts' appropriate sentence. The sole aim of the statements was to negate

any empathy the judge might feel for an ailing, near 60-year-old man.

During cross examination of defense witnesses, Jerry Kendrick and Edith

Kendrick, the prosecution referred to Petitioner's alleged infidelity.

Q: And Mr. Kendrick, are you aware that this Teresa person that he was supposed to be helping out, he was actually unfaithful to his wife with her? Were you aware of that?
A: Has that been proven?
Q: He admitted it to his wife, sir.

Q: Were you aware that he was having an affair?
A: No. I do not know that.

(S Tr. 89, 95)

No evidence of this supposed affair was presented, and the matter had not been discussed previously in the proceeding. The State apparently deduced this information from a recorded interview at the police station. (S Tr. 148) The sole aim of bringing up Mr. Tibbetts' affair was to confuse and embarrass his character witnesses, and to inflame the court's passion and prejudice.

When there is an accumulation of prosecutorial misconduct, and the precise impact on sentencing cannot be determined, modification of a severe sentence is appropriate. *Spees v. State*, 1987 OK CR 62, ¶ 20, 735 P.2d 571, 576

**B. Misconduct at the Plea Withdrawal Hearing**. In his Application to Withdraw Guilty Plea, Mr. Tibbetts indicated that his plea was not knowing and voluntary, and that he should be evaluated by a mental health expert to determine the effect that his medical conditions and prescriptions had on his decision to enter a plea. (O.R. 103-104) At the May 11, 2016, hearing, the State posited to the court that Petitioner *had already been evaluated* by a professional:

Basically, defense counsel's argument is that the defendant should be mentally evaluated before we proceed with this. And I would submit to the Court that the record indicates that the defendant has already been mentally evaluated.

The State went on to describe that since the blind plea came after the notice to declare an insanity defense, that Petitioner must have seen a expert, who determined him sane. She continued:

> Based on that and the way everything transpired, the record, I would submit, supports that the defendant was evaluated and a determination - a strategic decision was made that they could not proceed on the notice of intent to declare insanity as a defense, because there wasn't any evidence of it.

(W Tr. 6-7)

There is absolutely nothing in the record indicating that Mr. Tibbetts consulted with a mental health professional for the purpose of gauging his competence at either the time of the incidents or at the time of the plea. While the State's theory is possible, there are other tenable explanations fro abandoning the insanity defense. It was improper for the State to postulate such a bare inference to the court on this crucial issue.

Indicating that Mr. Tibbetts had already consulted with an expert confused newly-appointed defense counsel into not requesting a competency hearing. (W Tr. 10-11) The conjecture misled the court, which subsequently denied withdrawal of the unintelligent plea. The State's conduct at the withdrawal hearing was not in keeping with fundamental prosecutorial ethics.[16] "If a prosecutor or defense attorney has any reservation as to whether the defendant is entering a plea in

---

[16] See Standards 3-1.2 and 3-1.4, *American Bar Association Standards for Criminal Justice, Prosecution Function* (4th Ed. 2015) (Functions and Duties of the Prosecutor) (The Prosecutor's Heightened Duty of Candor)

compliance with *Boykin*, then they have a duty to advise the court." *Ocampo v. State*, 1989 OK CR 38, ¶ 6, 778 P.2d 920, 923.

**Conclusion**. Mr. Tibbetts was deprived of a fair trial and due process of law by the prosecutorial misconduct set out above. U.S. Const. amends. VI and XIV; Okla. Const. art. II, § 7. When there is any doubt that improper argument has affected the proceedings, the benefit of the doubt should be given to the accused. *Sykes v. State*, 1951 OK CR 154, 95 Okl.Cr. 14, 18, 238 P.2d 384, 388. Mr. Tibbetts respectfully requests that he be allowed to withdraw is plea, or alternatively, that his sentence be favorably modified.

**PROPOSITION VII**

**PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL THROUGHOUT THE CASE IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. II, §§ 7 AND 20, OF THE OKLAHOMA CONSTITUTION.**

"Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984). The right to counsel extends to every critical stage of a criminal prosecution, which includes hearings to withdraw a guilty plea. *Randall v. State*, 1993 OK CR 47, ¶ 7, 861 P.2d 314, 316. Ineffective assistance is established if 1) counsel's performance was constitutionally deficient, and 2) counsel's deficient perfromance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 691-692, 104 S.Ct. 2052, 2066-2067, 80 L.Ed.2d 674 (1984); *Malone v. State*, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206. This Court reviews

ineffective assistance claims *de novo*. *Hanson v. State*, 2009 OK CR 13, ¶ 35, 206 P.3d 1020, 1031.

Mr. Tibbetts was denied effective assistance of counsel throughout the district court proceedings. The performance of both plea counsel and withdrawal counsel was deficient under any measure of prevailing professional norms of practice.

**A. Plea Counsel Mishandled Petitioner's Mental Health/Competency Issues.** Mr. Tibbetts incorporates the discussion from Proposition I. Ms. Sorelle raised Mr. Tibbetts' mental health issues when she filed the Notice of Intent to Declare Insanity as Defense on January 20, 2016. The Notice indicated she was seeking information and an expert opinion to determine Petitioner's mental capability at the time of the offenses. (O.R. 59-60) Contrary to the State's conclusory inference that Petitioner did consult an expert discussed in Proposition VI, the record is void of any further inquiry into the issue. Counsel had a specific duty to A) investigate, or B) a make a reasonable decision that investigation was unnecessary. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Strategic choices made after incomplete investigation are reasonable only to the extent that reasonable professional judgements support discontinuing the investigation. *Id.* Ms. Sorelle did not follow through with the investigation proposed in the Notice, and the record lacks grounds to support such a decision. Three weeks after the Insanity Notice was filed, Mr. Tibbetts appeared in court and tendered his blind guilty plea. After placing Petitioner's mental state at issue with the Notice,

41

Ms. Sorelle stood by and let her client enter the plea without a competency evaluation, and without even a serious interrogation by the court.

Assuming the Insanity Notice - raising ongoing concerns about Mr. Tibbetts' mental health - was meritorious (an attorney shall not assert an issue, unless there is a legal and factual basis for doing so. Rule 3.1 *Oklahoma Rules of Professional Conduct*, tit. 5, ch. 1, app. 3-A (2011)), counsel either 1) allowed her impaired client to tender a guilty plea (bound by the Rules of Professional Conduct, defense counsel must raise the issue of competency if there are articulable facts questioning defendant's present mental condition prior to entering a plea. *Ocampo v. State*, 1989 OK CR 38, ¶ 5, 778 P.2d 920, 922.), or 2) was aware of intervening events bearing on Mr. Tibbetts' "mental capability," and failed to notify the State, the court, or otherwise make a record thereof (*See, e.g.* the continuing duty to disclose under the Oklahoma Criminal Discovery Code. 22 O.S.2011, § 2002(C)). In any case, counsel was ineffective in her handling of the matter. Mr. Tibbetts was prejudiced by the court's acceptance of his guilty plea without a proper competency determination, when his mental state had already been placed at issue, and the record was bare of any resolution on the matter.

**B. Plea Counsel Allowed Petitioner to Plead Guilty to Charges Lacking a Sufficient Factual Basis.** Mr. Tibbetts incorporates the discussion from Proposition II. Six of the seven charges were specific-intent crimes, and while there were questions surrounding Petitioner's mental state at the time of the plea, the concerns were amplified in the subsequent proceedings, even causing the State to

question the plea's factual basis. (S Tr. 6) Medical literature was presented about the effects of Mr. Tibbetts' medication (P. Exh. 1), and it became apparent that Petitioner was on methamphetamine at the time of the incidents (S Tr. 115-116). It is not clear that Mr. Tibbetts was capable of possessing the requisite culpability for the crimes. Further, at the sentencing hearing, the plea to Count V - Attempted Robbery of the Sites' truck - became especially dubious. Neither victim indicated that Petitioner tried to steal the vehicle (S Tr. 23-37), and for his part, Mr. Tibbetts stated that "I can't even recall what happened..." (S Tr. 113) Unlike the State, at no point did Ms. Sorelle raise the factual sufficiency issue to the court. Counsel allowed Mr. Tibbetts to enter a guilty plea which was not knowing, intelligent and voluntary. After the factual basis was completely undermined, she made no effort to bring the matter to the court's attention. Mr. Tibbetts was prejudiced by forgoing trial and receiving harsh sentences for charges that either never happened, lacked a predicate for all elements, or to which there was a viable defense (e.g. voluntary intoxication).

**C. Plea Counsel Allowed Petitioner to Plead Guilty Without Being Properly Advised of the Sentence Ranges**. Mr. Tibbetts incorporates the discussion from Proposition III. Several of the sentence ranges Ms. Sorelle listed on the plea form were incorrect. (O.R. 72) Her performance during the plea hearing, where Petitioner (and the court) should have been clearly and accurately informed of the sentence ranges, was substandard and injected further confusion. (GP Tr. 3-8) "Under no circumstances should defense counsel recommend to a defendant

43

acceptance of a plea unless appropriate investigation and study of the case has been completed, *including an analysis of controlling law…*" Standard 4-6.1(B), *ABA Standards for Criminal Justice: Prosecution and Defense Function* (3rd Ed. 1993) (emphasis added). At no point in the record was Petitioner correctly advised of the punishment ranges for the charges to which he pled, rendering his plea "unknowing." As the court ultimately sentenced Mr. Tibbetts to what it incorrectly believed to be the minimum term for Count II (GP Tr. 5) - but the minimum was actually nine years less - the error was not harmless. *Hunter v. State*, 1992 OK CR 1, ¶ 5, 825 P.2d 1353, 1355.

**D. Plea Counsel Allowed Petitioner to Plead Guilty to All Counts, Resulting in Impermissible Multiple Punishments**. Mr. Tibbetts incorporates the discussion from Proposition IV. At least three of Petitioner's convictions are redundant and doubly punish a single criminal transaction, in violation of Federal and State law. "A lawyer shall provide competent representation to a client," which "requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Rule 1.1, *Oklahoma Rules of Professional Conduct*, tit. 5, ch. 1, app. 3-A (2011). "Competent handling of a particular matter requires inquiry into and analysis of the factual and legal elements of the problem…" *Id.*, Comment 5 to Rule 1.1. Failure to scrutinize the Information, and allowing Petitioner to plead to obviously duplicative charges, cannot be considered competent representation. The ineffectiveness led to convictions and sentences,

which were avoidable. Further, by neglecting to raise the issue below, Ms. Sorelle's error has led to only a plain-error review by this Court.

**E. Plea Counsel Failed to Object to Privileged Material Introduced at the Sentencing Hearing**. Mr. Tibbetts incorporates the discussion from Proposition V. At the sentencing hearing, the State presented materials (State's Exh. 23 and 24), which were clearly inadmissible pursuant to 12 O.S.2011, § 2503. "We cannot conceive how defense counsel's [failure to interpose an appropriate objection] could have been valid trial strategy." *Collis v. State*, 1984 OK CR 80, ¶ 9, 685 P.2d 975, 977. Not only did counsel fail to object to introduction of her client's privileged information, it also appears that she actually helped the State acquire the materials. (S Tr. 157-158) The medical and psychiatric progress notes painted Mr. Tibbetts in an unfavorable light in front of the sentencing court, and most likely contributed to his lengthy sentences. Further, by neglecting to raise the issue below, Ms. Sorelle's error has led to only a plain-error review by this Court.

**F. Plea Counsel Failed to Object to the State's Improper Statements at the Sentencing Hearing**. Mr. Tibbetts incorporates the discussion from Proposition VI. During the cross-examination of defense witnesses, the prosecution made a number unsubstantiated and irrelevant statements, with the sole intention of inflaming the sentencing court's passion and prejudice. (S Tr. 89, 95, 128) This Court has held that failure to make a proper objection can constitute ineffective assistance of counsel. *See Aycox v. State*, 1985 OK CR 83, ¶ 6, 702 P.2d 1057, 1058. Mr. Tibbetts contends that these statements contributed to the harsh

sentences allotted by the court. Further, by neglecting to raise the issue below, Ms. Sorelle's error has led to only a plain-error review by this Court.

**G. Plea Counsel Failed to Invoke the Rule of Sequestration at the Sentencing Hearing.** 12 O.S.2011, § 2615 allows a party to request the exclusion of witnesses so that they do not hear the testimony of other witnesses. Crime victims are exempt from the rule "unless the court finds such exclusion to be in the interest of justice." All four victims were asked what they thought Mr. Tibbetts punishment should have been. All replied that Petitioner should receive a life sentence. (S Tr. 16, 22, 32, 37) This question warranted each individual's truly independent answer. A witness improperly influenced by another witness's testimony "is the evil the rule of sequestration is designed to remedy." *Bosse v. State*, 2015 OK CR 14, ¶ 46, 360 P.3d 1203, 1223. The State, referring to the previous victims' answers, invited a conforming response (e.g. "You have heard some of the other witnesses give an opinion to the court as to what they believe should happen in the case. Do you have a request for a sentence for the defendant?" (S Tr. 31-32)). Counsel never invoked, or attempted to invoke the rule. All four victims requesting a life sentence likely contributed to the court's imposition of five life sentences (two of which are consecutive) and two ten-year sentences.

**H. Withdrawal Counsel Was Ineffective.** Mr. Yohn filed a Brief in Support of Application to Withdraw Plea of Guilty on April 18, 2016. (O.R. 114-151) The brief merely summarized Mr. Tibbetts' medical condition (including three Wikipedia

articles) and added no substance to the effort to withdraw the plea. Most importantly, despite being prompted by the court several times at the withdrawal hearing, Mr. Yohn did not request a contemporaneous competency determination. (GP Tr. 3-13) "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 1037, 145 L.Ed.2d 985 (2000). Omissions that "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness," may fall below the constitutional minimum standard of effectiveness. *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

**Conclusion**. Given the ineffective assistance and the resulting prejudice, this Court should grant the Petition for Certiorari, vacate Petitioner's conviction and remand his case to the Beckham County District Court with instructions to allow Mr. Tibbetts to withdraw his plea of guilty and 1) proceed to trial, 2) or to enter a valid plea of guilty with counsel who will advocate for his interests and render him the effective assistance to which he is entitled.

**PROPOSITION VIII**

**CUMULATIVE ERRORS DEPRIVED MR. TIBBETTS OF A FAIR PROCEEDING AND A RELIABLE OUTCOME.**

Should this Court find that none of the above propositions, standing alone, warrant relief, Petitioner requests that this Court consider the cumulative effect of these errors. Even when trial errors, viewed separately, do not amount to reversible error, their cumulative effect may nevertheless deprive an accused of a fair trial.

47

*See, e.g., Peninger v. State,* 1991 OK CR 60, ¶ 23, 811 P.2d 609, 613; *Chandler v. State,* 1977 OK CR 324, ¶ 13, 572 P.2d 285, 289-290.

The errors in this case, taken together, deprived Mr. Tibbetts of a fair proceeding. U.S. Const. amends. V and XIV; Okla. Const. art. II, § 20. Therefore, Petitioner respectfully requests that this Court allow withdrawal of his pleas or favorably modify his convictions and sentences. Alternatively, Mr. Tibbetts requests that this Court reverse and remand his case for anew hearing on him Motion to Withdraw Plea.

## CONCLUSION

For the reasons and authorities cited herein, Petitioner respectfully requests that this Court allow withdrawal of his pleas of favorably modify his conviction and/or sentence in the interest of justice.

Respectfully submitted,

KENNETH HAROLD TIBBETTS

By: _____

Chad Johnson
Appellate Defense Counsel
Oklahoma Bar No. 32432
P.O. Box 926
Norman, Oklahoma 73070
(405) 801-2727
ATTORNEY FOR PETITIONER

**CERTIFICATE OF SERVICE**

This is to certify that on October 10, 2016, a true and correct copy of the foregoing Brief of Petitioner was served upon the Attorney General by leaving a copy with the Clerk of the Court of Criminal Appeals for submission to the Attorney General, and a copy was caused to be mailed, via United States Postal Service, postage pre-paid, to Petitioner at the address set out below, on the date of filing or the following business day.

Kenneth Harold Tibbetts #122414
Lexington Correctional Center
P.O. Box 260
Lexington, OK 73051

Chad Johnson

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

APR 3 0 2003

MICHAEL S. RICHIE
CLERK

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

RICKY DION BRUNER,                    )
                                      )
            Appellant,                )        **NOT FOR PUBLICATION**
                                      )
v.                                    )        **Case No.   F-2002-108**
                                      )
THE STATE OF OKLAHOMA,                )
                                      )
            Appellee.                 )

## SUMMARY OPINION

**LUMPKIN, J.:**

Appellant, Ricky Dion Bruner, was tried by jury in the District Court of Oklahoma County, Case No. CF-2000-6316 (consolidated with CF-1999-6798), and convicted of the following crimes:  three counts of Robbery with Firearms (Counts I, II, and III), in violation of 21 O.S.Supp.1999, § 801; two counts of Assault and Battery with a Deadly Weapon with intent to kill (Counts IV and V), in violation of 21 O.S.Supp.1999, § 652; two counts of Kidnapping (Counts VI and VII), in violation of 21 O.S.Supp.1999, § 741; Second Degree Rape (Count X) and First Degree Rape (Count XII), both in violation of 21 O.S.1999, § 1111 and 21 O.S.1991, § 1114.  The jury set punishment at life imprisonment without parole on each of Counts I, II, IV, V, and XII, twenty-five (25) years imprisonment on Count III, ten (10) years imprisonment on each of Counts VI and VII, and fifteen (15) years imprisonment on Count X.  The trial judge sentenced Appellant in accordance with the jury's verdict on Counts III, VI, VII, and X.  However, because the jury imposed sentences in excess of that allowed by law, the trial court sentenced Appellant to life imprisonment on Counts I, II, and XII and twenty (20) years imprisonment on Counts IV and V, all sentences

1

to be served consecutively. Appellant now appeals his various convictions and sentences.

Appellant raises the following propositions of error in this appeal:

I. Appellant's multiple convictions arising from a single criminal episode are in violation of statutory and constitutional prohibitions against double jeopardy;

II. The evidence was insufficient to support Appellant's convictions for assault and battery with a deadly weapon with intent to kill or second degree rape [by instrumentation] of Ms. Kelly; and

II. Appellant's sentences are excessive, disproportionate, and violative of federal and state constitutional prohibitions against cruel and unusual punishment.

After a thorough consideration of these propositions and the entire record before us, including the original record, transcripts, and briefs of the parties, we find the two kidnapping convictions must be reversed, but we otherwise affirm.

With respect to proposition one, we find a double jeopardy violation occurred when Appellant was convicted for two counts of kidnapping. The evidence does not reflect that the kidnappings were separate and distinct crimes from the robberies and rapes Appellant committed or participated in as an aider and abettor. *Davis v. State*, 993 P.2d 124, 126 (Okl.Cr.1999).

With respect to proposition two, we find, after viewing the evidence in the light most favorable to the State and accepting all reasonable inferences and credibility choices that tend to support the jury's verdict, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203-204 (Okl.Cr.1995); *Powell v. State*, 995 P.2d 510, 524 (Okl.Cr. 2000).

With respect to proposition three, we find Appellant's remaining sentences, although severe, are not so excessive as to shock the conscience of the Court. *Rea v. State*, 34 P.3d 148,149 (Okl.Cr.2001).

### DECISION

The judgment and sentences on Counts I, II, III, IV, V, X, and XII are hereby **AFFIRMED**. The judgments and sentences on Counts VI and VII, kidnapping, are hereby **REVERSED** with instructions to **DISMISS**. This matter is **REMANDED** to Oklahoma County for further proceedings consistent herewith.

AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
THE HONORABLE SUSAN W. BRAGG

**APPEARANCES AT TRIAL**

ANTHONY SYKES
EUGENIA BAUMAN
ASSISTANT PUBLIC DEFENDERS
320 ROBERT S. KERR, SUITE 611
OKLAHOMA CITY, OK  73102
COUNSEL FOR APPELLANT

PATTYE HIGH
JOELYNN MCCORMICK
ASSISTANT DISTRICT ATTORNEYS
320 ROBERT S. KERR, SUITE 505
OKLAHOMA CITY, OK  73102
COUNSEL FOR THE STATE

**APPEARANCES ON APPEAL**

CAROLYN L. MERRITT
ASSISTANT PUBLIC DEFENDER
OKLAHOMA COUNTY PUBLIC
    DEFENDER'S OFFICE
611 COUNTY OFFICE BUILDING
OKLAHOMA COUNTY, OK  73102
COUNSEL FOR APPELLANT

W.A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
KEELEY L. HARRIS
ASSISTANT ATTORNEY GENERAL
112 STATE CAPITOL BUILDING
OKLAHOMA CITY, OK  73105
COUNSEL FOR THE STATE

**OPINION BY:     LUMPKIN, J.**
JOHNSON, P.J.: CONCUR
LILE, V.P.J.: CONCUR
CHAPEL, J.: CONCUR IN PART/DISSENT IN PART
STRUBHAR, J.: CONCUR

RE

## IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

CLAUDE M. BYRD, III,                    )
                                        )
          Appellant,                    )          **NOT FOR PUBLICATION**
     v.                                 )
                                        )          Case No. F-2013-327
STATE OF OKLAHOMA                       )
                                        )                    **FILED**
          Appellee.                     )          IN COURT OF CRIMINAL APPEALS
                                                       STATE OF OKLAHOMA

### S U M M A R Y   O P I N I O N            APR 1 0 2014

**LUMPKIN, JUDGE:**                              MICHAEL S. RICHIE
                                                       CLERK

Appellant Claude M. Byrd, II, was convicted in a non-jury trial of Conspiracy to Commit Robbery with Firearm (Count 1) (21 O.S.2011, § 421); Robbery with a Firearm (Counts 2, 3, & 4) (21 O.S.2011, § 801) and Kidnapping (Counts 5-10) (21 O.S.2011, § 741), Case No. CF-2011-450 in the District Court of Comanche County.[1]   The trial court sentenced Appellant to imprisonment for five (5) years in Count I, fifteen (15) years with all but the first ten (10) years suspended in Counts 2, 3, & 4 and ten (10) years in each of Counts 5 – 10, all sentences to run concurrently.  It is from this judgment and sentence that Appellant appeals.

Appellant raises the following propositions of error in support of his appeal:

> I.    The State failed to present sufficient evidence to support convictions for First Degree Robbery of Bruton and Sanders, and six convictions for Kidnapping.

---

[1] Appellant will be required to serve eighty-five percent (85%) of his sentences for Robbery with a Firearm (Counts 2, 3, & 4). 21 O.S. 2011, § 13.1.

II.    Convictions and sentences for both Robbery with a Firearm in Counts 2-4 and Kidnapping in Counts 7, 9, & 10 violated Appellant's right to be free from multiple punishment under 21 O.S.§ 11.

III.    Defense counsel's ineffective assistance prejudiced Appellant.

IV.    The trial court abused its discretion by admitting irrelevant evidence, violating Appellant's rights to due process and a fair trial.

V.    During sentencing, the trial court committed, what amounts to instructional error, by misapplying the law to the facts of the case, thereby depriving Appellant of a fair trial.

VI.    The cumulative effect of all the errors deprived Appellant of a fair trial.

After thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we have determined that under the law and evidence, Appellant's conviction in Count 9 is reversed.

In Proposition I, we have reviewed Appellant's challenges to the sufficiency of the evidence to support his convictions in Count 2 (the robbery of Nicole Bruton), Count 4 (the robbery of Corey Sanders) and six (6) counts of kidnapping, in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Rutan v. State*, 2009 OK CR 3, ¶ 49, 202 P.3d 839, 849.

2

All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals and are equally culpable with other principals. *Conover v. State,* 1997 OK CR 6, ¶ 18, 933 P.2d 904, 910-911. *See also* 21 O.S.2011, § 172. Whether Appellant was in the apartment at the time co-defendant Daly took the personal property of Ms. Bruton and Mr. Sanders in the back bedroom, or whether Appellant arrived seconds later, his participation in the remainder of the acts necessary to carry out the robbery rendered him culpable in the robbery of Ms. Bruton and Mr. Sanders. That participation, which included tying up another person in the apartment and holding the six occupants at gunpoint, was sufficient to support convictions for kidnapping.

Additionally, "[w]hen a conspiracy is entered to do an unlawful act, responsibility is not limited to the accomplishment of the common design. Rather, 'it extends to and includes collateral acts incident to and growing out of the common design.' *Johnson v. State,* 1986 OK CR 134, ¶ 8, 725 P.2d 1270, 1273. Here, Appellant and his co-defendants entered into an agreement to rob Mr. Gonzalez. However, in carrying out that plan they encountered several other people in the apartment whom they found it necessary to rob and confine against their will. Appellant was criminally responsible for the acts of his co-conspirators in furtherance of their conspiracy to rob Mr. Gonzalez. *Hatch v. State,* 1983 OK CR 47, ¶ 19, 662 P.2d 1377, 1382.

3

In Proposition II, Appellant contends that his convictions for both robbery with a firearm (Counts 2-4) and kidnapping (Count 5-10) violate the State statutory prohibition against double punishment.   21 O.S.2011, § 11(A). Appellant committed numerous offenses against six separate people.   The offenses in Counts 5, 6, and 8 were committed against different individual victims than in the other challenged counts.   Accordingly, we find that the offenses were separate and distinct offenses which do not violate § 11(A). *Hoffman v. State*, 1980 OK CR 35, ¶ 8, 611 P.2d 267, 269-70; *Jennings v. State*, 1973 OK CR 74, ¶ 15, 506 P.2d 931, 935; *Wilson v. State*, 1973 OK CR 43, ¶ 10, 506 P.2d 604, 607.

We further find that Appellant's convictions for Counts 2, 4, 7, and 10 do not violate § 11(A) as they did not arise out of one act.   *Logsdon v. State*, 2010 OK CR 7, ¶ 17, 231 P.3d 1156, 1164-65; *Watts v. State*, 2008 OK CR 27, ¶ 16, 194 P.3d 133, 139; *Davis v. State*, 1999 OK CR 48, ¶ 13, 993 P.2d 124, 126-27.   The offense of robbery with a firearm committed toward Ms. Bruton in Count 2 was complete when Appellant's co-conspirator took the victim's $10.00 and carried it away for the slightest distance.   Inst. No. 4-146, OUJI-CR(2d) (Supp.2013); *Cunningham v. District Ct. of Tulsa Co.*, 1967 OK CR 183, ¶ 24, 432 P.2d 992, 997; *Brinkley v. State*, 1936 OK CR 117, 61 P.2d 1023, 1025. The offense of kidnapping Ms. Bruton as alleged in Count 7 was committed when Appellant's co-conspirator seized the same victim with the intent to confine her inside the apartment.   *See Ziegler v. State*, 1980 OK CR 23, ¶ 10, 610 P.2d 251, 254.

4

We reach the same conclusion as to Counts 4 and 10. The offense of robbery with a firearm of Mr. Sanders as alleged in Count 4 was complete when Appellant's co-conspirator took the victim's $100.00 and carried it away for the slightest distance. Thereafter, the offense of kidnapping Mr. Sanders as alleged in Count 10 was committed when Appellant's co-conspirators seized the same victim with the intent to confine him inside the apartment. *Id.*

However, we find that Appellant's conviction for the offense of kidnapping Mr. Gonzalez in Count 9 was not a separate and distinct offense from his conviction for robbery with a firearm of Mr. Gonzalez as alleged in Count 3. The State charged Appellant with robbery with a firearm in the taking of the victim's "cash and personal property" in Count 3. Although Appellant took and carried away Mr. Gonzalez's cash very early in the criminal episode, the evidence at trial revealed that Appellant did not complete the taking and carrying away of the victim's personal property before he seized the victim and confined him in the apartment. See *Ziegler*, 1980 OK CR 23, ¶ 10, 610 P.2d at 254. Accordingly, we find that the two offenses violate § 11(A) as they arose from the same act. *Davis*, 1999 OK CR 48, ¶ 13, 993 P.2d at 126-27. Appellant's conviction in Count 9 is reversed.

In Proposition III, we have thoroughly reviewed Appellant's numerous claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (counsel is presumed competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to

5

demonstrate both a deficient performance and resulting prejudice). *Eizember v. State,* 2007 OK CR 29, ¶ 151-152, 164 P.3d 208, 244. We find Appellant has not shown either deficient performance or prejudice sufficient to warrant relief. Further, we have reviewed Appellant's *Application for Evidentiary Hearing on Sixth Amendment Grounds* pursuant to Rule 3.11(B)(3)(6), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013) and found he has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to fully investigate potential witnesses and for failing to act as an advocate at sentencing. *See Grissom v. State,* 2011 OK CR 3, ¶ 80, 253 P.3d 969, 995.

In Proposition IV, we find no abuse of the trial court's discretion in admitting evidence of co-defendant McLaren's shooting of four people in the apartment as *res gestae.* *See State v. Delso,* 2013 OK CR 5, ¶ 5, 298 P.3d 1192, 1194 (an abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue or a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented). The evidence merely helped to recreate the circumstances of the charged crimes. *See McElmurry v. State,* 2002 OK CR 40, ¶ 63, 60 P.3d 4, 21-22. Further, the record reflects that in this non-jury trial, the trial judge did not consider co-defendant McLaren's shooting of those in the apartment in determining Appellant's guilt.

In Proposition V, we review only for plain error. To be entitled to relief under the plain error doctrine, Appellant must prove: 1) the existence of an

6

actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923; 20 O.S.2001, § 3001.1. If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice." *Id.* The trial court appropriately applied the law of conspiracy in determining Appellant's guilt. *See Hatch,* 1983 OK CR 47, ¶ 19, 662 P.2d at 1382. Finding no error, we find no plain error.

In Proposition VI, as discussed above, we found the law and the evidence necessitate reversing the conviction in Count 9. No other alleged errors, when considered singly and cumulatively, warrant relief. *See Williams v. State*, 2001 OK CR 9, ¶ 127,  22 P.3d 702, 732 (when there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial).

Accordingly, this appeal is denied.

### DECISION

The Judgment and Sentence in **Count 9** is **REVERSED.** All other Judgments and Sentences are **AFFIRMED.** The Application for Evidentiary Hearing on Sixth Amendment Grounds is **DENIED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2014), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF COMANCHE COUNTY
THE HONORABLE KEITH B. AYCOCK, DISTRICT JUDGE

**APPEARANCES AT TRIAL**

DON HERRING
3000 CENTER STE. 208
3000 UNITED FOUNDERS BLDG.
OKLAHOMA CITY, OK  73112
COUNSEL FOR DEFENDANT

FRED C. SMITH
DISTRICT ATTORNEY
EDDIE VALDEZ
ASSISTANT DISTRICT ATTORNEY
COMANCHE COUNTY COURTHOUSE
315 S.W. 5TH ST.
LAWTON, OK  73501
COUNSEL FOR THE STATE

**APPEARANCES ON APPEAL**

RAYMOND DENECKE
P.O. BOX 926
NORMAN, OK  73070
COUNSEL FOR APPELLANT

E. SCOTT PRUITT
ATTORNEY GENERAL OF OKLAHOMA
THEODORE M. PEEPER
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST ST.
OKLAHOMA CITY, OK  73105
COUNSEL FOR THE STATE

**OPINION BY:  LUMPKIN, J.**
LEWIS, P.J.:  CONCUR
SMITH, V.P.J.:  CONCUR IN RESULT
C. JOHNSON, J.:  CONCUR
A. JOHNSON, J.:  CONCUR

RE

8

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

SEP 3 0 2009

MICHAEL S. RICHIE
CLERK

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

WILLIAM EUGENE HENDERSON,                    )
                                             )
        Petitioner,                       )       NOT FOR PUBLICATION
                                             )
v.                                           )       Case No. C-2008-938
                                             )
THE STATE OF OKLAHOMA,                       )
                                             )
        Respondent.                       )

## SUMMARY OPINION GRANTING CERTIORARI IN PART AND DENYING CERTIORARI IN PART

### A. JOHNSON, VICE PRESIDING JUDGE:

Petitioner William Eugene Henderson entered blind pleas of guilty in the District Court of Tulsa County, Case No. CF-2007-4405, to Robbery with a Firearm (Count 1) in violation of 21 O.S.2001, § 801, Shooting with Intent to Kill (Count 2) in violation of 21 O.S.Supp.2007, § 652, Kidnapping (Count 3) in violation of 21 O.S.Supp.2004, § 741, Larceny of an Automobile (Count 5) in violation of 21 O.S.Supp.2002, § 1720, Third Degree Arson (Count 6) in violation of 21 O.S.2001, § 1403, and Assault and Battery with a Dangerous Weapon (Count 7) in violation of 21 O.S.Supp.2006, § 645.[1]  The Honorable William C. Kellough accepted Henderson's pleas and sentenced him to life imprisonment on each of Counts 1 and 2, ten years imprisonment on each of Counts 3, 6, and 7, and five years imprisonment on Count 5.  Counts 1 and 2

---

[1] Henderson was charged jointly with Gerald Staples and Cornell Parker.  Parker also entered guilty pleas to the charges against him.  Parker's certiorari appeal is pending before the Court in Case No. C-2008-1023.

were ordered to be served concurrently.  Counts 3, 5 and 6 were ordered to be served concurrently with one another but consecutively to the sentence imposed in Counts 1 and 2.  Count 7 was ordered to be served consecutively to all counts for a sentence totaling life imprisonment plus twenty years.[2]

Henderson filed a timely Motion to Withdraw Plea and after the prescribed hearing, the motion was denied.  He appeals the district court's order and asks this Court to grant certiorari and allow him to withdraw his pleas and proceed to trial, or in the alternative, to vacate all but Counts 1 and 6 on double jeopardy grounds and favorably modify the sentence in Count 6.

This case raises the following issues:

(1)   whether Appellant's pleas were knowingly and intelligently entered; and

(2)   whether his convictions for shooting with intent to kill, kidnapping, larceny of a vehicle and assault and battery with a dangerous weapon violate the prohibitions against double jeopardy and double punishment.

1.    The record before us refutes Henderson's claims that his pleas were not knowing and voluntary.  The Summary of Facts, preliminary hearing testimony and testimony from the hearing on Henderson's motion to withdraw plea disprove that his pleas were entered without due deliberation, that he was under the impression that he would receive a twenty year sentence, that there was an insufficient factual basis, and that he was under the influence of medication at the time of the plea.  The district court did not abuse its discretion in finding that Henderson's pleas of guilt were knowing and

---

[2] Count 4 (Sexual Battery) was dismissed at preliminary hearing.

voluntary and so denying his motion to withdraw pleas. *See Cox v. State,* 2006 OK CR 51, ¶ 18, 152 P.3d 244, 251.

We also reject Henderson's claim that he should be allowed to withdraw his plea to Count 6 because he was misinformed about the punishment range for third degree arson. Third degree arson is punishable by a fine not to exceed $10,000.00 or imprisonment for not more than 15 years. 21 O.S.2001, § 1403. Henderson was advised, however, that the range of punishment was two years to fifteen years imprisonment. This case is distinguishable from *Hunter v. State,* 829 P.2d 1353, 1355 where we found relief was required because the trial court wrongly advised the defendant of a certain minimum sentence and then actually imposed that minimum sentence. These facts are significantly different. The trial court was mistaken about the minimum sentence, but nothing in this record shows that mistake influenced the sentence he actually imposed. We further note that the ten year sentence imposed on Count 6 runs concurrently with two other ten year sentences. Under these circumstances, we cannot find that the mistake here rendered Henderson's plea unknowing and involuntary.

**2.**     Henderson's convictions for shooting with intent to kill (Count 2), larceny of an automobile (Count 5) and assault and battery with a dangerous weapon (Count 7) do not violate the statutory prohibition on multiple punishments in 21 O.S.2001, § 11(A) because the acts for which Henderson was convicted are separate and distinct.[3] Nor does conviction for these crimes

---

[3] *See Davis v. State,* 1999 OK CR 48, ¶ 13, 993 P.2d 124, 127.

3

violate the federal or state constitutional prohibitions against double jeopardy because these crimes have different elements and require different proof.[4]

There is merit to Henderson's claim that his kidnapping conviction violates § 11. The evidence at the preliminary hearing does not support a finding that the kidnapping was separate and distinct from the robbery. Henderson took the victim to the condominium to steal things from his person and from the condominium. The confinement in the condominium was necessary to and a part of the robbery rather than a separate crime. Accordingly, Henderson's kidnapping conviction in Count 3 must be reversed and dismissed.

## DECISION

The Petition for a Writ of Certiorari on Counts 1, 2, 5, 6 and 7 is **DENIED.** The Judgment and Sentence of the district court on those counts is **AFFIRMED.** The Petition for a Writ of Certiorari on Count 3 is **GRANTED** and the matter is remanded to the district court with instructions to dismiss the Judgment and Sentence on Count 3. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2009), the **MANDATE is ORDERED** issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE WILLIAM C. KELLOUGH, DISTRICT JUDGE

---

[4] *See McElmurry v. State*, 2002 OK CR 40, ¶ 80, 60 P.3d 4, 24.

4

**APPEARANCES IN DISTRICT COURT**
BRIAN T. ASPAN
5100 E. SKELLY DR., SUITE 950
TULSA, OK 74135
ATTORNEY FOR DEFENDANT

JACK THORP
ASSISTANT DISTRICT ATTORNEY
500 S. DENVER
TULSA, OK 74103
ATTORNEY FOR STATE

**APPEARANCES ON APPEAL**
THOMAS PURCELL
P. O. BOX 926
NORMAN, OK 73070
ATTORNEY FOR PETITIONER

W. A. DREW EDMONDSON
OKLAHOMA ATTORNEY GENERAL
DIANE L. SLAYTON
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
ATTORNEYS FOR APPELLEE

**OPINION BY:  A. JOHNSON, V.P.J.**
**C. JOHNSON, P.J.:  Concur**
**LUMPKIN, J.:  Concur**
**CHAPEL, J.:  Concur in Results**
**LEWIS, J.:  Concur**

RE