No. C-2016-419

---

## IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

---

KENNETH HAROLD TIBBETTS,

Petitioner,

-vs-

THE STATE OF OKLAHOMA,

Respondent.

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

MAY − 5 2017

MICHAEL S. RICHIE
CLERK

---

**BRIEF OF RESPONDENT
FROM BECKHAM COUNTY DISTRICT COURT
CASE NO. CF-2015-188**

---

**MIKE HUNTER
ATTORNEY GENERAL OF OKLAHOMA**

**JENNIFER B. WELCH, OBA #17379
ASSISTANT ATTORNEY GENERAL**

313 NE 21st Street
Oklahoma City, Oklahoma 73105
(405) 521-3921
(405) 522-4534 (FAX)

**ATTORNEYS FOR RESPONDENT**

---

MAY 5, 2017

**EXHIBIT 11**

## TABLE OF CONTENTS

PAGE

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROPOSITION I

THE RECORD DOES NOT SUPPORT THE PETITIONER'S CLAIM THAT THE TRIAL COURT FAILED TO ADEQUATELY INQUIRE ABOUT HIS COMPETENCE OR THAT HE WAS ACTUALLY INCOMPETENT TO PLEAD GUILTY TO HIS CRIMES; THEREFORE, THE PETITIONER IS ENTITLED TO NO RELIEF FROM THIS COURT . . . . . . . . . . . . . . . . . 6

PROPOSITION II

THE PETITIONER HAS WAIVED HIS CLAIM THAT HIS GUILTY PLEAS WERE NOT SUPPORTED BY A SUFFICIENT FACTUAL BASIS BY FAILING TO RAISE IT BELOW. ALTERNATIVELY, THE PETITIONER'S CLAIM OF AN INADEQUATE FACTUAL BASIS FOR HIS PLEAS LACKS MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

PROPOSITION III

THE PETITIONER HAS WAIVED HIS CLAIM THAT HIS PLEA WAS INVOLUNTARY AND UNKNOWING BASED ON HIS ALLEGATION HE WAS INCORRECTLY ADVISED OF THE PUNISHMENT RANGES ON SOME OF HIS CRIMES . . . . . . . . . 24

PROPOSITION IV

THE PETITIONER HAS WAIVED HIS DOUBLE PUNISHMENT CLAIM BY ENTERING PLEAS OF GUILTY TO EACH CHARGE AND BY FAILING TO RAISE THIS ISSUE BELOW; THEREFORE, HE IS ENTITLED TO NO RELIEF FROM THIS COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**PROPOSITION V**

    THE PETITIONER'S CLAIM THAT HIS MEDICAL RECORDS WERE IMPROPERLY ADMITTED AT THE SENTENCING HEARING HAS BEEN WAIVED BUT, NEVERTHELESS, LACKS MERITS AS THE CLAIM RAISES NO COGNIZABLE ISSUE FOR THIS COURT'S REVIEW .......... 35

**PROPOSITION VI**

    THE PETITIONER'S CLAIM OF PROSECUTORIAL ERROR HAS BEEN WAIVED BUT, NEVERTHELESS, THE STATE DEMONSTRATES THE CLAIM LACKS MERIT ................... 38

**PROPOSITION VII**

    THE PETITIONER WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL; THEREFORE, HIS CONVICTIONS AND SENTENCES SHOULD NOT BE DISTURBED BY THIS COURT ................................... 43

**PROPOSITION VIII**

    THERE WERE NO INDIVIDUAL ERRORS WARRANTING REVERSAL; THEREFORE, THE PETITIONER IS NOT ENTITLED TO RELIEF FOR CUMULATIVE ERROR .............. 50

**CONCLUSION** ........................................................ 50

**CERTIFICATE OF SERVICE** ............................................... 51

# TABLE OF AUTHORITIES

## CASES

*Allen v. State,*
  1998 OK CR 25, 956 P.3d 918 ................................................................. 7, 12

*Armstrong v. State,*
  1991 OK CR 34, 811 P.2d 593 ................................................................. 41

*Barnard v. State,*
  2012 OK CR 15, 290 P.3d 759 ................................................................. Passim

*Berget v. State,*
  1991 OK CR 121, 824 P.2d 364 ................................................................. 12

*Boykin v. Alabama,*
  395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) ................................................ 31

*Browning v. State,*
  2006 OK CR 8, 134 P.3d 816 ................................................................. 45, 48

*Bush v. State,*
  2012 OK CR 9, 280 P.3d 337 ................................................................. 8, 16, 46

*Chastain v. State,*
  1985 OK CR 117, 706 P.2d 539 ................................................................. 26, 28, 29, 47

*City of Norman v. Taylor,*
  2008 OK CR 22, 189 P.3d 726 ................................................................. Passim

*Clay v. State,*
  1979 OK CR 26, 593 P.2d 509 ................................................................. 32

*Dodd v. State,*
  2004 OK CR 31, 100 P.3d 1017 ................................................................. 50

*Dusky v. United States,*
  362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) ................................................ 7

*Estell v. State,*
  1988 OK CR 287, 766 P.2d 1380 ................................................................. 17, 23, 46

*Ex parte Wright,*
 1941 OK CR 157, 119 P.2d 97 ................................................................. 32

*Fields v. State,*
 1996 OK CR 35, 923 P.2d 624 ................................................. Passim

*Godinez v. Moran,*
 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) ......................................... 7, 12

*Hagar v. State,*
 1999 OK CR 35, 990 P.2d 894 ................................................. 16, 23, 46

*Hall v. State,*
 1982 OK CR 141, 650 P.2d 893 ................................................................. 30

*Harris v. State,*
 1992 OK CR 74, 841 P.2d 597 ................................................. 38, 41, 48

*Hill v. Lockhart,*
 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) ......................................... Passim

*Hunnicut v. State,*
 1988 OK CR 91, 755 P.2d 105 ................................................................. 32

*Hunter v. State,*
 1992 OK CR 1, 825 P.2d 1353 ................................................................. 26

*Johnson v. State,*
 1980 OK CR 45, 611 P.2d 1137 ................................................................. 30

*King v. State,*
 1976 OK CR 103, 553 P.2d 529 ................................................. Passim

*Lewis v. State,*
 2009 OK CR 30, 220 P.3d 1140 ................................................. Passim

*Lozoya v. State,*
 1996 OK CR 55, 932 P.2d 22 ................................................. Passim

*Luster v. State,*
 1987 OK CR 261, 746 P.2d 1159 ................................................................. 26

*Magnan v. State,*
 2009 OK CR 16, 207 P.3d 397 ...................................................................... 16, 25, 36, 39

*Malone v. State,*
 2013 OK CR 1, 293 P.3d 198 ...................................................................... 40, 43

*Medlock v. State,*
 1994 OK CR 65, 887 P.2d 1333 ...................................................................... 44

*Menna v. New York,*
 423 U.S. 61, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975) ...................................................................... 32

*Ocampo v. State,*
 1989 OK CR 38, 778 P.2d 920 ...................................................................... 12

*Sanders v. State,*
 2015 OK CR 11, 358 P.3d 280 ...................................................................... 34

*State v. Durant,*
 1980 OK CR 21, 609 P.2d 792 ...................................................................... 12

*Strickland v. Washington,*
 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ...................................................................... Passim

*Turrentine v. State,*
 1998 OK CR 33, 965 P.2d 955 ...................................................................... 41, 48

*United States v. Broce,*
 488 U.S. 563, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) ...................................................................... Passim

*Van White v. State,*
 1999 OK CR 10, 990 P.2d 253 ...................................................................... 26

*Wackerly v. State,*
 2000 OK CR 15, 12 P.3d 1 ...................................................................... 40

*Walker v. State,*
 1998 OK CR 14, 953 P.2d 354 ...................................................................... Passim

*Weeks v. State,*
 2015 OK CR 16, 362 P.3d 650 ...................................................................... Passim

*Wester v. State,*
     1988 OK CR 126, 764 P.2d 884 ............................................................... 16

*Wiley v. State,*
     2008 OK CR 30, 199 P.3d 877 ............................................................... 44

*Wilson v. State,*
     1998 OK CR 73, 983 P.2d 448 ............................................ 46, 47, 48

*Wood v. State,*
     2007 OK CR 17, 158 P.3d 467 ............................................................... 44

*Zakszewski v. State,*
     1987 OK CR 152, 739 P.2d 544 ........................................................ 21, 22

## STATUTES

12 O.S. 2011, § 2503 ...................................................................... 37, 38

21 O.S.2011, § 11 ................................................................................ 32

21 O.S.2011, § 51.1 ................................................................. 28, 29, 47

21 O.S.2011, § 152 ................................................................................. 9

21 O.S.2011, § 801 ..................................................................... Passim

21 O.S.Supp.2012, § 741 ................................................. 1, 22, 28, 34

21 O.S.Supp.2014, § 1283 .............................................................. 1, 47

21 O.S.2011, § 1284 ........................................................................... 27

22 O.S.2011, § 982 ............................................................................. 24

22 O.S.Supp.2011, §1175.1 ..................................................... 7, 9, 42

22 O.S.2011, § 1175.2 ..................................................................... 8, 49

## RULES

Rule 3.5(C)(3), *Rules of the Court of Criminal Appeals*,
   Tit. 22, Ch. 18, App. (2016) ........................................................... 31

Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*,
   Tit. 22, Ch. 18, App. (2016) ................................................... Passim

Rule 4.3(C)(5), *Rules of the Oklahoma Court of Criminal Appeals*,
   Tit. 22, Ch. 18, App. (2016) ................................................... Passim

## IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA

KENNETH HAROLD TIBBETTS,    )
                            )
            Petitioner,     )
                            )
v.                          )    Case No. C-2016-419
                            )
STATE OF OKLAHOMA,          )
                            )
            Respondent.     )

## BRIEF OF RESPONDENT IN RESPONSE TO PETITION FOR WRIT OF CERTIORARI

## STATEMENT OF THE CASE

Kenneth Harold Tibbetts, hereinafter referred to as the petitioner, pleaded guilty in a blind plea proceeding on February 10, 2016, in the District Court of Beckham County, Case No. CF-2015-188, to Count 1, Robbery with a Weapon, After Former Conviction of a Felony, in violation of 21 O.S.2011, § 801, Count 2, Possession of a Firearm After Former Conviction of a Felony, in violation of 21 O.S.Supp.2014, § 1283, Counts 3 and 4, Kidnaping, After Former Conviction of a Felony, in violation of 21 O.S.Supp.2012, § 741, Counts 5 and 6, Attempted Robbery with a Dangerous Weapon, After Former Conviction of a Felony, in violation 21 O.S.2011, § 801, and Count 7, Possession of a Firearm After Former Conviction of a Felony, in violation of 21 O.S.Supp.2014, § 1283 (O.R. 70-78; Plea Tr. 4-13).[1]  The Honorable Doug Haught, District Judge, accepted the petitioner's plea to each crime (O.R. 70-78; Plea Tr. 4-13).[2]  At the conclusion of a sentencing

---

[1]Numbers in parentheses refer to page citations in the original record (O.R.), the transcript of the guilty plea hearing held on February 10, 2016, (Plea Tr.), the transcript of the sentencing hearing held on March 30, 2016, (S. Tr.), and the transcript of the motion to withdraw hearing held on May 11, 2016, (Withdrawal Tr.).

[2]Counts 5, 6, and 7 were consolidated with this case from Case No. CF-2015-192 (O.R. 47-57).

hearing on March 30, 2016, Judge Haught sentenced the petitioner to life imprisonment on Counts 1, 3, 4, 5, and 6, and ten (10) years imprisonment on Counts 2 and 7 (O.R. 100-102; S. Tr. 176-179). The court ordered Counts 5 and 6 to run concurrent to one another but consecutive to Count 1 (O.R. 100-102, 179-181; S. Tr. 178-179). All other counts were ordered to run concurrent to one another (O.R. 100-102, 179-181; S. Tr. 178-179). The petitioner was represented by appointed counsel throughout the proceedings. On April 6, 2016, counsel filed a motion on behalf of the petitioner to withdraw his guilty pleas (O.R. 103-104). New counsel was appointed and a brief in support of the petitioner's motion to withdraw was filed on April 18, 2016 (O.R. 105, 113-114). A hearing on the petitioner's motion was held on May 11, 2016 (O.R. 105-106, 150; Withdrawal Tr. 3). At the conclusion of the hearing, Judge Haught denied the petitioner's motion to withdraw his pleas (O.R. 156; Withdrawal Tr. 12-13).

From the denial of his motion to withdraw his guilty pleas, the petitioner has filed a certiorari appeal in this Court. The respondent is filing this Response pursuant to this Court's Order dated March 6, 2017.

## STATEMENT OF THE FACTS

On May 9, 2015, the petitioner, a prior felon, walked into Janie's Garden Center, located in Elk City, Oklahoma, holding a gun and forcibly seized two employees, Laura Cornell and Wes Burks, and stole money from Ms. Cornell which belonged to the store (O.R. 73; Plea Tr. 8-9; S. Tr. 7-13). After walking in the back door to the store at closing time, the petitioner ordered Mr. Burks, a teenaged boy working in the store after school, to the lie on the ground and to not move (O.R. 73; Plea Tr. 8-9; S. Tr. 8-11, 19). When Mr. Burks froze, the petitioner told him to get on the ground

or he would shoot him and Ms. Cornell (O.R. 73; Plea Tr. 8-9; S. Tr. 20). Mr. Burks then did what the petitioner ordered him to do (O.R. 73; Plea Tr. 8-9; S. Tr. 11, 20). During this time, the petitioner walked up behind Ms. Cornell, put his arm around her neck and held the gun to her temple (O.R. 73; Plea Tr. 8-9; S. Tr. 8-12). When Mr. Burks slightly moved on the ground, the petitioner told him to lie still or he would kill him and Ms. Cornell (O.R. 73; Plea Tr. 8-9; S. Tr. 9, 12, 20). The petitioner told Ms. Cornell that he wanted money (O.R. 73; Plea Tr. 8-9; S. Tr. 12). Ms. Cornell took the approximately $2,800 in cash out of her apron pocket and handed it to the petitioner (O.R. 73; Plea Tr. 8-9; S. Tr. 12-15). The petitioner took the money and then put his hand in Ms. Cornell's back pants pocket and took out her cell phone (S. Tr. 13). After telling Ms. Cornell they were going outside, the petitioner, with the gun still pressed to Ms. Cornell's head, walked Ms. Cornell outside to a truck (O.R. 73; Plea Tr. 8-9; S. Tr. 13-14). Before leaving the store, the petitioner told Mr. Burks not to move from the floor or he would kill Ms. Cornell (O.R. 73; Plea Tr. 8-9; S. Tr. 13, 20). Once outside, the petitioner told Ms. Cornell to give him the keys to the truck (O.R. 73; Plea Tr. 8-9; S. Tr. 13-14). When Ms. Cornell told the petitioner she did not have the keys, he physically searched her person for the keys (S. Tr. 14). When he did not find the keys on Ms. Cornell, he ordered her to walk to the end of the block to a white truck and not to turn around or he would kill her and "the boy" (S. Tr. 14). Ms. Cornell did as she was told (S. Tr. 14). When she reached the truck she turned and saw that the defendant was gone (S. Tr. 14). She ran back inside the store, where Mr. Burks was still lying on the floor, and called 911 for help (S. Tr. 14, 20-21).

On May 15, 2015, the petitioner attempted to rob Joy Sites and her husband, Troy Sites, both of whom are in their eighties, in the parking lot of the United Supermarket in Elk City, Oklahoma

(O.R. 73; Plea Tr. 9-10; S. Tr. 24-29, 33-36). The couple had come to town to do some shopping and eat lunch (S. Tr. 24-25, 33-34). During their shopping trip they bought new tomato plants and roses which they placed in the back seat and floor of their four-door truck (S. Tr. 25-26, 33-34). When they returned to their truck after eating lunch, Ms. Sites opened the front passenger door to enter and heard crunching in the back seat (S. Tr. 25-26). When she turned and looked she saw the petitioner in the back seat and noticed he had crushed all of her plants and roses (S. Tr. 25-26). Ms. Sites became irritated and asked the petitioner what he was doing (S. Tr. 26, 34). The petitioner told Ms. Sites he wanted her purse and told her he had a gun (Plea Tr. 9-10; S. Tr. 26-27, 35-36). He then pressed the gun to her chest (O.R. 73; Plea Tr. 9-10; S. Tr. 27). Ms. Sites, who was holding a plastic shopping bag filled with lotion and mouthwash, among other things, swung the bag at the petitioner and beat him over the head with the bag (S. Tr. 27-28). She also threw a large drink bottle at his face (S. Tr. 28, 35). When Mr. Sites, who was still outside the truck, saw what was going on he grabbed the petitioner's leg in an attempt to pull him out of the truck (Plea Tr. 9-10; S. Tr. 29, 34). The petitioner exited the truck and pointed the gun at Mr. Sites while he grabbed the truck keys which were inside the truck (O.R. 73; Plea Tr. 9-10; S. Tr. 28-30, 34). The petitioner told Mr. Sites to stay back or he would shoot Ms. Sites (O.R. 73; Plea Tr. 9-10; S. Tr. 34). During this encounter a "good Samaritan" showed up and asked Ms. Sites if they needed help (S. Tr. 28-29). She told the man to call the police (S. Tr. 28-29). The petitioner then ran away from the scene still in possession of the truck keys (O.R. 73; Plea Tr. 9-10; S. Tr. 30-31, 34-35). When the petitioner was later interviewed about the incident, he told Elk City Police Detective Sam Weygand that he was trying

to "get a ride out of there" and he took the keys because he was going to take the vehicle but changed his mind (S. Tr. 44).

When the petitioner was later interviewed about the robbery at Janie's Garden Center, he told Elk City Police Detective John Cook that he needed money and picked Janie's because he thought it would be easy to get in and out of, it had no surveillance cameras, and they dealt in cash (S. Tr. 69–71). When Detective Cook searched the petitioner's work truck, he found a .22 pistol and a box of ammunition hidden inside a lunch box, along with "kidnapping" items consisting of straps, pairs of pantyhose, one pair which had eye holes cut into it to be used as a mask, rubber gloves, a surgical mask, scarves, zip ties, and canisters of tear gas (S. Tr. 57-63; State's Exs. 3-20).

At the sentencing hearing, the petitioner admitted to his actions and said he was "responsible" but testified that he was not making good decisions or thinking clearly and that "something changed in May" which caused him to commit these crimes (S. Tr. 111). He admitted that he knew what he was doing when he committed the crimes and that he knew his actions were wrong (S. Tr. 111-112). He opined that his actions were the result of stress from his money issues and his mother's death and the effects of medications he was taking to treat Hepatitis C as well as sporadic use of methamphetamine (S. Tr. 106-124). Under cross-examination, however, he admitted that he had not been under treatment or taking medication for his Hepatitis C condition since December of 2014, that he knew what he was doing when he committed the crimes, that he prepared in advance of the crimes, and that he purposefully used a gun in order to get what he wanted (S. Tr. 136-147, 156). The petitioner testified that he was not trying to say that the medications caused him to commit the robberies but only that the medications had him "in a state that [his] whole life began falling apart

once [he] started [the] medication" (S. Tr. 136).   In contrast, the State showed that the petitioner's

action were not a result of any medication side effects but were in response to the petitioner needing

money to pay off thousands of dollars in gambling debts, to keep up his monetary support of a

woman with whom he had been having an extramarital affair, and for methamphetamine (S. Tr. 42-

43, 57, 68-70, 89, 95, 106-107, 115, 147-150, 156; State's Ex. 2).

Further facts may be discussed as they relate to the propositions of error.

## PROPOSITION I

**THE RECORD DOES NOT SUPPORT THE PETITIONER'S CLAIM THAT THE TRIAL COURT FAILED TO ADEQUATELY INQUIRE ABOUT HIS COMPETENCE OR THAT HE WAS ACTUALLY INCOMPETENT TO PLEAD GUILTY TO HIS CRIMES; THEREFORE, THE PETITIONER IS ENTITLED TO NO RELIEF FROM THIS COURT.**

In his first claim of error, the petitioner contends the trial court failed to adequately inquire

about his competence to plead guilty and the record is insufficient to determine if he was competent

at the time he entered his pleas based on his medications and medical conditions. Def's Br. at 7-13.

In particular, he claims that because his counsel filed a notice of intent to declare an insanity defense,

his "mental health" was "placed at issue" and should have resulted in an earnest inquiry or even a

forensic competency evaluation. Pet's Br. at 10, 13. He asks this Court to allow him to withdraw

his pleas or to "favorably modify" his sentences. Pet's Br. at 13. The State contends the record does

not support the petitioner's claims.  As a result, no relief is warranted by this Court.

"The focus of this Court in evaluating whether a defendant should be allowed to withdraw

a guilty plea is whether the trial court abused its discretion in failing to allow the plea to be

withdrawn." *Fields v. State*, 1996 OK CR 35, ¶ 26, 923 P.2d 624, 631.  The Court's only concern

6

when evaluating the validity of a guilty plea is whether the plea was knowing and voluntary and the court had jurisdiction to accept the plea. *Lewis v. State*, 2009 OK CR 30, ¶ 4, 220 P.3d 1140, 1142. This Court will examine the entire record before it "to determine whether the guilty plea was entered in a knowing and voluntary manner." *Fields*, 1996 OK CR 35, ¶ 14, 923 P.2d at 630.

"In the plea context, the trial judge is charged in every case with the duty to determine whether the defendant is competent to enter the plea." *Allen v. State*, 1998 OK CR 25, ¶ 5, 956 P.3d 918, 919 (citing *King v. State*, 1976 OK CR 103, ¶ 10, 553 P.2d 529, 534). This duty is accomplished by inquiring of the defendant and defense counsel regarding the defendant's past and present mental state and by the court's personal observation. *King*, 1976 OK CR 103, ¶ 10, 553 P.2d at 534. Even if the trial court fails to engage in a conversation with the defendant regarding competency, this Court may still find a defendant was competent to plead based on positive affirmations of the defendant's competency in the plea form. *See, e.g., Lozoya v. State*, 1996 OK CR 55, ¶ 38, 932 P.2d 22, 33 (holding record was sufficient to determine the defendant's competence based on the contents of the summary of facts guilty plea form).

To be considered competent to plead guilty, a defendant must have the "present ability . . . to understand the nature of the charges and proceedings brought against him or her and to effectively and rationally assist in his or her defense." 22 O.S.Supp.2011, §1175.1(1). *See, e.g., Godinez v. Moran*, 509 U.S. 389, 398, 113 S. Ct. 2680, 2686, 125 L. Ed. 2d 321 (1993) ("[W]e reject the notion that competence to plead guilty . . . must be measured by a standard that is higher than (or even different from) the *Dusky* [*v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960)] standard."). Only if the court determines a "substantial question" of the defendant's

7

competency exists must the court commit the defendant for a competency determination. *King*, 1976 OK CR 103, ¶ 10, 553 P.2d at 533. *See* 22 O.S.2011, § 1175.2.

The respondent initially notes that the petitioner in this case, while raising his competence to enter a plea in his motion to withdraw (O.R. 103-104), arguably abandoned this claim below. *Cf. Bush v. State*, 2012 OK CR 9, ¶¶ 20-21, 280 P.3d 337, 344 (noting that the petitioner's statements at the withdrawal hearing that he knew what he was doing when he entered his pleas coupled with a lack of evidence to dispute the finding of competence to enter his pleas required the Court to find that he had waived his right to appeal the denial of his motion to withdraw). Indeed, the record reflects that the petitioner argued both in his brief to the trial court and at the withdrawal hearing, that he was requesting from the court a mental evaluation, not a competency determination, to determine his state of mind *at the time of the crimes* (O.R. 114-115; Withdrawal Tr. 4-10). During the withdrawal hearing, which occurred shortly after his plea and sentencing hearings, counsel affirmatively told the court that the petitioner was "in his right mind" and "able to handle information" and that he was not requesting a determination of competence (Withdrawal Tr. 4-5). He then stated that he was not calling a witness for the hearing but instead was requesting a mental health expert to evaluate the petitioner's competency "at those times" (purportedly referencing the time during the crimes and maybe the time during the plea proceedings) (Withdrawal Tr. 6, 10-12). However, counsel never requested a competency determination or submitted any information raising a doubt as to the petitioner's mental health status at the time of the plea proceedings. Further, as the State pointed out at the hearing, the petitioner had been scheduled by trial counsel for an expert mental health evaluation to determine sanity at the time of the crimes before the petitioner decided

to plead guilty (Withdrawal Tr. 6-10). Counsel admitted that the petitioner had such an evaluation, although he stated he thought that evaluation had been for competence to stand trial (Withdrawal Tr. 10-11).[3]

What is apparent from this record, as well as the petitioner's attempt on appeal to resurrect a claim which he abandoned below, is that first, he misunderstands the difference between competency and sanity, and second, his real focus, as evidenced by his request for a modified sentence, is that he should be subject to mitigated punishment because his medications made him anxious. These claims, in light of the entire record below, are insufficient to establish a basis to allow the petitioner to withdraw his pleas. *See, e.g., Lozoya*, 1996 OK CR 55, ¶ 44, 932 P.2d at 34 (dissatisfaction with sentence not a "satisfactory basis for allowing a plea to be withdrawn").

The petitioner asserts that by simply raising an insanity defense, his competency to plead guilty was brought into question. However, as already stated above, a person is competent to enter a plea if he has a "present" ability to understand the nature of the charges and the proceedings brought against him and is able to effectively and rationally assist in his defense. 22 O.S.Supp.2011, § 1175.1(1). In contrast, an insanity defense speaks to whether a person was suffering from such a disability of reason or disease of the mind that he was unable to distinguish right from wrong with respect to his actions and did not understand the nature and consequences of his criminal actions. 21 O.S.2011, § 152(4); Instruction No. 8-32, OUJI-CR(2d). As is evident, simply raising an insanity defense does not equate with incompetency. More importantly, a review of the record in this matter

---

[3]The petitioner filed his notice of insanity defense on January 20, 2016 (O.R. 59). Thus, the petitioner's mental evaluation occurred between that date and the date he pleaded guilty on February 10, 2016 (Withdrawal Tr. 10-11).

9

reveals no basis for determining either that a competency evaluation was necessary or that the petitioner was incompetent to plead guilty.

The plea form filled out by the petitioner indicates he had a twelfth grade education and some college, that he was not currently taking medications which affected his ability to understand the proceedings, that he was not prescribed medication that he should be taking but was not taking, that he had never been treated for mental illness or confined to a mental hospital, that he understood the nature and consequences of the proceedings, that he was informed of the allegations and charges against him, that he understood his rights, that he understood he was giving up his right to a trial by pleading guilty, that he had consulted with his lawyer, and that he had spoken to his lawyer about any potential defenses to the charges (O.R. 70-74). At the plea hearing, the court inquired of the petitioner as follows after the petitioner had entered a plea of guilty to each of the charges:

| | |
|---|---|
| The Court: | Do you admit that as to all of these crimes what you did was wrong and was against the law? |
| The petitioner: | It was wrong and against the law, yes, sir. |
| The Court: | All right.  I will find a factual basis for accepting your plea of guilty to Counts 1 through 7.  Now, Mr. Tibbetts, are you completely satisfied with Ms. Sorelle's legal representation of you today? |
| The petitioner: | Yes, sir. |
| The Court: | Have there been any promises made to you by anyone to get you to enter a plea of guilty? |
| The petitioner: | No, sir. |
| The Court: | Were you threatened, forced, coerced, or pressured into entering these pleas of guilty? |
| The petitioner: | No. |
| The Court: | Were you mistreated or abused by any member of law enforcement? |
| The petitioner: | No, sir. |

| | |
|---|---|
| The Court: | Are you under the influence of drugs, medication, or alcohol right now? |
| The petitioner: | No, sir. |
| The Court: | Are your pleas of guilty being entered by you voluntarily and of your own free will? |
| The petitioner: | Yes, sir. |
| The Court: | And do you want a Presentence Investigation? |
| The petitioner: | Yes, sir. |
| The Court: | Have you ever been treated for emotional or mental-health problems? |
| The petitioner: | No. |
| The Court: | (Indicates.) |
| The petitioner: | No, sir. I'm sorry. |
| The Court: | Do you believe that you are mentally competent today? |
| The petitioner: | Yes, sir. |
| The Court: | Ms. Sorelle, do you agree that he is competent at this [time]?- - |
| Ms. Sorelle: | Yes, I [do]. |
| The Court: | Mr. Tibbetts, I've been handed a Plea of Guilty/Summary of Facts Form. Did you complete this form? |
| The petitioner: | Yes, sir, I did. |
| The Court: | And are - - are the answers to the questions on this form, are they your answers? |
| The petitioner: | Yes, sir. |
| The Court: | On this form did you indicate that you do understand that you would have a right to a jury trial? |
| The petitioner: | Yes, sir. |
| The Court: | Do you want a jury trial? |
| The petitioner: | No, sir. |
| The Court: | Do you waive that right? |
| The petitioner: | Yes, sir. |
| The Court: | Have you understood all of my questions? |
| The petitioner: | Yes, I have. |
| The Court: | Have you answered all of my questions truthfully? |
| The petitioner: | Yes, sir. |
| The Court: | Do you understand what is going on in this courtroom right now? |
| The petitioner: | Yes, I do. |

11

(Plea Tr. 10-13). As clearly reflected by the record, the court did more at the hearing than inquire of the defendant if he thought he was competent, as suggested by the petitioner in his brief to this court. Def's Br. at 8-9. Instead, the court thoroughly examined the petitioner on his knowledge and understanding of the charges and the proceedings, his ability to understand the proceedings and whether the petitioner had answered his questions truthfully and freely. The court also inquired of defense counsel who affirmed to the court her opinion that the petitioner was competent to enter a plea of guilty. This colloquy, along with the plea form filled out and signed by the petitioner, was sufficient to establish the petitioner's competence to enter his guilty pleas. *Allen*, 1998 OK CR 25, ¶ 5, 956 P.3d at 919; *Lozoya*, 1996 OK CR 55, ¶ 38, 932 P.2d at 33; *King*, 1976 OK CR 103, ¶ 10, 553 P.2d at 534. *See, e.g. Godinez*, 509 U.S. at 401 (noting there is no heightened standard for determining competence in the context of a guilty plea).

   The petitioner admits that the entire record must be examined to determine if the petitioner was competent to enter a plea. *See Berget v. State*, 1991 OK CR 121, ¶ 15, 824 P.2d 364, 370 ("[W]e will examine the entire record before us to determine whether the guilty plea was entered in a knowing and voluntary manner."); *Ocampo v. State*, 1989 OK CR 38, ¶ 4, 778 P.2d 920, 922 ("We must look to the entire record to determine if the judgment and sentence rendered on the plea of guilty should be disturbed."); *State v. Durant*, 1980 OK CR 21, ¶ 4, 609 P.2d 792, 793 (stating that "the record from which the validity of a guilty plea must be assessed is not limited to that developed at the plea proceeding"). However, he argues that because he filed a notice of insanity defense and suffered from several medical conditions which might cause "confusion, disorientation, altered levels of consciousness, personality changes, and uninhibited behavior," that the "record is insufficient to

make an informed competency determination" about his mental state on February 10, 2016. Def's Br. at 9-12. The petitioner's claim, which is inherently contradictory, is nevertheless unsupported by the record.

At the sentencing hearing, the petitioner gave lengthy testimony attempting to explain the causes for his criminal behavior (S. Tr. 103-156). The record reflects the petitioner absolutely knew right from wrong, both at the time of his crimes and during the plea proceedings, and he expressed regret for his actions (S. Tr. 103-112, 145-156). He testified he had been diagnosed with several medical ailments which had required him to undergo treatment a couple of years earlier (S. Tr. 104-106, 116-117). He opined, based on anecdotal information, that the medications he had been given during his last treatment, which ended in December of 2014, may have still been in his system when he committed the crimes (S. Tr. 116-117, 151, 156). He testified he thought that the medications had caused him to become agitated, irritable, and sleep deprived which in turn made him make several bad decisions which led to his crimes (S. Tr. 104-105, 115-120, 151, 156). Under cross-examination the petitioner admitted that he was no longer under treatment for conditions, that during his treatment he never complained of side effects to his doctors and, in fact, had denied, both before and after the crimes, any mood changes, anxiety or depression as a result of taking the medications (S. Tr. 128-151, 156). During the hearing, the petitioner thoroughly discussed his home life, his medical issues and his memory of the crimes and attempted to explain his action (S. Tr. 1001-124). In an effort to gain leniency he stated he was responsible for his actions but that he had never tried to hurt anyone and he wanted an opportunity to get out of prison at some point and go home to his family (S. Tr. 119-120, 122-124).

13

What the petitioner's testimony as well as the rest of the record demonstrates, with respect to the question of his competency to plead guilty, is that the petitioner's ability to understand the proceedings and assist his counsel was not impaired, either by medication or his current medical conditions. Indeed, the petitioner's ability to rationally reflect on his crimes, respond to questions appropriately and seek leniency provides a substantially sufficient record to determine the petitioner was competent during his plea proceedings. *King*, 1976 OK CR 103, ¶ 10, 553 P.2d at 533. Under such circumstances, the petitioner cannot show the trial court abused its discretion in refusing to allow him to withdraw his pleas. *Lewis*, 2009 OK CR 30, ¶ 5, 220 P.3d at 1142. Accordingly, the petitioner's request to withdraw his pleas or for this Court to modify his sentences based on his alleged incompetence lacks merits and should be denied by this Court.

## PROPOSITION II

**THE PETITIONER HAS WAIVED HIS CLAIM THAT HIS GUILTY PLEAS WERE NOT SUPPORTED BY A SUFFICIENT FACTUAL BASIS BY FAILING TO RAISE IT BELOW. ALTERNATIVELY, THE PETITIONER'S CLAIM OF AN INADEQUATE FACTUAL BASIS FOR HIS PLEAS LACKS MERIT.**

In his second proposition, the petitioner claims he should be allowed to withdraw his guilty pleas because such pleas were not supported by a sufficient factual basis. In particular, he claims the court did not ask him if he meant or intended to commit his crimes. Def's Br. at 15-18. This Court should refuse to review this claim as the petitioner has not preserved it for this Court's review. The State nevertheless demonstrates the petitioner's claim must be denied because the record contains a sufficient factual basis for his pleas.

14

The petitioner has not followed the necessary procedural steps to preserve the claim in his second proposition. This Court's Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016), specifically provides that "[n]o matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea . . . ." *See also Weeks v. State*, 2015 OK CR 16, ¶ 27, 362 P.3d 650, 657 (quoting Rule 4.2(B)). A claim raised to this Court which was not raised in the motion to withdraw plea is waived. *See Walker v. State*, 1998 OK CR 14, ¶ 3, 953 P.2d 354, 355 ("We do not reach the merits of the first proposition, for Walker waived the issue by failing to raise it in his motion to withdraw guilty plea."); Rule 4.3(C)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that the petition for writ of certiorari shall contain "[t]he errors of law urged as having been committed during the proceedings in the trial court which were raised in the application to withdraw plea").

In his Application to Withdraw Plea of Guilty, the petitioner sought to withdraw his pleas on the following basis:

> Defendant's plea was not entered knowingly and voluntarily, nor did he fully understand what the effect of entering a blind plea could mean for sentencing. Further, Mr. Tibbets believes that the effects of his medical condition and the drugs used to treat his condition had impaired his mental capacity to comprehend what was happening at the time of the entry of his plea. Mr. Tibbetts believes he should be evaluated by a mental health expert for the purpose of determining the effect this had on his decision to enter a blind plea in lieu of going forward with a trial.

(O.R. 103). The petitioner made no claim that he should be allowed to withdraw his plea due to the purported lack of a sufficient factual basis (O.R. 103). Because the petitioner has failed to properly

15

raise this issue pursuant to this Court's Rules, this Court should refuse to review the claim. *See Magnan v. State*, 2009 OK CR 16, ¶ 27, 207 P.3d 397, 406 (refusing to review petitioner's claim in a capital case that the factual basis for his guilty pleas was insufficient because it was neither jurisdictional nor related to this Court's mandatory sentence review); *City of Norman v. Taylor*, 2008 OK CR 22, ¶ 1 n.2, 189 P.3d 726, 727 n.2 ("Generally, all non-jurisdictional issues are waived upon the entry of a guilty plea with the exception of whether the plea was knowing and voluntary."). Should this Court review the petitioner's claim, however, review is limited to plain error only. *See Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142 (noting that "because [the petitioner's claims] are not properly raised under our Rules we review the issues for plain error only"). "To be entitled to relief for plain error, a defendant must show: (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning that the error affected the outcome of the proceeding." *Barnard v. State*, 2012 OK CR 15, ¶ 13, 290 P.3d 759, 764 (citation omitted). The petitioner is not entitled to relief.

Before accepting a guilty plea, the trial court must determine that a factual basis exists for the plea. *See King*, 1976 OK CR 103, ¶ 11, 553 P.2d at 535. "The factual basis of the plea must be sufficient so that the trial court can test whether the plea is being entered intelligently. The factual basis is also a means by which a court can know that it is not convicting a person innocent of the charges." *Bush*, 2012 OK CR 9, ¶ 29, 280 P.3d at 345 (citations omitted). "A trial court may look to sources other than the defendant to obtain a factual basis for accepting a plea." *Hagar v. State*, 1999 OK CR 35, ¶ 4, 990 P.2d 894, 897 (citing *Wester v. State*, 1988 OK CR 126, ¶ 4, 764 P.2d 884, 887, *opinion on rehearing*). A trial court need not require a defendant to recite a detailed statement

16

in his own words concerning the crime. *See Estell v. State*, 1988 OK CR 287, ¶ 10, 766 P.2d 1380, 1383. The trial court is only required to make inquiry sufficient to satisfy itself that a factual basis for the plea exists. *Id.* That was done in this case.

In this case, the petitioner wrote in the plea of guilty/summary of facts form that he "took money from Janie's Garden Center without consent and had a pistol and forced Wes Burks to lie on the ground and confined Laura Cornell by not letting her leave" (O.R. 73). He also wrote that he "attempted to take a vehicle belonging" to Troy and Joy Sites by use of a gun and he "took their keys" (O.R. 73). He stated that "[b]oth times" he had a gun and he had a prior felony conviction and "should not have had a gun" (O.R. 73). In addition to the factual basis written on the plea form, the court asked the petitioner the following questions about his crimes at the plea hearing:

| | |
|---|---|
| The Court: | With regard to Count 1 it says you took and carried away money that belonged to Janie's Garden Center from the person of Laura Cornell. And you were using a .22 pistol to threaten that person, and it was without her consent. Is that true? Did you do that? |
| The petitioner: | Yes, sir, I did. |
| The Court: | And as to Count 2 it says that you had a .22 pistol, and you have a former felony conviction, at least one. And, therefore, it violated the law for you to have that firearm. Is that true? |
| The petitioner: | Yes, sir. |
| The Court: | And as to Count 3, it says that you forced - - you seized Wes Burks and forced him to lie on the ground under threat of harm at Janie's Garden Center. Did you do that? |
| The petitioner: | Your Honor, yes. I - - I didn't actually forcibly seize him as much as I just asked him to stay there just - - |
| The Court: | But you had a gun? |
| The petitioner: | Yes, sir. |

17

| | |
|---|---|
| The Court: | All right. |
| The petitioner: | Just - - just to lay - - stay - - stay where he was, yes, sir. |
| The Court: | Okay. As to Count 4 it says that you seized, okay, Laura Cornell and demanded money from her and forced her at gunpoint to exit the business and walk towards her vehicle. Is that true? Did you do that? |
| The petitioner: | Yes, sir. |
| The Court: | And as to Count 5 it says that you attempted to rob Troy and Joy Sites by attempting to take the vehicle that belonged to and was in their possession. |
| The petitioner: | Yes. |
| The Court: | Did you do that? |
| The petitioner: | Yes, sir. |
| The Court: | And as to Count 6 - - and - - and Count 5 also alleges that you brandished this .22-caliber pistol. Is that true? Did you do that? |
| The petitioner: | Yes. |
| The Court: | And as to Count 6 it says that as to Joy Sites you attempted to take away her purse by using a .22-caliber pistol. Is that true? Did you do that? |
| The petitioner: | Yes, sir. |
| The Court: | And as to Count 7, the allegation is that you had a firearm, a .22-caliber pistol. And this is, apparently, a separate incident from Count 2. This alleges on the 15th of May, and Count 2 is the 9th of May. Is that true? Did you have that gun? |
| The petitioner: | Yes. |
| The Court: | Please answer out loud. |
| The petitioner: | Yes, sir. |
| The Court: | And you do admit that you have the prior felony convictions described in the Supplemental Information? |
| The petitioner: | Yes, sir. |
| The Court: | Do you admit that as to all of these crimes what you did was wrong and was against the law? |
| The petitioner: | It was wrong and against the law, yes, sir. |

18

| The Court: | All right.  I will find a factual basis for accepting your plea of guilty to Counts 1 through 7. |

(Plea Tr. 8-11).  Finally, in addition to the facts on the plea form as well as the questions about the

crimes from the court to the petitioner at the plea hearing, the court also heard sworn testimony about

the circumstances of the crimes from the victims, the detectives who investigated the crimes, and

the petitioner.

Ms. Cornell testified that the petitioner came in the backdoor of Janie's Garden Center

brandishing a revolver type gun with a long barrel (S. Tr. 7-11).  He ordered Mr. Burks to the ground

and told Mr. Burks not to move or he would kill him and her (S. Tr. 8-12).  The petitioner grabbed

Ms. Cornell around the neck and placed the barrel of the gun to her temple (S. Tr. 8-12).  He then

demanded money which Ms. Cornell gave to him (S. Tr. 12-14).  After taking her cell phone from

her pocket and ordering Mr. Burks to stay put or he would kill him and Ms. Cornell, the petitioner

forced Ms. Cornell at gunpoint to walk outside where he told her to give him the keys to a truck (S.

Tr. 12-14).  When she told the petitioner she did not have the keys he searched her and then ordered

her to walk down the block and not to turn around or he would kill her and "the boy" (S. Tr. 12-14).

The petitioner then fled the scene (S. Tr. 13-14).

Mr. Burks testified that he saw the petitioner enter the store with a gun and grab Ms. Cornell

and place the gun to her head (S. Tr. 19-20).  The petitioner told him to lie on the ground (S. Tr. 20).

When Mr. Burks froze, the petitioner told him to lie down or he was going to shoot him or Ms.

Cornell (S. Tr. 20).  While Mr. Burks was on the ground he moved slightly and the petitioner told

him to stay on the ground or the petitioner would shoot them both (S. Tr. 20).  Mr. Burks did as

ordered and remained lying on the ground until Ms. Cornell returned to the store after the petitioner fled the scene (S. Tr. 20-21).

Ms. Sites testified the petitioner was inside her truck when she returned from shopping and when she entered he held a gun to her chest and demanded her purse (S. Tr. 24-27). She did not give him her purse. Instead, she beat him over the head with her shopping bag and a soda bottle (S. Tr. 27-28). The petitioner got out of the truck and pointed the gun at her husband and grabbed the truck keys (S. Tr. 28-30). A good Samaritan showed up and asked if she and her husband needed help and the petitioner ran away with their keys (S. Tr. 28-30).

Mr. Sites testified when he returned to his truck after shopping with his wife, he heard his wife tell the petitioner he was mashing her tomatoes and saw her hitting the petitioner (S. Tr. 33-34). When Mr. Sites heard the petitioner ask Ms. Sites for her purse, he grabbed the petitioner by the leg and pulled him from the truck (S. Tr. 34-36). The petitioner then held the gun to Mr. Sites as he went back inside to get the keys and Ms. Sites hit him over the head with a soda bottle (S. Tr. 34-35). The petitioner then ran off with the keys (S. Tr. 35).

Detective Weygand testified that when he interviewed the petitioner about the Sites' incident the petitioner told him that he intended to take the truck from the couple but changed his mind (S. Tr. 44-45). He also told Detective Weygand that he had upset Ms. Sites when he sat on her plants (S. Tr. 45). He never said he was on methamphetamine or prescription drugs at the time of the incident (S. Tr. 45, 48).

Detective Cook testified that when he interviewed the petitioner about the robbery at Janie's Garden Center the petitioner stated that he needed the money and thought it would be an easy target

20

because there were no surveillance cameras and the employees dealt mostly in cash (S. Tr. 69-71). The petitioner told Detective Cook that he took the gun to scare the employees to gain their compliance (S. Tr. 80). The petitioner never stated he was on methamphetamine or prescription drugs at the time of the incident (S. Tr. 71-72, 83).

The petitioner admitted that he committed the crimes and that he knew his actions were wrong (S. Tr. 111-112). He did not state he was high on methamphetamine during the crimes but did state he thought his prescription medications might have induced his actions (S. Tr. 108-109, 113-120). He admitted under cross-examination, however, that he had not been on any medications for months before the crimes and had never before complained to his doctors, either during the course of his treatment or after, of mental side effects from the medication (S. Tr. 128-146, 150-151, 156). He further admitted that he planned the crimes, knew what he was doing when he committed the crimes, and prepared for them in advance by taking a gun with him (S. Tr. 147).

The petitioner claims the record is insufficient to provide a factual basis for his pleas. While admitting that the entire record must be reviewed to determine an adequate factual basis, he then attempts to parse the record to support his assertion of inadequacy. Def's Br. at 15-18. The petitioner's claim must fail.

With respect to the petitioner's claim that he pleaded guilty while simultaneously denying culpability regarding whether he kidnaped Mr. Burks, the record does not support the petitioner's assertion. Indeed, the petitioner admitted to the court that he seized Mr. Burks by using a gun and ordering Mr. Burks to lie on the ground and stay there (O.R. 73; Plea Tr. 9). As is evident, the petitioner did not deny culpability. Thus, this case is unlike the circumstances of *Zakszewski v. State*,

1987 OK CR 152, ¶7, 739 P.2d 544, 546, wherein this Court concluded the trial court erred by failing to inquire further concerning a factual basis when the defendant pleaded guilty and simultaneously denied culpability by disclaiming knowledge. Furthermore, the testimony of Mr. Burks strengthened rather than weakened the factual basis for the petitioner's guilt. Indeed, Mr. Burks testified that after he had been seized by the petitioner he attempted to move but the petitioner told him to lie still or he would shoot him and Ms. Cornell (S. Tr. 20). The petitioner further ordered Mr. Burks to stay lying on the ground inside the store while he took Ms. Cornell outside (S. Tr. 20-21). These facts sufficiently established the petitioner's intent and guilt for kidnaping Mr. Burks. *See* 21 O.S.Supp.2012, § 741 (making it a felony to seize or confine a person with the intent to confine or imprison that person against his or her will); Instruction No. 4-110, OUJI-CR(2d) (stating that the elements of kidnaping include unlawfully seizing or confining another person with the intent to confine against that person's will). Thus, the petitioner's claim of inadequate factual basis lacks merit and the trial court and the trial court committed no error, plain or otherwise, in accepting his plea on this charge.

The petitioner also argues that the plea form did not indicate a factual basis for him attempting to rob Ms Sites of her purse. Def's Br. at 16. However, as established above, the petitioner stated at the plea hearing that he did attempt to rob Ms. Sites of her purse at gunpoint and both Ms. Sites and Mr. Sites testified that the petitioner demanded at gunpoint that Ms. Sites give him her purse (Plea Tr. 10-11; S. Tr. 27, 35-36). Thus, an adequate factual basis was established for this crime and the trial court committed no error, much less plain error, in accepting his plea to this charge. 21 O.S.2011, § 801 (making it a felony to use a firearm to attempt to rob another person);

22

Instruction No. 4-145, OUJI-CR(2d) (elements of attempted robbery include wrongfully attempting to take and carry away the personal property of another from the person through force or fear through use of a firearm). *See Hagar*, 1999 OK CR 35, ¶ 4, 990 P.2d at 897 ("A trial court may look to sources other than the defendant to obtain a factual basis for accepting a plea." (internal citation omitted)); *Estell*, 1988 OK CR 287, ¶ 10, 766 P.2d at 1384 (no requirement that a defendant make a detailed statement in his own words concerning the crime).

The petitioner further claims there was an insufficient factual basis for his plea to the attempted robbery of the Sites' truck.  He claims the Sites did not testify to his intent to take the truck, just that he "bizarrely took the truck's keys and ran off."  Def's Br. at 17.  However, the petitioner again incorrectly parses the record to support his claim.  A review of the entire record reveals the petitioner stated in the plea form and at the plea hearing that he intended to take the truck (O.R. 73; Plea Tr. 9-10).  In addition, Detective Weygand testified the petitioner stated during his interview that he was going to take the truck from the elderly couple and leave, but changed his mind (S. Tr. 44-45).  Such facts were sufficient to establish an adequate factual basis for the petitioner's plea. 21 O.S.2011, § 801; Instruction No. 4-145, OUJI-CR(2d).  Thus, the trial court did not commit plain error by accepting the petitioner's plea to this charge. *Hagar*, 1999 OK CR 35, ¶ 4, 990 P.2d at 897; *Estell*, 1988 OK CR 287, ¶ 10, 766 P.2d at 1384.

Finally, the petitioner claims several things impugned the factual basis for his pleas, including inconsistencies between his plea statements and his account of the crimes in the presentence investigation,[4] evidence that he was under the influence of methamphetamine during the

---

[4]"The presentence investigation reports specified in [Section 982] shall not be referred to, or be
(continued...)

crimes, and medical "literature"[5] that indicated his medical condition and medications, which he admits he was not taking, could cause side effects. However, as already established, there was simply no evidence in the record the petitioner was under the influence of methamphetamine during the crimes, much less so high he could not form the intent to commit the crimes, and there was also no evidence his medical condition or medication prevented him from possessing the "requisite mental state" for the crimes he committed. As a result, the trial court's decision to accept the pleas and deny the petitioner's motion to withdraw do not constitute error, plain or otherwise. Therefore, the petitioner's convictions and sentences should not be disturbed by this Court and his second proposition must be denied.

## PROPOSITION III

### THE PETITIONER HAS WAIVED HIS CLAIM THAT HIS PLEA WAS INVOLUNTARY AND UNKNOWING BASED ON HIS ALLEGATION HE WAS INCORRECTLY ADVISED OF THE PUNISHMENT RANGES ON SOME OF HIS CRIMES.

In his third proposition, the petitioner claims he was improperly advised of the punishment ranges on five of his seven sentences and thus, he should be allowed to withdraw his pleas. Def's Br. at 19-21. The petitioner has failed to preserve this issue, and this Court should therefore refuse to review it. The petitioner has further failed to demonstrate he was prejudiced by alleged mis-communication in the sentencing range for each count. Therefore, the State asserts the petitioner's third claim of error must be denied.

_____

[4](...continued)
considered, in any appeal proceedings." 22 O.S.2011, § 982(D).

[5]Defense counsel provided Wikipedia search results to the court, not medical literature (O.R. 114-115; Withdrawal Tr. 11-12).

24

Just like with his second proposition, the petitioner has not followed the necessary procedural steps to preserve his third proposition. *See* Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that "[n]o matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea"). *See also Weeks*, 2015 OK CR 16, ¶ 27, 362 P.3d at 657 (quoting Rule 4.2(B)). A claim raised to this Court which was not raised in the motion to withdraw plea is waived. *See Walker*, 1998 OK CR 14, ¶ 3, 953 P.2d at 355 ("We do not reach the merits of the first proposition, for Walker waived the issue by failing to raise it in his motion to withdraw guilty plea."); Rule 4.3(C)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that the petition for writ of certiorari shall contain "[t]he errors of law urged as having been committed during the proceedings in the trial court which were raised in the application to withdraw plea").

In his Application to Withdraw Plea of Guilty, the petitioner sought to withdraw his plea on the basis that he did not enter his plea "knowingly and voluntarily, nor did he fully understand what the effect of entering a blind plea could mean for sentencing" (O.R. 103). He made no claim that he was improperly advised of the punishment range for each charge (O.R. 103-104). Because the petitioner has failed to properly raise this issue pursuant to this Court's Rules, this Court should refuse to review the claim. *See Magnan*, 2009 OK CR 16, ¶ 27, 207 P.3d at 406 (refusing to review petitioner's claim in capital case that the factual basis for his guilty pleas was insufficient because it was neither jurisdictional nor related to this Court's mandatory sentence review); *Taylor*, 2008 OK CR 22, ¶ 1 n.2, 189 P.3d at 727 n.2 ("Generally, all non-jurisdictional issues are waived upon the

25

entry of a guilty plea with the exception of whether the plea was knowing and voluntary.").[6] If, however, this Court decides to review the claim, review is for plain error only. *See Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142 (noting that "because [the petitioner's claims] are not properly raised under our Rules we review the issues for plain error only"). "To be entitled to relief for plain error, a defendant must show: (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning that the error affected the outcome of the proceeding." *Barnard*, 2012 OK CR 15, ¶ 13, 290 P.3d at 764 (citation omitted).

The State recognizes this Court has held that a trial court's incorrect statement of the length of a possible sentence to a defendant is a fundamental error which can impact the knowing and voluntary nature of a plea. *See Hunter v. State*, 1992 OK CR 1, ¶¶ 2-3, 825 P.2d 1353, 1355 (finding the trial court's misstatement concerning the length of the possible sentence was a fundamental error which required remand for withdrawal of a guilty plea). However, erroneous advice concerning the sentencing range is not automatically grounds for relief. *See Chastain v. State*, 1985 OK CR 117, ¶ 5, 706 P.2d 539, 540 (affirming trial court's refusal to allow the petitioner to withdraw his plea when the trial court mistakenly told him the maximum sentence was five years, when in fact it was ten years), *overruled on other grounds by Luster v. State*, 1987 OK CR 261, ¶ 4, 746 P.2d 1159, 1160. "A finding of plain error is merely a threshold requirement for appellate review, for error may nevertheless be found harmless." *Van White v. State*, 1999 OK CR 10, 990 P.2d 253, 265. Under the circumstances of this case, the petitioner is not entitled to relief.

---

[6] The petitioner makes no claim that any of his sentences are outside the prescribed range of punishment.

26

The petitioner is correct that the plea form incorrectly listed the range of punishment on Counts 2, 3, 4, and 7 as ten (10) years to life imprisonment (O.R. 72). However, contrary to the petitioner's claim on appeal, the correct range of punishment for each of these counts was recited to the petitioner at the plea hearing by the court before the petitioner entered his pleas (Plea Tr. 5-8).

The record reflects the petitioner was correctly informed that the sentencing range for Counts 2 and 7 was one (1) to ten (10) years imprisonment (Plea Tr. 5, 8). While the court initially indicated the sentence for count 2 was a minimum of ten (10) years (Plea Tr. 5), the prosecutor corrected the court when addressing the sentence for Count 7, which was same statutory charge as that alleged in Count 2 (O.R. 54-57), by stating that the range of punishment was one (1) year to ten (10) years imprisonment because the prior felony that was alleged was part of the elements of the crime (Plea Tr. 7-8). Defense counsel also clarified that the charges alleged in Counts 2 and 7 were two separate incidents occurring on different dates (Plea Tr. 8). The petitioner was later sentenced to (10) years on Counts 2 and 7 (O.R. 100-102, 179-181; S. Tr. 178-179). Thus, there was no error plain in the record. *See* 21 O.S.2011, § 1284 (stating the penalty for possession of a firearm after former conviction of a felony is "not less than one (1) year nor more than ten (10) years" imprisonment).

Furthermore, even if error could be established, as claimed by the petitioner with respect to his Count 2 sentence, any error was harmless. The petitioner argues that the court's misunderstanding of the Count 2 sentence led it to sentence the petitioner to what it believed was the minimum sentence of ten (10) years, and it cannot be said with certainty that the petitioner was not prejudiced. Def's Br. at 22. However, given that the petitioner was sentenced to the maximum sentence of ten (10) years by the court on the identical statutory crime alleged in Count 7, and the

27

sentences were ordered to run concurrently, this Court *can* definitely conclude the petitioner suffered no prejudice as a result of any alleged error. *Chastain*, 1985 OK CR 117, ¶ 5, 706 P.2d at 540. Further, there is no indication anywhere in the record that any misunderstanding of the Count 2 sentence impacted the voluntariness of his plea to the charge. As a result, no relief is warranted. *See e.g., Fields*, 1996 OK CR 35, ¶ 28, 923 P.2d at 630 (acknowledging that this Court "will examine the entire record before [it] to determine whether the guilty plea was entered in a knowing and voluntary manner").

With respect to Counts 3 and 4 for kidnaping, the petitioner was advised by the court before he entered his pleas that the sentencing range was two (2) years to life imprisonment (Plea Tr. 5-6). This was the correct range of punishment and the petitioner can demonstrate no error impacting the knowing or voluntary nature of his plea with respect to these charges. *See* 21 O.S.Supp.2012, § 741; 21 O.S.2011, § 51.1(A)(2).

With respect to Counts 5 and 6 for attempted robbery with a dangerous weapon, the petitioner was advised by the court before he entered his pleas that the sentencing range was ten (10) years to life imprisonment (Plea Tr. 6-7). This was the correct range of punishment and the petitioner can demonstrate no error impacting the knowing or voluntary nature of his plea with respect to these charges. *See* 21 O.S.2011, § 801; 21 O.S.2011, § 51.1(A)(2).

With respect to Count 1 for robbery with a firearm, the petitioner was advised by the court before he entered his pleas that the sentencing range was five (5) years to life imprisonment (Plea Tr. 3). This was an incorrect range of punishment due to the petitioner's prior felony which subjected him to a sentence of ten (10) years to life imprisonment. 21 O.S.2011, § 801; 21 O.S.2011,

28

§51.1(A)(2). However, any error inured to the petitioner's benefit not his detriment. *Chastain*, 1985 OK CR 117, ¶ 5, 706 P.2d at 540. Further, given the petitioner was sentenced to the correct maximum punishment, he can show no harm as a result of the court's erroneous statement about the punishment range. Therefore, no relief is warranted based on the error. *Fields*, 1996 OK CR 35, ¶ 28, 923 P.2d at 630.

The petitioner has failed to demonstrate that any error in the court's recitation of the punishment range rendered his pleas to the charges unknowing or involuntary or resulted in prejudice. Therefore, he is entitled to no relief and his third proposition of error must be denied by this Court.

## PROPOSITION IV

**THE PETITIONER HAS WAIVED HIS DOUBLE PUNISHMENT CLAIM BY ENTERING PLEAS OF GUILTY TO EACH CHARGE AND BY FAILING TO RAISE THIS ISSUE BELOW; THEREFORE, HE IS ENTITLED TO NO RELIEF FROM THIS COURT.**

In his fourth proposition, the petitioner claims he was subjected to multiple punishment for single acts and the court should not have accepted his pleas to the charges. Def's Br. at 22-24. The petitioner waived this issue both by entering pleas of guilty to all of the charges and by failing to raise the issue below. Therefore, the State asserts the petitioner's fourth claim of error must be denied.

The petitioner has failed to preserve his double punishment claim for review in this Court. *See* Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that "[n]o matter may be raised in the petition for a writ of certiorari unless the same has

29

been raised in the application to withdraw the plea"). *See also Weeks*, 2015 OK CR 16, ¶ 27, 362 P.3d at 657 (quoting Rule 4.2(B)). A claim raised to this Court which was not raised in the motion to withdraw plea is waived. *See Walker*, 1998 OK CR 14, ¶ 3, 953 P.2d at 355 ("We do not reach the merits of the first proposition, for Walker waived the issue by failing to raise it in his motion to withdraw guilty plea."); Rule 4.3(C)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that the petition for writ of certiorari shall contain "[t]he errors of law urged as having been committed during the proceedings in the trial court which were raised in the application to withdraw plea").

In his Application to Withdraw Plea of Guilty, the petitioner did not seek to withdraw his pleas on the basis that he was subjected to double punishment (O.R. 103-104). Because the petitioner has failed to properly raise this issue pursuant to this Court's Rules, this Court should refuse to review the claim. *See Taylor*, 2008 OK CR 22, ¶ 1 n.2, 189 P.3d at 727 n.2 ("Generally, all non-jurisdictional issues are waived upon the entry of a guilty plea with the exception of whether the plea was knowing and voluntary."). *See also Weeks*, 2015 OK CR 16, ¶ 9, 362 P.3d at 653 (noting that a double jeopardy claim may be waived by entry of a guilty plea and stating that "a valid guilty plea forecloses review of those claims, constitutional and otherwise, which a petitioner had before entering the plea"); *Hall v. State*, 1982 OK CR 141, ¶ 13, 650 P.2d 893, 896 ("The long established rule in Oklahoma is that protection from double jeopardy is a personal right which may be waived by the defendant's failure to assert the defense or make a timely objection."); *Johnson v. State*, 1980 OK CR 45, ¶ 30, 611 P.2d 1137, 1145 ("There are, of course, some constitutional rights

which are never finally waived. Lack of jurisdiction, for instance, can be raised at any time. *This is not true of the double jeopardy protection.*" (emphasis added)).

Should this Court review the petitioner's claim, review is limited to whether the face of the record establishes a double punishment violation. *United States v. Broce*, 488 U.S. 563, 573-574, 109 S. Ct. 757, 764-765, 102 L. Ed. 2d 927 (1989) (stating that a "conscious waiver" of potential defenses such as double jeopardy is not required for a valid guilty plea); *Weeks*, 2015 OK CR 16, ¶ 12, 362 P.3d at 654 ("A guilty plea does not foreclose a subsequent challenge that the charge, judged on its face, is one which the State may not constitutionally prosecute." (citing *Broce*, 488 U.S. at 575)). *See e.g., Henderson v. State*, No. C-2016-40, slip op. at 9-12 (Okl.Cr. Feb. 9, 2017) (unpublished and attached hereto as Exhibit A) (reviewing claim of ineffective assistance of counsel for failing to raise double jeopardy claim and granting certiorari relief where record, "judged on its face," showed the four charges brought against the petitioner were one act, not four).[7] If a double jeopardy violation is not apparent from the face of the Information or the record of the plea proceedings, then such claim is "foreclosed by the admissions inherent" in the guilty plea. *Broce*, 488 U.S. at 576. This is true because a "guilty plea 'is more than a confession which admits that the accused did various acts.'" *Id.*, 488 U.S. at 570 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)). Instead, "by entering a guilty plea, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Broce*, 488 U.S. at 570. Therefore, "[j]ust as a defendant who pleads guilty to

---

[7]The unpublished opinion in *Henderson* is offered by the State pursuant to Rule 3.5(C)(3), *Rules of the Court of Criminal Appeals*, Tit. 22, Ch. 18, App. (2016), as no published opinion serves as well in demonstrating the issue raised in this proposition. A copy of the opinion is attached hereto as Exhibit A.

a single count admits to guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Id.*, 488 U.S. at 763. *See Ex parte Wright*, 1941 OK CR 157, ¶ 11, 119 P.2d 97, 99 (noting that when a defendant enters a plea of guilty such plea is conclusive proof of the defendant's guilt of the offense as alleged in the information).[8]

In this case, the petitioner alleges with respect to Counts 2 and 7 that he was convicted twice for possessing the same gun. He argues his possession of that gun was continuous and should have resulted in only one conviction. *See* 21 O.S.2011, § 11 (prohibiting double punishment based on a single act); *Hunnicut v. State*, 1988 OK CR 91, ¶ 10, 755 P.2d 105, 109 ("The fifth amendment guarantee against double jeopardy protects against multiple punishments for the same offense."). However, as evidenced by his plea to the two possession charges, the petitioner admitted to possessing a gun on May 9, 2015, after he had been convicted of a felony, and to also possessing a gun on May 15, 2015, after he had been convicted of a felony (O.R. 54-55, 73; Plea Tr. 73). While the Information describes both guns as .22 caliber pistols, there is no further description of the guns except where it is stated in Count 2 that one .22 caliber pistol was found in the petitioner's work truck hidden in a red lunch box (O.R. 54). Count 7 does not describe that the .22 pistol he possessed on May 15 was ever located (O.R. 55). Thus, there is no indication from the face of the record that

---

[8]The petitioner cites to *Clay v. State*, 1979 OK CR 26, ¶ 3, 593 P.2d 509, 510, to support his assertion that a guilty plea does not waive a double jeopardy claim. However, the decision in *Clay* was based on the Supreme Court's decision in *Menna v. New York*, 423 U.S. 61, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975). In *Broce*, the Court clarified that its decision in *Menna*, which found no double jeopardy waiver, involved an indictment which was facially duplicative of an earlier offense for which the defendant had been convicted and sentenced and which could not be constitutionally prosecuted. *Broce*, 488 U.S. at 575-576. The *Broce* Court made clear that a voluntary and intelligent plea to the crimes alleged in an indictment precludes a collateral attack on double jeopardy grounds after the plea is entered. *Broce*, 488 U.S. at 574-575.

the defendant continuously possessed only one gun during the two incidents. At most, the petitioner raises a factual question which cannot be resolved on the face of the record. As a result, the petitioner's guilty plea to the crimes alleged in Counts 2 and 7 preclude his collateral attack on those convictions on double punishment grounds on appeal. *Broce*, 488 U.S. at 576. *See Weeks*, 2015 OK CR 16, ¶ 9, 362 P.3d at 653 (citing *Broce* and stating that a double jeopardy claim may be waived by entry of a guilty plea and that "a valid guilty plea forecloses review of those claims, constitutional and otherwise, which a petitioner had before entering the plea").

The petitioner also asserts his conviction for robbing Janie's Garden Center (Count 1) and kidnaping Mr. Burks violated double jeopardy because, "unlike the compelled movement of Ms. Cornell, any confinement of Mr. Burks was merely incidental to the robbery itself," and he did not commit a separate act of physical seizure with the gun exclusive to Mr. Burks. Def's Br. at 26-27. However, the record of the plea proceedings contradicts the petitioner's claims. The Information alleged the petitioner forcibly seized Mr. Burks and forced him to lie on the ground under threat of harm and that he confined Mr. Burks at Janie's Garden Center (O.R. 55). At the plea hearing, the petitioner admitted that he forced Mr. Burks at gunpoint to lie down on the ground and stay there and pleaded guilty to kidnaping Mr. Burks (Plea Tr. 9). At the sentencing hearing, Ms. Cornell testified that she saw the defendant walking down the aisle from the back door brandishing a weapon and heard him tell Mr. Burks to lie on the ground and stated he wanted money (S. Tr. 8). The petitioner then came behind the counter and put his arm around Ms. Cornell's neck and put the gun to her temple and demanded cash (S. Tr. 8-12). When Mr. Burks moved, the petitioner told him to lie still or he would shoot him (S. Tr. 12, 20). Mr. Burks stayed where he was per the petitioner's orders

until Ms. Cornell returned to the store after she was taken outside by the petitioner (S. Tr. 20-21).

These facts sufficiently allege two separate kidnap victims. 21 O.S.Supp.2012, § 741; Instruction

No. 4-110, OUJI-CR(2d). *See, e.g., Sanders v. State*, 2015 OK CR 11, ¶ 6, 358 P.3d 280, 283 ("If

the offenses at issue are separate and distinct, requiring dissimilar proof, Oklahoma's statutory ban

on 'double punishment' is not violated."). Thus, the petitioner's plea of guilty to Mr. Burks'

kidnaping forecloses his collateral attack on that conviction on double punishment grounds on

appeal. *Broce*, 488 U.S. at 576; *Weeks*, 2015 OK CR 16, ¶ 9, 362 P.3d at 653.

Finally, the petitioner alleges his two counts of attempted robbery (Counts 5 and 6), violate

double punishment because the Sites are a married couple and all of their property is more than likely

shared marital property. This claim is preposterous. The Information alleged the petitioner

attempted to rob Ms. Sites of her purse while threatening her with a gun and attempted to rob both

of them of their truck by threatening them with a gun (O.R. 55). At the plea hearing, the petitioner

admitted he tried to steal Ms. Sites' purse and also tried to steal their truck and entered pleas of guilty

to both charges (Plea Tr. 9-10). At the sentencing hearing, Ms. Sites testified that the petitioner was

inside the truck when she returned from shopping and the petitioner held a gun to her chest and

demanded her purse (S. Tr. 24-30). Mr. Sites testified that the petitioner demanded Ms. Sites' purse

and when he dragged him out of the truck the petitioner returned to the inside of the vehicle and

grabbed the keys while holding a gun to Mr. Sites' stomach (S. Tr. 34-36). The petitioner ran off

when a good Samaritan stopped to help (S. Tr. 29-30, 34-36). These facts sufficiently indicate two

separate acts of robbery against separate individuals. 21 O.S.2011, § 801; Instruction No. 4-145,

OUJI-CR(2d). *See Sanders*, 2015 OK CR 11, ¶ 6, 358 P.3d at 283. As a result, the petitioner's pleas

to the separate charges of attempted robbery preclude his collateral attack on those convictions on

double punishment grounds on appeal. *Broce*, 488 U.S. at 576; *Weeks*, 2015 OK CR 16, ¶ 9, 362

P.3d at 653.

      As demonstrated, the petitioner's guilty pleas to the charges alleged against him foreclose

his collateral attack on his convictions on double punishment grounds. Consequently, his request

for dismissal of his convictions lacks merit and should be denied by this Court.

**PROPOSITION V**

      **THE PETITIONER'S CLAIM THAT HIS MEDICAL RECORDS WERE IMPROPERLY ADMITTED AT THE SENTENCING HEARING HAS BEEN WAIVED BUT, NEVERTHELESS, LACKS MERITS AS THE CLAIM RAISES NO COGNIZABLE ISSUE FOR THIS COURT'S REVIEW.**

      In his fifth proposition, the petitioner claims his sentences should be modified or the case be

remanded for a new sentencing hearing because the State presented evidence of his "privileged"

medical records at the sentencing hearing. Def's Br. at 33-36. This Court should refuse to review

this claim as the petitioner has not preserved it for this Court's review. Alternatively, the State

contends this Court should deny the claim as it raises no issues with respect to the knowing and/or

voluntary nature of the petitioner's guilty pleas.

      The petitioner has failed to preserve the claim he raises in this proposition of error for review

by this Court. This Court's Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title

22, Ch. 18, App. (2016), specifically provides that "[n]o matter may be raised in the petition for a

writ of certiorari unless the same has been raised in the application to withdraw the plea . . . ." *See*

*also Weeks*, 2015 OK CR 16, ¶ 27, 362 P.3d at 657 (quoting Rule 4.2(B)). A claim raised to this

35

Court which was not raised in the motion to withdraw plea is waived. *See Walker*, 1998 OK CR 14, ¶ 3, 953 P.2d at 355 ("We do not reach the merits of the first proposition, for Walker waived the issue by failing to raise it in his motion to withdraw guilty plea."); Rule 4.3(C)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that the petition for writ of certiorari shall contain "[t]he errors of law urged as having been committed during the proceedings in the trial court which were raised in the application to withdraw plea").

In his Application to Withdraw Plea of Guilty, the petitioner did not seek to withdraw his pleas based on the admission of his medical records at the sentencing hearing (O.R. 103-104). Because the petitioner has failed to properly raise this issue pursuant to this Court's Rules, this Court should refuse to review the claim. *See Magnan*, 2009 OK CR 16, ¶ 27, 207 P.3d at 406 (refusing to review petitioner's claim in a capital case that the factual basis for his guilty pleas was insufficient because it was neither jurisdictional nor related to this Court's mandatory sentence review); *Taylor*, 2008 OK CR 22, ¶ 1 n.2, 189 P.3d at 727 n.2 ("Generally, all non-jurisdictional issues are waived upon the entry of a guilty plea with the exception of whether the plea was knowing and voluntary."). If the Court decides to review the claim, such review is limited to plain error only. *See Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142 (noting that "because [the petitioner's claims] are not properly raised under our Rules we review the issues for plain error only"). "To be entitled to relief for plain error, a defendant must show: (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning that the error affected the outcome of the proceeding." *Barnard*, 2012 OK CR 15, ¶ 13, 290 P.3d at 764 (citation omitted). The petitioner is not entitled to relief.

36

The Court's only concern when evaluating the validity of a guilty plea is whether the plea was knowing and voluntary and the court had jurisdiction to accept the plea. *Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142. This Court will examine the entire record before it "to determine whether the guilty plea was entered in a knowing and voluntary manner." *Fields*, 1996 OK CR 35, ¶ 14, 923 P.2d at 630.

In this proposition of error, the petitioner does not state that his pleas were unknowing or involuntary based on the admission of his medical records at the sentencing hearing. Instead, he claims the records were "privileged" and should not have been considered because they weakened his attempt to negate his culpability or garner sympathy with the court. Def's Br. at 33-34.

In substance, the petitioner's complaint is that he received harsh sentences from the court for his crimes because of the court's consideration of the medical evidence. However, dissatisfaction with a sentence is not a "satisfactory basis for allowing a plea to be withdrawn." *Lozoya*, 1996 OK CR 55, ¶ 44, 932 P.2d at 34. Further, the record demonstrates that the petitioner is the one who put his medical condition in question by claiming he was not in his right mind when he committed the crimes because of the side effects of medications (S. Tr. 103-120). The State countered the petitioner's claim with actual evidence pertaining to his medical condition and medication use. This evidence was admitted without objection from the petitioner and no claim of "privilege" was ever asserted by the petitioner. In fact, the record reflects that defense counsel provided some of the medical records to the prosecutor before the hearing (S. Tr. 158). Thus, the petitioner's claim that he never waived his alleged privilege of disclosure of these records or that he was not relying upon his mental and/or emotional condition as a defense is baseless. *See, e.g.,* 12 O.S. 2011, §

37

2503(D)(3)(providing an exception to the privilege for any "communication relevant to the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon that condition as an element of the patient's claim or defense"). Moreover, if any error occurred, it was invited by the petitioner and cannot be complained about on appeal. *See Harris v. State*, 1992 OK CR 74, ¶ 22, 841 P.2d 597, 602 ("It is well established that a party may not complain of error which he himself invited or waived.").

In conclusion, the petitioner's complaint about the admission of his medical records was not raised below and should be deemed waived. *Taylor*, 2008 OK CR 22, ¶ 1 n.2, 189 P.3d at 727 n.2. Alternatively, the claim fails to raise any issues related to the knowing or voluntary nature of his guilty pleas and the petitioner cannot demonstrate any error, much less plain error. *Barnard*, 2012 OK CR 15, ¶ 13, 290 P.3d at 764; *Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142; *Fields*, 1996 OK CR 35, ¶ 14, 923 P.2d at 630. Accordingly, the petitioner's fifth proposition of error should be denied by this Court.

## PROPOSITION VI

### THE PETITIONER'S CLAIM OF PROSECUTORIAL ERROR HAS BEEN WAIVED BUT, NEVERTHELESS, THE STATE DEMONSTRATES THE CLAIM LACKS MERIT.

In his sixth proposition, the petitioner claims he should be allowed to withdraw his pleas or have his sentences favorably modified based on prosecutorial error. In particular, he complains about the prosecutor's reliance on his medical records during the sentencing hearing and her assertions about a medical evaluation at the withdrawal hearing which he claims confused his counsel and caused the court to deny his motion to withdraw. Def's Br. at 38-40. This Court should

38

refuse to review this claim as the petitioner has not preserved it for this Court's review. Alternatively, the State contends this Court should deny the claim as it lacks merit.

The petitioner has failed to properly preserve his claim of prosecutorial error for review by this Court. This Court's Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016), specifically provides that "[n]o matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea . . . ." *See also Weeks*, 2015 OK CR 16, ¶ 27, 362 P.3d at 657 (quoting Rule 4.2(B)). A claim raised to this Court which was not raised in the motion to withdraw plea is waived. *See Walker*, 1998 OK CR 14, ¶ 3, 953 P.2d at 355 ("We do not reach the merits of the first proposition, for Walker waived the issue by failing to raise it in his motion to withdraw guilty plea."); Rule 4.3(C)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that the petition for writ of certiorari shall contain "[t]he errors of law urged as having been committed during the proceedings in the trial court which were raised in the application to withdraw plea").

In his Application to Withdraw Plea of Guilty, the petitioner did not seek to withdraw his pleas based on prosecutorial error (O.R. 103-104). Because the petitioner has failed to properly raise this issue pursuant to this Court's Rules, this Court should refuse to review the claim. *See Magnan*, 2009 OK CR 16, ¶ 27, 207 P.3d at 406 (refusing to review petitioner's claim in a capital case that the factual basis for his guilty pleas was insufficient because it was neither jurisdictional nor related to this Court's mandatory sentence review); *Taylor*, 2008 OK CR 22, ¶ 1 n.2, 189 P.3d at 727 n.2 ("Generally, all non-jurisdictional issues are waived upon the entry of a guilty plea with the exception of whether the plea was knowing and voluntary."). If the Court decides to review the

claim, such review is limited to plain error only. *See Wackerly v. State,* 2000 OK CR 15, ¶ 44, 12 P.3d 1, 15 ("The general rule is that when the State makes an objectionable statement, it is incumbent upon defense counsel to make a timely, contemporaneous objection. Failure to object waives all but plain error on appeal."). This Court first determines "whether the prosecutor's comments constitute an actual error." *Malone v. State,* 2013 OK CR 1, ¶ 42, 293 P.3d 198, 212. Next, the Court determines "whether the error is plain on the record." *Id.* "Only if the appellant has shown the existence of an actual error plain on the record do we turn to the third step of the analysis," which is to determine "whether the prosecutorial misconduct so infected the defendant's trial that it was rendered fundamentally unfair." *Id.,* 2013 OK CR 1, ¶¶ 42-43, 293 P.3d at 212. The petitioner is not entitled to relief.

"The focus of this Court in evaluating whether a defendant should be allowed to withdraw a guilty plea is whether the trial court abused its discretion in failing to allow the plea to be withdrawn." *Fields,* 1996 OK CR 35, ¶ 26, 923 P.2d at 631. The Court's only concern when evaluating the validity of a guilty plea is whether the plea was knowing and voluntary and the court had jurisdiction to accept the plea. *Lewis,* 2009 OK CR 30, ¶ 4, 220 P.3d at 1142. This Court will examine the entire record before it "to determine whether the guilty plea was entered in a knowing and voluntary manner." *Fields,* 1996 OK CR 35, ¶ 14, 923 P.2d at 630.

In this proposition of error, the petitioner does not state that his pleas were unknowing or involuntary based upon prosecutorial error. Instead, he claims that the prosecutor erred by submitting evidence of his medical records to the court during the sentencing proceeding and confused his counsel and the court at the plea withdrawal hearing by stating what had occurred with

40

respect to the petitioner's medical evaluations before he entered his pleas of guilty. Def's Br. at 37-40. The petitioner's claims lack merit.

With respect to the sentencing hearing, as explained in Proposition V, above, the petitioner is the one who placed his medical condition and medication use in issue and had no objection to the admission of his medical records (S. Tr. 103-120). Thus, the prosecutor did not commit error by commenting on the petitioner's medical records. *See, e.g., Turrentine v. State,* 1998 OK CR 33, ¶ 63, 965 P.2d 955, 975 ("The prosecutor may comment on the veracity of the testimony when it is supported by the evidence."); *Armstrong v. State*, 1991 OK CR 34, ¶ 25, 811 P.2d 593, 599 (rejecting the defendant's prosecutorial misconduct claim where the evidence complained of was properly admitted). *See also Harris*, 1992 OK CR 74, ¶ 22, 841 P.2d at 602 ("It is well established that a party may not complain of error which he himself invited or waived."). Further, this claim does not call into question the validity of the petitioner's guilty pleas and, therefore, raises no cognizable issue for this Court's review in this appeal. *Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142; *Fields*, 1996 OK CR 35, ¶ 14, 923 P.2d at 630. *See Lozoya*, 1996 OK CR 55, ¶ 44, 932 P.2d at 34 (holding dissatisfaction with a sentence is not a "satisfactory basis for allowing a plea to be withdrawn").[9]

With respect to the prosecutor's comments at the withdrawal hearing, the petitioner essentially asks this Court to ignore the record when it does not place him in a good light. At the withdrawal hearing, after defense counsel explained to the court that he thought the petitioner was

---

[9]The petitioner also briefly mentions the prosecutor's questions to his character witnesses about his extramarital affair, stating there was no evidence to support the assertion. Def's Br. at 38. However, the petitioner admitted under oath to having an extramarital affair (S. Tr. 106, 147-149). Thus, his complaint about the prosecutor's comments is baseless.

competent but still wanted time for an evaluation, the prosecutor told the court that, based on her discussion with trial counsel, the petitioner had already been evaluated before he entered his pleas of guilty (Withdrawal Tr. 6-10). Defense counsel then confirmed the petitioner had been evaluated but he thought it was for competency to stand trial (Withdrawal Tr. 10). On appeal, the petitioner argues "[t]here is absolutely nothing in the record indicating that Mr. Tibbetts consulted with a mental health professional for the purpose of gauging his competence at either the time of the incidents or at the time of the plea." Def's Br. At 39. However, as is evident, that is not the case. More importantly, however, nothing the prosecutor said to the court caused the court to deny "withdrawal of an unintelligent plea," as claimed by the petitioner. Indeed, the prosecutor argued extensively that nothing in the record of the plea proceedings or the sentencing hearing indicated the petitioner was incompetent at the time he entered his pleas of guilty (Withdrawal Tr. 7-10). The prosecutor reminded the court that the petitioner had testified for a lengthy period of time during the sentencing proceedings and was responsive to questions and very calculating in his answers (Withdrawal Tr. 8). The prosecutor further argued there was no indication at any point in the proceedings that the petitioner did not understand the nature and consequences of his pleas or that his pleas were entered through ignorance or inadvertence (Withdrawal Tr. 8-9). Based on these arguments, the prosecutor asked the court to deny the petitioner's motion to withdraw his pleas (Withdrawal Tr. 8-10). The prosecutor's statements and arguments to the court did not constitute error. *See* 22 O.S.Supp.2011, §1175.1(1) (defendant competent to proceed if he or she has the "present ability . . . to understand the nature of the charges and proceedings brought against him or

42

her and to effectively and rationally assist in his or her defense"). The petitioner's baseless assertions to the contrary should be denied by this Court.

The petitioner's claim of prosecutorial error was not raised below and should be deemed waived by this Court. *Taylor*, 2008 OK CR 22, ¶ 1 n.2, 189 P.3d at 727 n.2. Alternatively, the claim lacks merit as no error occurred, much less plain error. *Malone*, 2013 OK CR 1, ¶¶ 42-43, 293 P.3d at 212; *Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142; *Fields*, 1996 OK CR 35, ¶ 14, 923 P.2d at 630. Accordingly, the petitioner's sixth proposition of error should be denied by this Court.

## PROPOSITION VII

### THE PETITIONER WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL; THEREFORE, HIS CONVICTIONS AND SENTENCES SHOULD NOT BE DISTURBED BY THIS COURT.

In his seventh proposition of error, the petitioner contends he was denied the effective assistance of counsel at both the plea and withdrawal hearing and this Court should remand this matter to allow him to withdraw his guilty pleas. Def's Br. at 47. The State contends the petitioner's ineffective assistance of counsel claims are without merit and should be denied by this Court.

As with several of his claims, the petitioner did not raise a claim of ineffective plea counsel in his motion to withdraw his pleas (O.R. 103-104). This, in spite of the fact he had different counsel appointed to him before his plea withdrawal hearing (O.R. 106, 113, 155). *See* Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) (providing that "[n]o matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea"). *See also Walker*, 1998 OK CR 14, ¶ 3, 953 P.2d at 355 ("We do not reach the merits of the first proposition, for Walker waived the issue by failing to raise it in

his motion to withdraw guilty plea."). In the event this Court reviews this waived claim, review is limited to only plain error. *See e.g.*, *Lewis*, 2009 OK CR 30, ¶ 4, 220 P.3d at 1142 (reviewing waived ineffective assistance of plea counsel claim for plain error). The petitioner has not established plain error. *See Barnard*, 2012 OK CR 15, ¶ 13, 290 P.3d at 764 ("To be entitled to relief for plain error, a defendant must show: (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning that the error affected the outcome of the proceeding." (citation omitted)).

This Court reviews a claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Wood v. State*, 2007 OK CR 17, ¶ 36, 158 P.3d 467, 479. The *Strickland* test requires a petitioner to demonstrate both that counsel's performance was constitutionally deficient and that such performance prejudiced the petitioner, depriving him of a fair trial with a reliable result. *Strickland*, 466 U.S. at 687; *Wood*, 2007 OK CR 17, ¶ 36, 158 P.3d at 479. In the context of a guilty plea, a petitioner must demonstrate not only that his or her counsel was deficient but also that, but for counsel's errors, he or she "'would not have pleaded guilty and would have insisted on going to trial.'" *Medlock v. State*, 1994 OK CR 65, ¶ 37, 887 P.2d 1333, 1345 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985)). Failure to make the requisite showing under either prong of the *Strickland* test defeats a petitioner's ineffectiveness claim. *Strickland*, 466 U.S. at 700. *See also Wiley v. State*, 2008 OK CR 30, ¶ 4, 199 P.3d 877, 878 ("Unless the defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." (citing *Strickland*, 466 U.S. at 687)). In this

44

case, the petitioner has failed to establish either that his plea counsel's conduct was deficient or that he was prejudiced as a result of his counsel's conduct. As a result, his request to withdraw his pleas should be denied by this Court.

The petitioner alleges his plea counsel was ineffective for mishandling his mental health issues, allowing him to plead without a factual basis, allowing him to plead without being properly advised of the sentence ranges, for allowing him to plead guilty to all counts which resulted in impermissible multiple punishment, failing to object to the admission of his medical records at the sentencing hearing, failing to object to prosecutorial comments, and failing to request sequestration of witnesses during the sentencing hearing. Def's Br. at 41-46. These claims lack merit.

In Proposition I, the State demonstrated the petitioner's competence to plead guilty was never in question in this matter as evidenced by his responses during the plea hearing and his lengthy and detailed testimony during the sentencing hearing (O.R. 70-78; Plea Tr. 3-13; S. Tr. 103-156). Further, his insanity defense, which was clearly pursued by counsel and then properly abandoned given the contents of the petitioner's actual medical history, was clearly a matter of sound trial strategy. *See Browning v. State*, 2006 OK CR 8, ¶ 14, 134 P.3d 816, 831 (stating that the appellant "must present evidence overcoming this Court's presumption that counsel's conduct was professional and could be considered sound strategy"). *See also Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."). Under such circumstances, the petitioner cannot

45

demonstrate either deficient performance or any resulting prejudice, and his claim of ineffective assistance of plea counsel claim on this basis must be denied. *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687, 694. *See Wilson v. State*, 1998 OK CR 73, ¶¶ 111-113, 983 P.2d 448, 472 (finding that where the appellant's substantive claim had no merit, the appellant failed to show counsel ineffective regarding the substantive claim).

As demonstrated in Proposition II, a sufficient factual basis supported the petitioner's pleas of guilty to each charge. *See Bush*, 2012 OK CR 9, ¶ 29, 280 P.3d at 345 ("The factual basis of the plea must be sufficient so that the trial court can test whether the plea is being entered intelligently. The factual basis is also a means by which a court can know that it is not convicting a person innocent of the charges." (internal citation omitted)); *Hagar*, 1999 OK CR 35, ¶ 4, 990 P.2d at 897 ("A trial court may look to sources other than the defendant to obtain a factual basis for accepting a plea." (internal citation omitted)); *Estell*, 1988 OK CR 287, ¶ 10, 766 P.2d at 1384 (no requirement that a defendant make a detailed statement in his own words concerning the crime). Therefore, the petitioner's claim that plea counsel was ineffective for allowing him to enter pleas to the charges without a factual basis lacks merit and should be denied by this Court. *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687, 694. *See Wilson*, 1998 OK CR 73, ¶¶ 111-113, 983 P.2d at 472 (finding that where the appellant's substantive claim had no merit, the appellant failed to show counsel ineffective regarding the substantive claim).

As the State demonstrated in Proposition III, above, the petitioner was properly advised of all but the Count 1 sentencing range during the plea hearing (Plea Tr. 5-8). That error was shown to be harmless as it inured to the petitioner's benefit and his maximum sentence fell within the

proper range of punishment (O.R. 179-181).  21 O.S.2011, § 801; 21 O.S.2011, § 51.1(A)(2); *Chastain*, 1985 OK CR 117, ¶ 5, 706 P.2d at 540.  In addition, even if it could be argued the petitioner was improperly advised of the Count 2 sentencing range, such error was also harmless given that he was given the same sentence as Count 7, both of which fell within the sentencing range, and the sentences were ordered to run concurrent to one another (O.R. 179-181). 21 O.S.Supp.2014, § 1283; *Chastain*, 1985 OK CR 117, ¶ 5, 706 P.2d at 540.  As the petitioner neither asserted that these errors would have changed his plea nor demonstrated any prejudice as a result of the errors, his claim of ineffective assistance of counsel on this basis lacks merit and should be rejected. *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687, 694. *See Wilson*, 1998 OK CR 73, ¶¶ 111-113, 983 P.2d at 472 (finding that where the appellant's substantive claim had no merit, the appellant failed to show counsel ineffective regarding the substantive claim).

As demonstrated by the State in Proposition IV, above, the petitioner's double punishment claim is not supported on the face of the record. *Broce*, 488 U.S. at 576 (holding if a double jeopardy violation is not apparent from the face of the Information or the record of the plea proceedings, then such claim is "foreclosed by the admissions inherent" in the guilty plea).  Thus, unlike the circumstances of *Henderson* wherein counsel was deemed ineffective because the double punishment error was clear on its face, there is no basis for concluding in this matter that the petitioner's plea counsel was ineffective in allowing him to plead to each charge. *Cf. Henderson*, No. C-2016-40, slip op. at 9-12 (reviewing claim of ineffective assistance of counsel for failing to raise double jeopardy claim and granting certiorari relief where record, "judged on its face," showed the four charges brought against the petitioner were one act, not four).  As a result, the petitioner fails

47

to demonstrate ineffective assistance of counsel on this basis and his claim should be denied. *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687, 694. *See Wilson*, 1998 OK CR 73, ¶¶ 111-113, 983 P.2d at 472 (finding that where the appellant's substantive claim had no merit, the appellant failed to show counsel ineffective regarding the substantive claim).

As demonstrated by the State in Propositions V and VI, above, the petitioner placed his own medical condition at issue and the admission of his medical records and comments by the prosecutor about those records did not constitute error. *See, e.g., Turrentine*, 1998 OK CR 33, ¶ 63, 965 P.2d at 975 ("The prosecutor may comment on the veracity of the testimony when it is supported by the evidence."); *see Harris*, 1992 OK CR 74, ¶ 22, 841 P.2d at 602 ("It is well established that a party may not complain of error which he himself invited or waived."). Further, because the only path in this case was to seek leniency from the court, it cannot be reasonably argued that plea counsel should have sought to exclude evidence of the petitioner's medical history from the hearing when the entire case rested on the petitioner's claim that such history negatively impacted his life. The petitioner's assertions fail to demonstrate that counsel's strategy was unreasonable under the circumstances of this case. *Browning*, 2006 OK CR 8, ¶ 14, 134 P.3d at 831 (stating that the appellant "must present evidence overcoming this Court's presumption that counsel's conduct was professional and could be considered sound strategy"). Therefore, his ineffective assistance of counsel claim fails. *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687, 694; *Wilson*, 1998 OK CR 73, ¶¶ 111-113, 983 P.2d at 472.

The petitioner further argues that plea counsel was ineffective for failing to ask the court to sequester the witnesses during the sentencing hearing. He surmises the witnesses, who all asked for

48

a lengthy sentence against the petitioner, were improperly influenced by other witnesses' testimony. Def's Br. at 46). However, devoid from the petitioner's argument, and fatal to his claim of error, is any indication that, but for this alleged error, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Because the petitioner makes no attempt to show the required prejudice in this regard, his claim that counsel was ineffective on this basis must fail. *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 700. *See Lozoya*, 1996 OK CR 55, ¶ 44, 932 P.2d at 34 (stating that dissatisfaction with a sentence is not a "satisfactory basis for allowing a plea to be withdrawn").

Lastly, the petitioner claims that his withdrawal counsel was ineffective for failing to add any substance to the effort to withdraw the petitioner's pleas or ask for a contemporaneous competency determination at the withdrawal hearing. Def's Br. at 47. However, as demonstrated in the record and argued throughout this brief, the petitioner's competence was never truly a question in this matter. Thus, even if counsel had requested such a determination, the request would have been properly overruled. *See* 22 O.S.2011, § 1175.2; *King*, 1976 OK CR 103, ¶ 10, 553 P.2d at 533 (only if the court determines a "substantial question" of the defendant's competency exists must the court commit the defendant for a competency determination.). Consequently, the petitioner cannot demonstrate ineffective assistance of counsel on this basis. *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687, 694.

The State contends, based on the record and the above argument, that the petitioner has failed to demonstrate that his counsel was deficient and that, but for counsel's conduct, he would not have pleaded guilty and would have insisted on going to trial. As a result, this Court should deny the

49

petitioner relief on his ineffective assistance of counsel claim and reject his request to withdraw his guilty pleas.

## PROPOSITION VIII

### THERE WERE NO INDIVIDUAL ERRORS WARRANTING REVERSAL; THEREFORE, THE PETITIONER IS NOT ENTITLED TO RELIEF FOR CUMULATIVE ERROR.

In his eighth and final proposition of error, the petitioner asserts that the aforementioned issues cumulatively denied him a fair proceeding. The State maintains that no accumulation of error occurred warranting reversal or modification on appeal.

This Court will not sustain a cumulative error argument when the Court has failed to sustain any of the other arguments raised by a petitioner. *Dodd' v. State*, 2004 OK CR 31, ¶ 116, 100 P.3d 1017, 1051. Even if irregularities have been found, this Court will not reverse unless those irregularities have denied the petitioner of his right to a fair proceeding. *Id.*

In the instant case, the alleged errors raised by the petitioner either lack merit or were harmless beyond a reasonable doubt under the circumstances of this case. Accordingly, the petitioner has not been denied his right to a fair plea proceeding and neither reversal nor modification is required. The petitioner's final proposition of error should be denied by this Court.

## CONCLUSION

The petitioner's contentions have been answered by both argument and citations of authority. The respondent contends that no relief is warranted. Accordingly, the trial court's denial of the petitioner's motion to withdraw his guilty pleas should be upheld by this Court.

Respectfully submitted,

**MIKE HUNTER**
**ATTORNEY GENERAL**

**JENNIFER B. WELCH, OBA#17379**
**ASSISTANT ATTORNEY GENERAL**

313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 (FAX)

**ATTORNEYS FOR RESPONDENT**

**CERTIFICATE OF MAILING**

On this 5th day of May, 2016, a true and correct copy of the foregoing was mailed to:

Chad Johnson
P.O. Box 926
Norman, OK 73070

Jennifer B. Welch

51

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

DEANDRE LASHAWN HENDERSON,   )
                                    )
        Petitioner,       )     **NOT FOR PUBLICATION**
                                      )
v.                       )     **Case No. C-2016-40**
                                      )
STATE OF OKLAHOMA,        )
                                      )
        Respondent.     )

**FILED**
**IN COURT OF CRIMINAL APPEALS**
**STATE OF OKLAHOMA**

FEB - 9 2017

MICHAEL S. RICHIE
CLERK

## SUMMARY OPINION GRANTING CERTIORARI

**HUDSON, JUDGE:**

On December 9, 2015, Petitioner Deandre Lashawn Henderson entered a negotiated Alford plea[1] in Seminole County District Court Case No. CF-2013-473 before the Honorable Gayla Arnold, Special Judge, to Counts 1—4: Assault with a Dangerous Weapon, After Former Conviction of a Felony, in violation of 21 O.S.2011, § 645; and Count 5: Possession of a Firearm After Former Conviction of a Felony, in violation of 21 O.S.Supp.2012, § 1283. In accordance with the plea agreement, Petitioner was sentenced to twenty (20) years imprisonment each on Counts 1—4 and to ten (10) years imprisonment on Count 5. Also pursuant to the plea agreement, Judge Arnold ran the sentences for all five counts concurrently each to the other and concurrently to Petitioner's sentences in Seminole County Case Nos. CF-2010-174, CF-2010-213 and CF-2010-297. Judge Arnold granted Petitioner credit for time served. The State also agreed in exchange for Petitioner's plea to dismiss Petitioner's

---

[1] *See North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).



pending felony charge of Placing Bodily Fluids on a Police Officer in Seminole County Case No. CF-2015-144.

On December 21, 2015, Petitioner filed an application to withdraw his plea. A hearing on Petitioner's application to withdraw was held on January 14, 2016, before the Honorable Gordon Allen, Associate District Judge. After hearing testimony from Petitioner along with argument from counsel for both parties, Judge Allen denied the application to withdraw plea (1/14/2016 Tr. 3-28). Petitioner now seeks a writ of certiorari alleging the following propositions of error:

    I.    PETITIONER'S ALFORD PLEA WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY;

    II.    PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL;

    III.    THE FAILURE TO APPOINT CONFLICT-FREE COUNSEL RESULTED IN REVERSIBLE ERROR; and

    IV.    CONVICTIONS IN COUNTS 1 THROUGH 4 VIOLATE THE PROHIBITIONS AGAINST DOUBLE PUNISHMENT.

After thorough consideration of the entire record before us on appeal, including the original record, transcripts, and Petitioner's brief, we find that no relief is required under the law and evidence with respect to Counts 1 and 5 of the judgment and sentence. However, relief is required for Counts 2—4 of the judgment and sentence as discussed below. Petitioner's Petition for Writ of Certiorari is therefore **GRANTED**.

This Court reviews the denial of a motion to withdraw guilty plea for an abuse of discretion. *Cox v. State*, 2006 OK CR 51, ¶ 18, 152 P.3d 244, 251,

*overruled on other grounds, State v. Vincent,* 2016 OK CR 7, ¶ 12, 371 P.3d 1127, 1130.  On certiorari review of an Alford plea, our review is limited to two inquiries: (1) whether the plea was made knowingly and voluntarily; and (2) whether the district court accepting the Alford plea had jurisdiction.  *Lewis v. State,* 2009 OK CR 30, ¶ 4, 220 P.3d 1140, 1142 (citing *Cox,* 2006 OK CR 51, ¶ 4, 152 P.3d at 247).   A voluntary Alford plea waives all non-jurisdictional defects.  *Cox,* 2006 OK CR 51, ¶ 4, 152 P.3d at 247 (citing *Frederick v. State,* 1991 OK CR 56, ¶ 5, 811 P.2d 601, 603).

With two exceptions, the record of the hearing on the motion to withdraw shows Proposition I was raised before the district court.  Petitioner did not urge below that his attorney coerced him into taking the plea deal.  Nor did he allege coercion from comments by Judge Allen earlier in the case.  This aspect of Petitioner's Proposition I claim is therefore waived from review.  Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2016); *Weeks v. State,* 2015 OK CR 16, ¶¶ 27, 29, 362 P.3d 650, 657.

Relief is unwarranted for that portion of Proposition I which was properly preserved for our review.  The standard for determining the validity of an Alford plea is whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.  *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hopkins v. State,* 1988 OK CR 257, ¶ 2, 764 P.2d 215, 216.  The record makes abundantly clear that Petitioner's Alford plea was induced by his desire to limit the total prison time he served by taking advantage of the State's offer to run the sentences in the

3

present case concurrently with the fifteen year sentences he received on his separate Drug Court termination cases as well as to reduce Counts 1—4 to felony crimes not subject to the 85% Rule and to dismiss an unrelated felony case. This was particularly astute considering the inculpatory fingerprint evidence developed by the State after the mistrial and the fact that Petitioner, a convicted felon, faced up to life imprisonment each on Counts 1—4.

The record confirms that Petitioner's Alford plea was a product of his own free will and was made with a full understanding of the consequences of entering the plea. *Alford*, 400 U.S. at 31, 91 S. Ct. at 164. *See also Hopkins*, 1988 OK CR 257, ¶ 3, 764 P.2d at 216. There is no evidence of coercion by anyone. The record shows the State's new plea offer vastly more favorable to Petitioner than the original plea offer. This fact alone shows why Petitioner accepted the revised plea offer. There is no doubt Petitioner was aware of the charges against him, the maximum sentences he faced, as well as what he was giving up by entering the plea (speedy trial; right to confront witnesses; right against compulsory self-incrimination; right to present evidence to a jury, etc.) considering that he had previously sat through the partial jury trial in this case—albeit one that resulted in a mistrial. The magistrate's discussion of the State's plea offer, along with Petitioner's questions on the record concerning same, likewise demonstrate Petitioner's understanding of the consequences of entering the Alford plea.

The record too contradicts Petitioner's testimony that he was somehow mentally unsound when he entered the Alford plea. Petitioner's responses on

4

the record are logical and coherent. Petitioner affirmatively stated he was of sound mind and clear thinking when he entered the plea and this assertion was seconded by defense counsel. There is absolutely no evidence other than his testimony at the hearing on the motion to withdraw to support a claim that Petitioner was somehow mentally compromised at the time of the plea.

Petitioner's complaint that he did not have time to review the complete plea form and that he was afforded little time to make his decision is likewise contradicted by the record. When a defendant claims that his guilty plea was entered through inadvertence, ignorance, influence or without deliberation, he has the burden of showing that the plea was entered as a result of one of these reasons and that there is a defense that should be presented to the jury. *Estell v. State*, 1988 OK CR 287, ¶ 7, 766 P.2d 1380, 1383. Petitioner never requested more time to review the State's offer or the plea form. Nor did Petitioner assert during the plea hearing that he had doubts about entering the Alford plea. Instead, Petitioner affirmatively stated on the record that he wanted to "settle" the case and went so far as to agree both orally and in writing that the magistrate could take his plea. His only concern was to clarify that the sentences in this case would run concurrently with the sentences he was already serving on his separate Drug Court termination cases. More importantly, Petitioner acknowledged on the record the factual basis for the Alford plea contained on the plea form—i.e., that Petitioner did not commit the charged offenses, that the State appeared to have sufficient evidence to convict, that Petitioner did not want to risk a trial and that the plea offer was in

5

Petitioner's best interests.  Thus, Petitioner's protestations of innocence do not justify withdrawal of his plea because the record shows his plea was a strategic means to limit the total prison time he served by taking advantage of the State's offer while maintaining his innocence in the face of the State's compelling evidence.  *Alford*, 400 U.S. at 37-38, 91 S. Ct. at 167-68.

Although Petitioner did not sign the Plea of Guilty—Summary of Fact form and did not answer Question Nos. 9 and 10 on this same form, the general requirements of *King v. State*, 1976 OK CR 103, ¶ 11, 553 P.2d 529, 534-35 were nonetheless satisfied in this case.[2]  We have recognized that a properly-signed plea form is one method of ensuring compliance with the *King* requirements.  *Coyle v. State*, 1985 OK CR 121, ¶ 4, 706 P.2d 547, 548.  But *King* does not mandate a ritualistic formula to be used in accepting pleas. "[T]he constitutional validity of a guilty plea is not wholly dependent upon express mention and waiver of particular rights, such as embodied in our plea guidelines, so long as the record otherwise establishes a truly voluntary and intelligent plea." *Ocampo v. State*, 1989 OK CR 38, ¶ 4, 778 P.2d 920, 922 (quoting *State v. Durant*, 1980 OK CR 21, ¶ 2, 609 P.2d 792, 793).  Hence, "substantial as versus absolute compliance with plea guidelines developed by this Court may suffice, if the record otherwise reflects a constitutionally valid plea." *Durant*, 1980 OK CR 21, ¶ 2, 609 P.2d at 793.  This requires examination of the entire record. *Ocampo*, 1989 OK CR 38, ¶ 4, 778 P.2d at 922; *Durant*, 1980 OK CR 21, ¶ 3, 609 P.2d at 793-94.

---

[2]We nonetheless expect in future cases that the lower court will ensure the plea form is fully completed and signed by the defendant.

As shown above, the totality of the circumstances reflected in the record show Petitioner's plea was knowingly and voluntarily entered. The trial court did not abuse its discretion in denying Petitioner's motion to withdraw his Alford plea. Proposition I is denied.

Petitioner's claim in Proposition II that he received ineffective assistance of counsel at the hearing on the motion to withdraw because defense counsel had an actual conflict of interest, along with his related claim in Proposition III that the district court should have appointed conflict counsel at the hearing on the motion to withdraw, do not warrant relief. This is the first opportunity in which these claims could be raised so they are properly before this Court. A criminal defendant is entitled to effective assistance of counsel at a hearing on a motion to withdraw. *Carey v. State*, 1995 OK CR 55, ¶ 5, 902 P.2d 1116, 1117; *Randall v. State*, 1993 OK CR 47, ¶ 7, 861 P.2d 314, 316. The right to effective assistance of counsel includes the correlative right to representation that is free from conflicts of interest. *Carey*, 1995 OK CR 55, ¶ 8, 902 P.2d at 1118 (citing *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 2d 220 (1981)).

To prevail on an ineffective assistance of counsel claim based on a conflict of interest, a defendant who raised no objection at trial or a hearing on a motion to withdraw a guilty plea need not show prejudice but "'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S. Ct. 1708, 1718-19, 64 L. Ed. 2d 333 (1980)). A conflict of interest arises where

counsel owes conflicting duties to the defendant and some other person or counsel's own interests. *Allen v. State*, 1994 OK CR 30, ¶ 11, 874 P.2d 60, 63. However, "'[t]he mere appearance or possibility of a conflict of interest is not sufficient to cause reversal.'" *Rutan v. State*, 2009 OK CR 3, ¶ 67, 202 P.3d 839, 853 (quoting *Banks v. State*, 1991 OK CR 51, ¶ 34, 810 P.2d 1286, 1296).

This Court does not have a rule that plea counsel and withdrawal counsel cannot be the same attorney. Under the laws of conflict, Petitioner must show an actual conflict of interest. Merely because counsel's request to withdraw the Alford plea is inconsistent with his earlier request for the court to accept the Alford plea does not show a conflict of interest. Here, the record shows that defense counsel filed the motion to withdraw in this case at Petitioner's request. The basis for this motion was Petitioner's assertion that he was innocent of the charged offenses. At the hearing on the motion to withdraw, Petitioner did not request new counsel. Nor did he allege that plea counsel was ineffective. Instead, Petitioner testified that he did not fully understand the consequences of entering the plea; that he had maintained his innocence to the charges throughout the life of the case; that he was mentally compromised when he entered the plea; and that he believed he was coerced into signing the plea by the prosecutor.

Notably, defense counsel zealously presented Petitioner's various claims through Petitioner's own testimony as well as argument to the trial court. Defense counsel emphasized in his argument Petitioner's failure to sign the plea form and to answer Question Nos. 9 and 10. Defense counsel urged that

the irregularities in the plea paperwork, along with the reasons contained in Petitioner's testimony, warranted granting the motion to withdraw because it all suggested Petitioner did not know what he was doing when he entered the plea. The record simply does not show conflicting loyalties or an attempt by defense counsel to sidestep issues calling into question his representation in the case. Indeed, defense counsel scrutinized Petitioner's testimony and asserted that conflict counsel should be appointed if Petitioner was alleging misconduct by defense counsel. Petitioner did not, however, blame defense counsel for the Alford plea so the appointment of conflict counsel was unnecessary.

More fundamentally, the record shows a knowing and voluntary plea by Petitioner. As discussed above, the record plainly shows that Petitioner's Alford plea was a strategic means to limit the total prison time he served by taking advantage of the State's new, more advantageous offer particularly in light of the State's newly developed fingerprint evidence. Petitioner does not now get new counsel to try and get a second bite at the apple and come up with new reasons why his plea was involuntary. Based on the record, Petitioner has not demonstrated counsel had an actual conflict with Petitioner's interests or that an actual conflict of interest adversely affected counsel's performance. This part of Proposition II and Proposition III are denied.

Petitioner's Proposition II claim that counsel was ineffective for failing to allege that his prosecution on Counts 1—4 violates the double jeopardy clause requires relief. To prevail on an ineffective assistance of counsel claim, the

9

appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See also Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Again, this is the first opportunity for Petitioner to raise this claim so it is properly before the Court. Counsel could have raised Petitioner's double jeopardy challenge at the motion to withdraw hearing despite the existence of a valid guilty plea. "A guilty plea does not preclude review of a claim that implicates 'the very power of the State to bring the defendant into court to answer the charge brought against him.'" *Weeks*, 2015 OK CR 16, ¶ 12, 362 P.3d at 654 (quoting *Blackledge v. Perry*, 417 U.S. 21, 30-31, 94 S. Ct. 2098, 2103-04, 40 L. Ed. 2d 628 (1974)). "A guilty plea does not foreclose a subsequent challenge that the charge, judged on its face, is one which the State may not constitutionally prosecute." *Weeks*, 2015 OK CR 16, ¶ 12, 362 P.3d at 654 (citing *United States v. Broce*, 488 U.S. 563, 575, 109 S. Ct. 757, 765, 102 L. Ed. 2d 927 (1989)). Petitioner's double jeopardy claim raises this very type of challenge. *Broce*, 488 U.S. at 574-76, 109 S. Ct. at 765-66; *Menna v. New York*, 423 U.S. 61, 61-63, 96 S. Ct. 241, 241-42, 46 L. Ed. 2d 195 (1975).

"The fifth amendment guarantee against double jeopardy protects against multiple punishments for the same offense." *Hunnicut v. State*, 1988 OK CR 91, ¶ 10, 755 P.2d 105, 109. In this context, double jeopardy is used simply as a tool of statutory construction to prevent the sentencing court from

prescribing greater punishment than the legislature intended. *Hunnicut*, 1988 OK CR 91, ¶ 12, 755 P.2d at 110 (citing *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983)).

Here, the probable cause affidavit shows Petitioner fired four (4) separate shots at a single victim, Kevon Chandler, who was shot once in the shoulder. Counts 1—4 of the Information basically allege a separate felony count for each gunshot fired. An eyewitness testified at trial that the gunshots occurred in rapid succession as Petitioner aimed and fired at the victim while running down the street.

Assault with a dangerous weapon, like shooting with intent to kill, is indisputably a crime against the person. *Burleson v. Saffle*, 2002 OK CR 15, ¶ 5, 46 P.3d 150, 152. "It has long been part of our jurisprudence that, where crimes against the person are involved, even though various acts are part of the same transaction, they will constitute separate and distinct crimes where they are directed at separate and distinct persons." *Id.*

In the present case, Petitioner was convicted of four counts of assault with a dangerous weapon based on gunshots he fired at a single victim during the course of an uninterrupted, rapid-fire episode with no significant passage of time between each gunshot. These uninterrupted gunshots were part of a single transaction. Thus, Petitioner's convictions on Counts 1—4 resulted in multiple punishments for the same transaction or criminal episode. This represents a double jeopardy violation under our case law. *Ocampo*, 1989 OK CR 38, ¶ 14, 778 P.2d at 924; *Salyer v. State*, 1988 OK CR 184, ¶¶ 11-14, 17,

761 P.2d 890, 893, 894; *Weatherly v. State*, 1987 OK CR 28, ¶¶ 17-20, 733 P.2d 1331, 1337-38.

Counsel therefore was ineffective for failing to allege that three of the four counts of shooting with intent to kill—which were amended down to assault with a dangerous weapon as part of the plea agreement—violate double jeopardy. Counsel's failure to raise this meritorious claim at the hearing on the application to withdraw demonstrates both deficient performance and prejudice under *Strickland*. Counts 2—4 must therefore be reversed and remanded with instruction to dismiss.[3]

## DECISION

The Petition for Writ of Certiorari is **GRANTED**. The Judgments and Sentences of the District Court as to Counts 1 and 5 are **AFFIRMED**. The Judgments and Sentences as to Counts 2, 3 and 4 are **REVERSED AND REMANDED WITH INSTRUCTIONS TO DISMISS**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF SEMINOLE COUNTY
THE HONORABLE GORDON ALLEN, ASSOCIATE DISTRICT JUDGE
THE HONORABLE GAYLA ARNOLD, SPECIAL JUDGE

**APPEARANCES AT TRIAL**

RICHARD E. BUTNER
BUTNER & BUTNER
125 SOUTH WEWOKA
WEWOKA, OK 74884
COUNSEL FOR DEFENDANT

**APPEARANCES ON APPEAL**

JEREMY STILLWELL
P.O. BOX 926
NORMAN, OK 73070
COUNSEL FOR PETITIONER

---

[3]Proposition IV is moot in light of our disposition of Petitioner's double jeopardy claims within the context of his Proposition II ineffective assistance of counsel claim.

12

CHRISTOPHER ANDERSON
ASSISTANT DISTRICT ATTORNEY
SEMINOLE COUNTY COURTHOUSE
P.O. BOX 1300
WEWOKA, OK  74884
COUNSEL FOR THE STATE

NO RESPONSE FROM THE STATE

**OPINION BY:  HUDSON, J.**
**LUMPKIN, P.J.:**      **CONCUR IN RESULTS**
**LEWIS, V.P.J.:**      **CONCUR IN RESULTS**
**JOHNSON, J.:**       **CONCUR**
**SMITH, J.:**           **CONCUR**